United States District Court
Southern District of Texas
FILED

MAY 2 9 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

TEODULO CANTU-DELGADILLO  )
         )
v.         )  C.A. No. **B-02-114**
         )
E.M. TROMINSKI, INS DISTRICT )
 DIRECTOR      )
_____)

PETITION FOR WRIT OF HABEAS CORPUS
SEEKING REVIEW OF ORDER OF DEPORTATION

Comes Teodulo Cantu-Delgadillo, and, pursuant to 28 U.S.C. §2241, *INS v. St. Cyr,* 121 S.Ct. 2271 (2001), and *U.S. ex rel Marcello v. INS,* 634 F.2d 964,971 (5th Cir.1981), files the instant Petition for Writ of Habeas Corpus, seeking review of the Decision of the Board of Immigration Appeals, dated August 21, 2001. (Petitioner's Exhibit A, herein incorporated by reference).

## I. THE FACTS

1. Teodulo Cantu-Delgadillo, (hereinafter, "Mr. Cantu"), is a 32 year old, native and citizen of Mexico, and has been a lawful permanent resident since July 5, 1978, when he was eight years old. On November 27, 1996, Mr. Cantu was granted deferred adjudication for the offense of possession of marijuana. At that time, said disposition was not considered to render Mr. Cantu subject to deportation. *Matter of Manrique,* I.D. 3250 (BIA 1995). Although the statutory definition of "conviction" was changed on September 30, 1996, most immigration attorneys considered that this would not change the result, since *Manrique* was based on policy considerations, not on the definition of conviction.

2.    Nonetheless, Mr. Cantu was placed in deportation proceedings, and ordered deported by an Immigration Judge on February 25, 1997. His prior attorney, Robert E. Kahn, appealed to the BIA.   By decision dated December 29, 1998, the Board noted that it had recently ~~abrogated Manrique, and~~ *held* that the deferred adjudication disposition was now considered to be a conviction, under *Matter of Punu,* Int. Dec. 3364 (BIA 1998) (Petitioner's Exhibit B, herein incorporated by reference).

3.    In the 1998 decision, the Board concluded that Mr. Cantu was ineligible for §212(c) relief, due to §440(d) of AEDPA.   But the Board also noted that his marijuana offense would not be considered an "aggravated felony," and that he would therefore be eligible for cancellation of removal, under 8 U.S.C. §1229b(a).   Consequently, the Board administratively closed the proceedings, pending promulgation of an anticipated regulation, allowing the deportation proceedings to be terminated, and removal proceedings initiated, such that Mr. Cantu could request cancellation of removal.

3.    However, on March 29, 2001, at the request of INS, the Board reopened proceedings, and reinstated Mr. Cantu's appeal.   And on August 31, 2001, the Board dismissed that appeal, and ordered his deportation, on the authority of *U.S. v. Hernandez-Avalos,* 251 F.3d 505 (5th Cir. 2001) (Exhibit A).   If said *was* decision mailed to the office of prior counsel, it was not received at his address. [1]

_____

[1]    Prior counsel had ceased practicing law in early 1999, when diagnosed with brain cancer.   However, another attorney, Martha Garza, assumed his practice, and continues to practice law at the same address of Mr. Kahn and receives mail for him at that address. The undersigned spoke with Ms. Garza on May 28, 2002.   She confirmed that She had not received the BIA decision in a timely fashion, and had hunted it down only after Mr. Cantu contacted her, and informed her that he was to be deported on May 29, 2002.

4. Mr. Cantu first learned of the decision ~~was~~ in May, 2002, when he was notified that he was supposed to be surrendered to INS in Houston for deportation on May 29, 2002 at 9:00 am. (Petitioner's Exhibit C, herein incorporated by reference). He immediately contacted Ms. Garza, who informed him that she had not received the order of deportation. Mr. Cantu then set about trying to find new counsel, who could, and would, file a petition for writ of habeas corpus on his behalf in Houston, Texas. When he was unable to do so, he hired an attorney in Edinburg, Texas, Aaron Pena, who sought the services of the undersigned. By the time the undersigned was retained, it was already May 27, 2002: too late to attempt to seek a remedy in Houston. Therefore, since Mr. Cantu lives in the Rio Grande Valley, arrangements were made to surrender him to INS in Harlingen, Texas, at 8:00 a.m., May 29, 2002, and, once he had been so surrendered, to file the instant habeas action. *Called at 8:05 am from INS in Harlingen.*

## II. JURISDICTION AND VENUE

5. Petitioner Cantu is under an administratively final order of removal, (Exhibit A), and has been surrendered to INS in Harlingen, Texas, pursuant to a demand made on the bond company by INS. (Petitioner's Exhibit C, herein incorporated by reference). He is therefore in the actual custody of Respondent Trominski at the moment the instant action is filed.

6. Respondent Trominski maintains his offices, and Petitioner Cantu resides, within the jurisdiction of this Court.

## III. THE PARTIES

7. Petitioner Cantu has been a lawful permanent resident of the United States for over twenty years, and resides in Roma, Texas.

8. Respondent E. M. Trominski is the District Director of the Harlingen, Texas, office of the Immigration and Naturalization Service. He is sued in his official capacity only.

3

9.  Respondent John Ashcroft is the Attorney General of the United States.  He is also sued in his official capacity only.

## IV.  CHANGES IN THE LAW AND ADMINISTRATION THEREOF

10.  Between the time Mr. Cantu negotiated his plea in the marijuana offense, in exchange for deferred adjudication, there were several significant developments in the law.  First, on August 18, 1998, the BIA issued *Matter of Punu,* Int. Dec. 3364 (BIA 1998), holding that deferred adjudication disposition constituted a "conviction" for purposes of immigration law.  Then, on March 3, 1999, the BIA decided *Matter of Roldan,* I.D. No. 3377 (BIA 1999), holding that *Manrique* had been superceded by §1101(a)(48)(A). Said decision was disapproved in *Lujan-Armendariz v. INS v. INS,* 222 F.3d 728 (9th Cir. 2000), on the grounds that it deprives immigrants such as Mr. Cantu of the Equal Protection of the laws, since, under the FFOA, they would not be considered "convicted" if they had received equivalent rehabilitative treatment in federal, rather than state, court.  Next, on December 10, 1999, the Board issued *Matter of K-V-D-,* Int. Dec. 3422 (BIA 1999), reaffirming *Matter of L-G-, supra,* and holding that, notwithstanding *Hinojosa-Lopez, supra,* a state felony conviction for simple possession of a controlled substance would not be construed as an aggravated felony for immigration purposes. Then, on May 11, 2001, the Fifth Circuit decided *U.S. v. Hernandez-Avalos,* 251 F.3d. 505 (5th Cir. 2001), which, in strongly worded *dicta,* disapproved of *Matter of K-V-D-.* And although the pertinent language in *Hernandez-Avalos* was, indeed, *dicta,* the Board has followed this conclusion, but only for cases arising within this judicial Circuit.  And finally, on February 8, 2002, the Third Circuit concluded in *Gerbier v. Holmes,* 280 F.3d. 297 (3rd Cir. 2002), that a state felony conviction for the offense of simple possession of a controlled substance is **not**

an aggravated felony for immigration purposes.

11.   On information and belief, it is alleged that a number of otherwise similarly situated LPRs, (LPRs granted deferred adjudication for an offense involving simple possession of a controlled substance), whose cases were heard after *Roldan*, and before *Hernandez-Avalos*, were considered eligible for cancellation of removal, and were granted said relief by Respondents.

12.   On February 14, 2002, the BIA issued a precedent decision, *Matter of Salazar*, Int. Dec. 3462 (BIA 2002), declining to follow *Lujan-Armendariz* outside of the Ninth Circuit, and holding that, in light of *Hernandez-Avalos,* it would not apply *Matter of K-V-D-* in the Fifth Circuit.   Under this decision, Mr. Cantu is ineligible for any form of relief, and if he is removed, will be permanently separated from his family in the U.S..

13. Under *Matter of Salazar*, otherwise similarly situated LPRs whose cases arose within the Ninth Circuit are not considered to be subject to removal, and those whose cases arose anywhere except the Fifth Circuit, continue to be eligible for relief from removal, in the form of cancellation of removal, 8 U.S.C. §1229b(a). [2]

14.   Given his lengthy residence, strong family ties, employment history, and other equities, it is highly likely that Mr. Cantu would have earned cancellation of removal, had he received the opportunity to apply for said form of discretionary relief.

---

[2]   To the best of the knowledge and belief of the undersigned, no other Court has ruled on the Equal Protection issue as presented in *Lujan-Armendaris*.   Similarly, *Gerbier* is the only published case addressing the aggravated felony issue in the context of the review of an order of removal or deportation, and *Hernandez-Avalos* is the only known case explicitly disapproving *Matter of K-V-D-*.

## V.  THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

### 1.  STATUTORY CONSTRUCTION
### a.  AGGRAVATED FELONY

Mr. Cantu fist urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether his deferred adjudication disposition constitutes an aggravated felony.  The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Cantu.  To the contrary, Mr. Cantu asserts that the Board correctly decided *Matter of K-V-D-,* and that it erred in not applying said decision herein.  *See, Gebier v. Holmes, supra.*

### b.  *MATTER OF ROLDAN, SUPRA.*

Mr. Cantu also urges that, as a question of law, *Matter of Roldan, supra,* was incorrectly decided, and that (new) 8 U.S.C. §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra. See,* Dissenting Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined. (23 I&N Dec. at 237-251). *See also,* Dissenting Opinion of Board Member Anthony Moscato, in which Board Member Villageliu, joined. (23 I&N Dec. at 251-252).

### 2.  EQUAL PROTECTION
### a.  FEDERAL FIRST OFFENDER ACT

6

Mr. Cantu next asserts that, for the reasons set forth in *Lujan-Armendariz, supra*, it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

### b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Cantu also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would have earned in the exercise of discretion.

### c. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

Had Mr. Cantu's case been heard between March 3, 1999, and May 11, 2001, (after the BIA issued *Matter of Roldan*, and before the Fifth Circuit decided *Hernandez-Avalos*), he would have been considered to subject to removal, but eligible for cancellation of removal, and would have most probably earned such relief in the exercise of discretion.  It violates Equal Protection for the difference between remaining in the U.S. as a lawful permanent resident, and being removed, and permanently barred from returning lawfully, to be based solely on the timing of the proceedings.

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Cantu has a fundamental liberty

7

interest in being able to live and work in the United States, and in remaining here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Salazar, supra* at 238. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Cantu enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Cantu asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing

8

equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4. PROCEDURAL DUE PROCESS

Mr. Cantu also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Mr. Cantu retroactively converts a disposition which, at the time of his plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is
> a penalty - at times a most serious one - cannot be
> doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see
> also *ibid.* (Deportation places "the liberty of an
> individual ... at stake.... Though deportation is not
> technically a criminal proceeding, it visits a great
> hardship on the individual and deprives him of the right
> to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs even though, under state law, there is no conviction, and never will be one, if the Petitioner successfully completes his probation.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due

Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty, rather than criminal punishment, is involved. As the Supreme Court held in *BMW of North America v. Gore*, 517 U.S. 559,574 (1996) (footnote 22 in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350-355, 84 S.Ct., at 1701-1703

(citing cases); *Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner*, 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Cantu, there can be not question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v. Gore, supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."[3]

## 5.  INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Cantu urges that the instant order violates international law, and treaty obligations between the United States and Mexico, her country of origin.

Respectfully Submitted,

---

[3] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223, 231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

11

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

L. Aaron Peña, Attorney
600 South Closner
Edinburg, TX 78539
(956) 383-5311
(956) 380-2722 (fax)

## VERIFICATION

I, Lisa S. Brodyaga, hereby certify that I am familiar with
Petitioner's case and that the facts as stated with respect thereto
are true and correct to the best of my knowledge and belief.

May 2?, 2002

12

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

TEODULO CANTU-DELGADILLO                )
                                        )
v.                                      )     C.A. No. B-02·114
                                        )
E.M. TROMINSKI, INS DISTRICT            )
     DIRECTOR                           )
_____)


## EXHIBIT "A" IN SUPPORT OF

### PETITION FOR WRIT OF HABEAS CORPUS
### SEEKING REVIEW OF ORDER OF DEPORTATION

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of    Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A36 422 342 - Houston                         Date:

In re: TEODULO CANTU-DELGADILLO                      AUG 31 2001

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Robert E. Kahn, Esquire

ON BEHALF OF SERVICE:    Charlotte K. Lang
                         Assistant District Counsel

CHARGE:

    Order:  Sec.    241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
                    Convicted of aggravated felony

            Sec.    241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
                    Convicted of controlled substance violation

APPLICATION:  Termination of proceedings


ORDER:

    PER CURIAM. The instant case is on appeal to this Board from the Immigration Judge's February 25, 1997, decision finding the respondent deportable as charged and ineligible for any form of relief from deportation.[1] On appeal, the respondent argues, through counsel, that his deferred adjudication under Texas law is not a conviction for immigration purposes that supports the charges of deportability in the instant case. The respondent also contends that, even if he is deportable as charged, he should be allowed to apply for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act under the terms of that section as it existed prior to the enactment of section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (enacted April 24, 1996) ("AEDPA"). Neither of the respondent's contentions on appeal has legal merit.

---

[1] In a decision dated December 22, 1998, this Board ruled on the issues presented by the respondent's appeal but administratively closed the instant case subject to a request for further action by either of the parties. The respondent's appeal from the Immigration Judge's order of deportation was reinstated before this Board on March 29, 2001, at the request of the Immigration and Naturalization Service.

A36 422 342

As this Board indicated in our decision dated December 22, 1998, the respondent's deferred adjudication under Texas law on November 27, 1996, for possession of between 50 and 2,000 pounds of marijuana constitutes a conviction for immigration purposes under section 101(a)(48)(A) of the Act. *See Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999); *Matter of Punu*, Interim Decision 3364 (BIA 1998). The respondent's conviction for the offense of possession of between 50 and 2,000 pounds of marijuana establishes his deportability as charged under section 241(a)(2)(B)(i) of the Act as an alien convicted of a controlled substance violation.

As an alien deportable as charged under section 241(a)(2)(B)(i) of the Act for having been convicted of an offense related to a controlled substance, the respondent is not eligible for section 212(c) relief under the express terms of that statute as amended by section 440(d) of the AEDPA.[2]  The amendment made to section 212(c) of the Act by section 440(d) of the AEDPA is applicable in the instant deportation proceeding as the respondent was convicted for his controlled substance violation, based upon his plea of guilty, on November 27, 1996, over 7 months after the enactment of section 440(d) of the AEDPA. Therefore, the amendments made to section 212(c) of the Act by section 440(d) of the AEDPA do not have an impermissible retroactive effect as applied in this case. *See INS v. St. Cyr*, 121 S.Ct. 2271 (2001).

Accordingly, the respondent's contentions on appeal fail to establish that the Immigration Judge erred in finding the respondent deportable as charged under section 241(a)(2)(B)(i) of the Act and ineligible for section 212(c) relief. Moreover, contrary to our finding in our decision dated December 22, 1998, the respondent is also deportable as charged under section 241(a)(2)(A)(iii) of the Act. *See United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001); *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir.1997) (holding that a state drug conviction that is a felony under state law constitutes an "aggravated felony" for the purpose of the Sentencing Guidelines). Therefore, the respondent's appeal is dismissed.

FOR THE BOARD

---

[2] After amendment by section 440(d) of the AEDPA, section 212(c) of the Act does not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i) of the Act.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

TEODULO CANTU-DELGADILLO      )

)

v.                          )      C.A. No. B-02·114

)

E.M. TROMINSKI, INS DISTRICT   )

     DIRECTOR               )

_____)

EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
SEEKING REVIEW OF ORDER OF DEPORTATION

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:   A36 422 342 - Houston

Date:   DEC 29 1998

In re:   TEODULO CANTU-DELGADILLO

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Robert E. Kahn, Esquire

ON BEHALF OF SERVICE:  Charlotte K. Lang
                       Assistant District Counsel

CHARGE:

Order  Sec.   241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
              Convicted of aggravated felony

       Sec.   241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
              Convicted of controlled substance violation

APPLICATION  Termination of proceedings

ORDER:

   PER CURIAM.  In a decision dated February 25, 1997, an Immigration Judge found the respondent deportable as charged, determined that he was ineligible for any form of relief, and ordered him deported from the United States to Mexico  The respondent appealed.[1]  The respondent's case will be administratively closed.

   The respondent is a native and citizen of Mexico.  On July 5, 1978, he was admitted to the United States as a lawful permanent resident  On November 27, 1996, he was convicted on a plea of guilty, in the 351st District Court, Harris County, Texas for the offense of possession of marijuana.  The respondent received a deferred adjudication under the Texas Code of Criminal Procedure, Article 42.12, § 5 and was placed on 10 years probation.

   We note that this Board has recently held that a deferred adjudication under article 42.12, § 5 of the Texas Code of Criminal Procedure is a conviction for immigration purposes.  See Matter of Punu, Interim Decision 3364 (BIA 1998).  Because the respondent's deferred adjudication under the Texas statute constitutes a conviction under immigration law, he is deportable under section 241(a)(2)(B)(i),

---

[1] The respondent's request to waive his appellate filing fee is hereby granted.

A36 422 342

as an alien convicted of a controlled substance violation.[2] Moreover, section 440(d) of the Antiterrorism Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA] bars certain criminal aliens from obtaining section 212(c) relief under the Immigration and Nationality Act. See 8 U.S.C. § 1182(c). However, the Attorney General plans to publish a regulation that will implement a procedure for terminating deportation proceedings for certain lawful permanent reisdents, who are precluded from relief under section 212(c) of Act, as a result of AEDPA, and placing them in removal proceedings if they would be eligible for cancellation of removal. Such a procedure is authorized by section 309(c)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-626.

Pending the publication of this regulation, the Immigration and Naturalization Service has requested that the Board administratively close cases pending before it where the alien meets the criteria for this procedure. It appears from the record that the alien in the case before us meets the criteria. Accordingly, the proceedings before the Board in this case are administratively closed.

If either party to this case objects to the administrative closure of these proceedings, a written request to reinstate the proceedings may be made to the Board. The Board will take no further action in the case unless a request is received from one of the parties. The request must be submitted directly to the Board, without fee, but with certification of service on the opposing party. If properly submitted, the Board shall reinstate the proceedings.

_Gunton D. Ulrich_

FOR THE BOARD

---

[2] We note that the respondent is not deportable under section 241(a)(2)(A)(iii), as an aggravated felon, because he was convicted only once of possession of marijuana. Under the federal statute, this offense constitutes simple possession and is punishable for only 1 year in prison. 8 U.S.C. § 844(a). Thus, he has not been convicted of a felony under federal law and therefore, does not meet the definition of an aggravated felony for immigration purposes. See Matter of L-G-, Interim Decision 3254 (BIA 1995); Matter of Davis, 20 I&N Dec. 536, 543 (BIA 1992).

2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

TEODULO CANTU-DELGADILLO )
)
v. )            C.A. No. B-02·114
)
E.M. TROMINSKI, INS DISTRICT )
DIRECTOR )
_____)

EXHIBIT "C" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
SEEKING REVIEW OF ORDER OF DEPORTATION

U.S. Department of Justice

**Notice to Deliver Alien**

Immigration &Naturalization Service
126 Northpoint Drive
Houston, TX 77060

---

ALBERT RAMIREZ BAIL BONDS
259 BLACKSTONE AVENUE
FRESNO, CA 93701

File: A76 422 342
Date: April 24, 2002
Re: CANTU-DELOADILLO,
TEODULO
Bond # FRE-S-734
Power # FFI-00404671

Pursuant to the terms of the bond posted by you for the release from custody of the above named alien(s), demand is hereby made upon you to surrender such alien(s).

☐ for hearing at the following date, time and place.

Date:                                          Time:

Place:

☒ into the custody of an officer of this Service at    INS Houston District, 126 North  Point Drive,
                                                        Houston, TX  77060

on 05/29/2002               at 9:00 a.m.        for deportation
    (Date)                     (Time)

You are informed that failure to surrender the alien(s) in accordance with this demand will result in steps being taken toward the breaching of the above mentioned bond and its forfeiture to the Government.

Michael Heston
Acting District Director

CERTIFIED MAIL RETURN RECEIPT REQUESTED

GPO 894-822                                      FORM I-340(REV. 11/30/82) Y

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

TEODULO CANTU-DELGADILLO          )
                                  )
v.                                )          C.A. No.   B-02·114
                                  )
E.M. TROMINSKI, INS DISTRICT      )
      DIRECTOR                    )
_____ )

EXHIBIT "D" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS
SEEKING REVIEW OF ORDER OF DEPORTATION

# LAW OFFICES OF LISA S. BRODYAGA
### 17891 Landrum Park Rd.
### San Benito, Texas 78586
### (956) 421-3226
### FAX: 421-3423
May 28, 2002

Immigration & Naturalization Service
2102 Teege
Harlingen, TX 78550

Attn:  Mr. Guzman
Re:  Teodulo Cantu-Delgadillo
     A36 422 342
By FAX:  (956) 412-0081

Dear Mr. Guzman:

Tomorrow is going to be one of those days, so here I am, sharing
the misery.  Here is the situation.

Mr. Cantu was previously represented by Robert E. Kahn, of
Bellaire, Texas.  Mr. Kahn ceased practice in 2000, due to brain
cancer.  At that time, Mr. Cantu's case had been administratively
closed, so he did not feel the need to get another attorney.

Then, INS moved to recalendar, and the Board ordered Mr. Cantu
deported in August of 2001.  The attorney who took over Mr. Kahn's
practice, Ms. Garza, at the same address, did not receive the
order, so Mr. Cantu did not learn until very recently that he was
under an order of deportation.  When he received word of the
surrender date, he contacted Ms. Garza, who told him that she did
not have the decision.  Later, she pressured INS in Houston to the
point where she received it, and today, she faxed it to me.

When I first heard of the case, last week, from Aaron Peña, I
suggested he contact counsel in Houston, including Nancy Falgout,
and Joe Vail.  Apparently, neither had time to prepare a habeas, so
yesterday, Mr. Peña returned to me, on behalf of Mr. Cantu.

So here is what I eventually agreed to do:  we are going to
surrender Mr. Cantu to you, at 8:00 a.m..  I will be at the Clerk's
office, in Federal District Court in Brownsville, and as soon as I
receive the call that Mr. Cantu is at INS in Harlingen, I will file
the habeas.  I will then fax you a copy of the front page, from a
friend's office in Brownsville.  Since I have to be at the camp
(PISPC) for a 9:00 setting with Judge Ayala, I probably won't get
back to Harlingen until close to 11:00, to find out what you have
decided to do with Mr. Cantu.

I am sorry to put this at your doorstep, but the only alternative is to do nothing.  The case is virtually identical to one that is already on file in Brownsville, (Matter of Salazar-Regino).  It is an old deferred adjudication disposition, involving marijuana, and since I feel very strongly about the legal issues involved, I have agreed to do what I can.

Attached are copies of the surrender notice, the letter that Mr. Kahn ceased practicing law, and the decisions from the BIA.

Sincerely,

Lisa S. Brodyaga,
Attorney at Law

Encl/  As stated.

cc:  Lisa Putnam, SAUSA

2