**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

**AUG 2 6 2002**

Michael N. Milby
Clerk of Court

|  |  |  |
|---|---|---|
| TEODULO CANTU-DELGADILLO, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. B-02-114 |
| E.M. TROMINSKI, | ) | |
| DISTRICT DIRECTOR, THE | ) | |
| IMMIGRATION & NATURALIZATION | ) | |
| SERVICE, and | ) | |
| JOHN ASHCROFT, UNITED STATES | ) | |
| ATTORNEY GENERAL | ) | |
| ———————————————————— | ) | |

**RESPONDENTS' RETURN AND**
**MOTION TO DISMISS OR DENY**
**PETITION FOR WRIT OF HABEAS CORPUS**

COME NOW the Respondents, by and through Michael T. Shelby, United States Attorney for the Southern District of Texas, and file this Return and Motion to Dismiss the Petition for Writ of Habeas Corpus in this case, for lack of jurisdiction, or in the alternative to deny the petition on the merits.

**STATEMENT OF THE FACTS**

**I.   The November 1996 Texas Plea And 10-Year Probation For Second-Degree Felony Drug Possession.**

As the exhibits in support of this motion show, Petitioner, Teodulo Cantu-Delgadillo ("Cantu-Delgadillo") is a native and citizen of Mexico who entered the United States as a lawful permanent resident on July 5, 1978. Government Exh. "A". On April 27, 1996, a criminal indictment was filed against Cantu-Delgadillo in the 351st District Court, Harris County, Texas, charging him with one count of second-degree felony possession of marijuana, i.e., knowingly and intentionally possessed a usable quantity of marijuana in an amount of more than fifty pounds and less than two

1

thousand pounds.[1]  On November 27, 1996, Cantu-Delgadillo pled guilty to this offense, received a deferred adjudication of guilt under Texas law, and as his criminal record states, was placed on "probation" or Acommunity supervision@ for 10 years.[2]  Government Exh. "B".

## II.  The Deportation Proceedings.

On the basis of Cantu-Delgadillo's guilty plea and court-ordered 10-year term of probation, the Immigration and Naturalization Service (the "Service") issued an Order to Show Cause on January 31, 1997, charging him with being deportable on two grounds: (1) pursuant to Section 241(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1251(a)(2)(B)(i) (1994), for having been convicted of a law relating to a controlled substances offense,[3] and (2) pursuant to Section 241(a)(2)(A)(iii) of the INA, 8 U.S.C. §1251(a)(2)(A)(iii) (1994) for having been convicted of an "aggravated felony" (i.e., the aggravated felony of a "drug trafficking crime as defined in [18 U.S.C.] §924(c),"

---

[1]    Under Texas Health and Safety Code § 481.121(b)(5), a defendant who "knowingly or intentionally possesses a usable quantity of marihuana" is guilty of a second-degree felony "if the amount of marihuana possessed is 2,000 pounds or less but more than 50 pounds."

[2]    The deferred adjudication procedure is found in Texas Code of Criminal Procedure Article 42.12 §5.  See Moosa v. INS, 171 F.3d 994, 997 and n. 1 (5th Cir. 1999) (holding that a Texas deferred adjudication of guilty constitutes a "conviction" for immigration purposes). This procedure permits a defendant who pleads guilty or nolo contendere to obtain an order deferring further criminal proceedings, without entering an adjudication of guilt, and placing him on community supervision (a type of probation supervised by a probation officer).  Id. If the defendant violates probation, then he may be rearrested on the original charge, his guilt will be adjudicated, and all proceedings will continue as of the adjudication of guilt had not been deferred. Id.  If, however, the defendant  successfully completes probation, the proceedings will be dismissed and the dismissal and discharge from probation are not deemed to be a conviction for state purposes. Id.

[3] The grounds of deportation listed in former 8 U.S.C. § 1251 were recodified as of April 1, 1997, and now appear in 8 U.S.C. § 1227.

which is one of many offenses defined as an aggravated felony by the INA, see 8 U.S.C. §1101(a)(43)(B)). Government Exh. "C".

On February 25, 1997, a deportation hearing was held before an Immigration Judge at which the INS submitted copies of Cantu-Delgadillo's criminal records showing his guilty plea and 10 years' probation for felony marijuana possession. On the basis of these criminal records, the Immigration Judge found Cantu-Delgadillo deportable on both grounds charged in the Order to Show Cause: (1) for having been convicted of a controlled substances offense, and (2) for having been convicted of the aggravated felony of a "drug trafficking crime" based on his guilty plea to felony marijuana possession and term of probation. In addition, the Immigration Judge found that Cantu-Delgadillo's aggravated felony conviction rendered him ineligible for any relief from deportation. Government Exh. "D". On these bases, the Immigration Judge ordered Cantu-Delgadillo to be deported to Mexico. Government Exh. "E".

## III. The Appeal To The Board of Immigration Appeals.

Cantu-Delgadillo filed a timely appeal of the Immigration Judge's decision with the Board of Immigration Appeals ("BIA"). In his notice of appeal, Cantu-Delgadillo challenged the finding of deportability on two grounds: (1) that his "[d]eferred adjudication was not a conviction for immigration purposes" and (2) his "drug offense was not an aggravated felony for immigration purposes."

Cantu-Delgadillo also argued that he should be eligible for relief from deportation under former Section 212(c) of the INA, 8 U.S.C. §1182(c) (1994) (repealed). This provision gave the Attorney General discretion to waive deportability for certain long-term resident aliens, but was eliminated for aliens convicted of controlled substances offenses or aggravated felonies as of April 24, 1996, by amendments to the INA in

Section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996) ("AEDPA"). See Requena-Rodriguez v. Pasquarell, 190 F.3d 299 (5th Cir. 1999).

Specifically, Cantu-Delgadillo argued to the BIA that: (1) it was impermissibly "retroactive" to apply AEDPA to eliminate Section 212(c) relief in his case, because he committed his drug crime prior to AEDPA's enactment; and (2) it was a violation of equal protection for AEDPA to have eliminated Section 212(c) relief for drug offenders and aggravated felons in deportation proceedings but not for those in exclusion proceedings. Government Exh. "F".[4]

In his brief to the BIA, Cantu-Delgadillo focused exclusively on the claim that his Texas deferred adjudication of guilt should not be construed to come within the meaning of a "conviction" for federal immigration purposes. He contended to the BIA that his deferred adjudication did not come within the meaning of a new statutory definition of "conviction" added to the INA in 1996, and codified at 8 U.S.C. §1101(a)(48) (2000), which defines a "conviction" for immigration purposes as, among things, a guilty plea plus some form of punishment or restraint on liberty. He contended that a Texas deferred adjudication did not meet this new statutory definition of "conviction" because (1) there was no formal sentence of probation, as in sentencing following a formal conviction; and (2) there was no final adjudication of guilt.[5] His brief to the BIA also made the

_____

[4] The Fifth Circuit subsequently rejected such claims, holding that (1) AEDPA does not have a "retroactive" effect in eliminating Section 212(c) relief for aliens with pre-AEDPA crimes, and (2) AEDPA's elimination of 212(c) relief for criminals in deportation proceedings but not exclusion proceedings does not violate equal protection. See Requena-Rodriguez, 190 F.3d at 308-09.

[5] The Fifth Circuit subsequently held in 1999 that a Texas deferred adjudication of guilt comes within the plain language of the new statute

following conclusory statement:   "Further, Respondent is eligible for 212(c) relief." Government Exh. "G".

At no point in his notice of appeal or brief to the BIA did Cantu-Delgadillo claim that his felony marijuana offense was a first-time drug offense, or that he should qualify for a "first-offender" exception to the definition of a "conviction" under the new statute. Government Exhs. "F" & "G". His sole challenge to the finding that he had a "conviction" for purposes of immigration law was the claim that a Texas deferred adjudication of guilt is should not be considered a "conviction" within the meaning of the new statutory definition. Id.

In a decision dated December 29, 1998, the BIA ruled that "a deferred adjudication under article 42.12, §5 of the Texas Code of Criminal Procedure is a conviction for immigration purposes" and found Cantu-Delgadillo deportable on the first charged ground of deportability, namely conviction of a controlled substance offense. In a footnote, the BIA concluded that Cantu-Delgadillo's crime of felony marihuana possession under Texas law was not an "aggravated felony," and that he was therefore not deportable on the second charged ground (conviction of an aggravated felony), relying on its decisions in Matter of L-G-, Int. Dec. 3254 (BIA 1995) and Matter of Davis, 20 I & N Dec. 536, 543 (BIA 1992) (construing a state crime of felony drug possession not to come within the meaning of the aggravated felony of a "drug trafficking crime as defined in [18 U.S.C.] §924(c)").[6]

---

defining "conviction," is clearly a "conviction" for immigration purposes, and that the new definition applies to all criminal dispositions, regardless of whether they occurred before, on, or after enactment of the new statute. Moosa, 171 F.3d at 1004-09.

[6]  The BIA's position in Matter of L-G and Matter of Davis was contrary to the law of the Fifth Circuit, which construes a state felony drug

The BIA then administratively closed the case rather than issuing an order of deportation for being a convicted controlled substances offender, in anticipation of the publication of new regulations by the Attorney General governing criminal aliens' eligibility for relief under Section 212(c), which were expected to be forthcoming. Government Exh. "H".

On March 29, 2001, the BIA reopened the case, concluding that the new regulations governing the availability of Section 212(c) relief did not apply to Cantu-Delgadillo's case, and indicated that a decision on the merits would be forthcoming. Government Exh. "I".

**IV.  The August 31, 2001 Decision Of The BIA.**

On August 31, 2001, the BIA issued a written decision and final deportation order dismissing Cantu-Delgadillo's appeal and ordering him to be deported to Mexico. On the issue of whether Cantu-Delgadillo's deferred

---

possession to come within the definition of the "aggravated felony" of a "drug trafficking crime as defined in 18 U.S.C. § 924(c)." See United States v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001) (rejecting BIA's position as erroneous).

As shown in the Argument below, in light of Hernandez-Avalos, the BIA has withdrawn from its decisions in Matter of L-G- and Matter of Davis in cases arising in the Fifth Circuit, see Matter of Salazar, 23 I & N Dec. 223, 235 (BIA 2002). It has also withdrawn from those decisions nationwide. Matter of Yanez-Garcia, 23 I & N Dec. 390 (BIA 2002) (admitting error and adopting nationwide the construction of the "aggravated felony" of a "drug trafficking crime as defined in 18 U.S.C. § 924(c)" which is used by the First, Fifth, Eighth, Ninth, Tenth, And Eleventh Circuits).

adjudication was a "conviction" for immigration purposes within the meaning of the 1996 statute defining that term (8 U.S.C. §1101(a)(48)), the BIA applied the Fifth Circuit's 1999 decision in Moosa, supra, which holds that a deferred adjudication is a "conviction." See 171 F.3d at 1004-06. On the issue of whether Cantu-Delgadillo's Texas crime of felony drug possession constituted the "aggravated felony" of a "drug trafficking crime as defined in 18 U.S.C. §924(c)," the BIA found that the footnote in its earlier decision finding the crime was not this type of aggravated felony was erroneous, and held that Cantu-Delgadillo's crime is an aggravated felony, applying the law of the Fifth Circuit in Hernandez-Avalos, supra, and United States v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997) holding that a state crime of felony drug possession is such an aggravated felony/drug trafficking crime. On the issue of whether it was impermissibly "retroactive" to apply AEDPA's April 24, 1996 amendments eliminating Section 212(c) relief for controlled substances offenders and aggravated felons to Cantu-Delgadillo's case, the BIA concluded that it was not, because he pled guilty to his drug crime on November 27, 1996, over 7 months after AEDPA took the relief away, and therefore could not have relied on that relief at the time he entered his plea. Government Exh. "J".

**V.  The Habeas Petition.**

Cantu-Delgadillo did not file a petition for direct review of the BIA's order in the court of appeals.  Instead, he waited over a year and then filed this habeas petition challenging his deportation order on the ground that his Texas deferred adjudication for second-degree felony marihuana possession is not a "conviction" and his crime is not an aggravated felony, so that he is not deportable for conviction of either a controlled substances offense or an aggravated felony.

In regard to the first claim, i.e., that Cantu-Delgadillo does not have a "conviction" immigration purposes, he has abandoned the claim that he litigated below and that was decided by the BIA B namely whether his Texas deferred adjudication of guilt comes within the meaning of the statutory definition of a "conviction" in the INA (8 U.S.C.§1101(a)(48)).[7] Instead, Cantu-Delgadillo has raised an entirely new legal claim and issue of statutory construction for the first time in his habeas petition, which was not presented to the agency below - namely whether a state "first-offender" exception should be read into the INA's statutory definition of "conviction" at 8 U.S.C. §1101(a)(48), contrary to the BIA's reading of the statute <u>Matter of Roldan</u>, Int. Dec. No. 3377 (BIA 1999), which has been read differently, and reversed in part, by the Ninth Circuit in <u>Lujan-Armendariz v. INS</u>, 222 F.3d 728 (9th Cir. 2000). Cantu-Delgadillo claims that the BIA's reading that no state "first-offender" exception exists, or survives the new statutory definition of "conviction," is erroneous and that a contrary reading by the Ninth Circuit is correct. (<u>See</u> Petition for Habeas Corpus, pp. 4, 6-7).

In regard to whether Cantu-Delgadillo's crime is an "aggravated felony," he has claimed that the BIA erred in following the law of the Fifth Circuit in <u>Avalos-Hernandez</u> holding that a state crime of felony drug possession is an "aggravated felony"/"drug trafficking crime." Instead, he claims that the BIA should have followed its prior decisions taking a contrary position (which as shown in note 6 above, the BIA has since concluded were erroneous and no longer applies). <u>See</u> Habeas Petition p. 6.

---

[7]  Presumably he has abandoned this claim because the Fifth Circuit has ruled in <u>Moosa</u>, 171 F.3d at 1004-09, that a Texas deferred adjudication is a "conviction" within the meaning of the statute, and hence such a claim has no merit.

In addition he has claimed that the BIA erred in finding him deportable for conviction of a controlled substances offense and for an aggravated felony, because it is an improper "retroactive" application of law violating due process: (1) to apply the statutory definition of a 'conviction' in INA Section 101(a)(48), 8 U.S.C. §1101(a)(48) (which was enacted on September 30, 1996) to his November 1996 guilty plea; (2) to apply the Fifth Circuit's 2001 construction of an "aggravated felony/drug trafficking crime" to his November 1996 guilty plea and crime; and (3) to apply the BIA's 1999 <u>Roldan</u> construction of "conviction" to his November 1996 guilty plea. Habeas Petition at 9-11.

He has also claimed that (1) it violates equal protection to have different constructions of what constitutes a "conviction" or an "aggravated felony" depending on the law of the Circuit in which a case arises; Habeas Petition at 7; (2) it violates a constitutionally protected interest and substantive due process for Congress to have eliminated discretionary Section 212(c) relief for aggravated felons and expanded the list of the kinds of crimes that constitute an "aggravated felony," and (3) the BIA's deportation order "violates international law [] and treaty obligations."

**ARGUMENT**

I.    **THIS COURT HAS NO HABEAS JURISDICTION OVER THE ISSUES RAISED BY THIS PETITION.**

A.    **Habeas jurisdiction is not available for Cantu-Delgadillo' statutory and constitutional challenges to his deportability for "conviction" of a controlled substances offense or an "aggravated felony," because these issues could have been raised on direct review in the court of appeals.**

Since Cantu-Delgadillo was placed in deportation proceedings before April 1, 1997, and the BIA issued its final order in his case more than 30 days after September 30, 1996 (in 2001), judicial review of his deportation

9

order is governed by "transitional rules" of review enacted in 1996 in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). <u>See Requena-Rodriguez</u>, 190 F.3d at 302. The Fifth Circuit has held that under these transitional rules of judicial review, district courts cannot entertain a habeas petition that raises issues that could have been considered on direct review in the court of appeals. <u>Santos v. Reno</u>, 228 F.3d 591, 596-97 (5th Cir. 2000).

Cantu-Delgadillo's various legal claims as to why he is not deportable for "conviction" of a controlled substances offense or an "aggravated felony" could have been presented to the Fifth Circuit in a petition for direct review. <u>Id.</u> and n. 11.(alien's claim that his crime was not a deportable aggravated felony could have been raised before court of appeals on direct review). These are issues that court of appeals has authority to decide in the case of a criminal alien, since on direct review it can still determine whether a person is (1) an alien; (2) is deportable, (3) for conviction of certain specified crimes, like an aggravated felony or a controlled substances offense. <u>See id.</u> Since Cantu-Delgadillo could have raised his legal challenges to his deportability for conviction of a controlled substances offense or aggravated felony on direct review and did not do so, he cannot now obtain review of his claims by means of habeas corpus. <u>See id.</u>

**B.    In the alternative, the court has no jurisdiction to review the claims that Cantu-Delgadillo comes within a "first-offender" exception to the definition of conviction, or that his deportation violates international law, because these claims were not raised below, pertain to facts that are outside the administrative record, and he did not exhaust his administrative remedies.**

As the Facts above show, Cantu-Delgadillo made no claim to the agency below that his drug offense was a first-time drug offense or that he should

receive the benefit of a state "first-offender" exception to the definition of "conviction." Accordingly, there is nothing in the administrative record to support these claims, and they are matters that are outside the scope of the BIA's decision. Similarly, he did not raise any claims that his deportation would violate international law or treaties.

The Fifth Circuit has held in Goonsuwan v. Ashcroft, 252 F.3d 383 (5th Cir. 2001), that habeas jurisdiction does not exist to review deportation orders where an alien has failed to exhaust his available administrative remedies and seeks to raise claims that are outside the administrative record. Cantu-Delgadillo could have raised a "first-offender" claim as well as any international-law claims in his administrative appeal before the BIA below. He did not do so. Instead, he waited until almost a year after the BIA had rendered a decision and then sought to raise these entirely new legal claims for the first time by means of habeas corpus.

As the Fifth Circuit has explained in regard to entertaining unexhausted claims by means of habeas corpus:  "[T]he appropriate inquiry is . . . whether [the alien] presented to the BIA the issue[,] . . . thus exhausting his administrative remedies as to that issue." Id. at 388. Having established an appellate procedure to review any legal claims an alien may wish to make, the BIA should be given the opportunity to decide those claims. Id. "It is irrelevant that the . . . error challenged by [the alien] is couched in terms of a due process violation. [citations omitted]." Id. "The available administrative remedy, coupled with Congress' vesting of jurisdiction in the agency, counsels against permitting an exception to the jurisdictional exhaustion requirement for claims . . . not raised before the BIA." Id., citing Perez-Rodriguez v. INS, 3 F.3d 1074, 1077 (7th Cir. 1993) ("The Attorney General, and, by delegation the immigration judge and the BIA are vested with the primary authority to

adjudicate an alien's deportability)." Id. at 389-90.   As the Fifth Circuit stated in <u>Goonsuwan</u>:    "By this holding we do not abdicate the responsibility of federal courts to protect constitutional rights.   <u>Id</u>. "[The alien] must merely present his claim to the BIA first . . . " Id. at 590.

**II.    ASSUMING THERE IS JURISDICTION, THE BIA HAS CORRECTLY READ THE STATUTORY DEFINITION OF "CONVICTION" TO CONTAIN NO STATE "FIRST-OFFENDER" EXCEPTION, AND ITS READING SHOULD BE AFFIRMED UNDER PRINCIPLES OF <u>CHEVRON</u> DEFERENCE.**

Assuming that the Court concludes that it has §2241 habeas jurisdiction to review Cantu-Delgadillo's claim that a state "first-offender" exception should be read into the INA's definition of "conviction" and applied to him -- notwithstanding that he never made such a claim below and there is no showing in the administrative record that his crime is in fact a first-time drug offense -- there is no merit to this claim.   This is in essence a claim of BIA error in construing the meaning of the statutory definition of "conviction," as set forth in INA Section 101(a)(48), 8 U.S.C. §1101(a)(48).

The Court reviews questions of law, including constitutional and statutory claims, <u>de novo</u> but must accord deference to the BIA's reading of the statutes it administers. See <u>Moosa</u>, 171 F.3d at 1004, citing <u>Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984).   This means that if, after applying all tools of statutory construction, "the intent of Congress is clear, that is the end of the matter[] [and] the court, as well as the [BIA] must given effect to the unambiguously expressed intent of Congress." <u>Id</u>.   If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the [BIA's] answer is based on a

12

permissible construction of the statute." <u>Id</u>.  "[T]he court [may] not simply impose its own construction on the statute" and must adopt the BIA's construction so long as it is "permissible." <u>Id</u>.

In order for the Court to determine whether the BIA's <u>Roldan</u> construction of the statute is proper or permissible, it must first have an understanding of the history of the definition of "conviction" and the statute at issue. This is especially so since the Ninth Circuit's decision in <u>Lujan-Armendariz</u> discussing these matters omits material case law and legislative history tending to show its construction is unsound.

**A.    The History Of The Definition Of "Conviction" And Enactment Of The Statute At Issue.**

**1.    The judicial and administrative interpretations of "conviction" prior to 1996 and administrative creation of a state "first-offender" exception.**

Prior to 1996, the INA did not contain a definition of the term "conviction." Its meaning was determined on a case-by-case basis in administrative and judicial decisions.  Depending upon the policies and procedures involved, an alien's guilty plea and criminal disposition might -- or might not -- constitute a "conviction" for immigration purposes. For example, the BIA had a 40-year policy that a state conviction for a crime involving moral turpitude which had been set aside or vacated for rehabilitative reasons would not count as a conviction for deportation purposes.  See <u>Matter of Ozkok</u>, 19 I & N Dec. 546, 548-59 (BIA 1988); <u>Matter of Ibarra-Obando</u>, 12 I & N Dec. 576 (BIA 1966; A.G. 1967); <u>Matter of G-</u>, 9 I & N Dec. 159 (BIA 1960; A.G. 1961); <u>Matter of A-F-</u>, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).[8]  The Attorney General refused to extend this

---

[8] This policy was repeatedly challenged within the agency during the 1960's, but the BIA maintained its policy toward expunged or vacated state convictions involving moral turpitude because the policy was

policy to drug convictions, however.  Thus, in 1959 the Attorney General decided that an alien's drug conviction would still count for immigration purposes, regardless of whether it had been vacated, expunged, or dismissed for rehabilitative reasons under state law, because this would promote uniform application of the immigration laws and would be consistent with Congress' strict policy against drug offenders.  Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).

In 1972, the United States Court of Appeals for the First Circuit decided not to consider a conviction that had been set aside under the Federal Youth Corrections Act ("FYCA") to constitute a "conviction" for immigration purposes, because the First Circuit made the policy choice that it was more important to give greater priority to Congress' criminal policy of leniency toward youthful offenders than to its immigration policy of deporting drug offenders.  Mestre Morera v. INS, 462 F.2d 1030 (1st Cir. 1972).  Two years later, in 1974, the BIA also made this policy choice, deciding not to consider a drug charge that had been expunged under the FYCA to be a conviction for immigration purposes.  Matter of Zingis, 14 I & N Dec. 621 (BIA 1974).

That same year the Solicitor General urged the BIA to construe the term "conviction" generously in favor of aliens, give effect to state rehabilitative statutes, and extend to state youthful and first-time drug offenders guilty of simple possession the same policy of leniency the BIA had extended to federal offenders.  Matter of Andrade, 14 I & N Dec. 651, 654 (BIA 1974) (Memorandum of Solicitor General).  The BIA followed this recommendation, deciding that the Federal First Offender Act ("FFOA") was

---

longstanding and there was no congressional intent to the contrary.  See Matter of G-, 9 I & N at 164-65.

the equivalent of the FYCA, and that as a matter of immigration policy a drug conviction "expunged" under the FFOA, or a state "counterpart," would not be considered a conviction for immigration purposes. Matter of Werk, 16 I & n Dec. 234 (BIA 1977); Matter of Kaneda, 16 I & N Dec. 677 (BIA 1979); Matter of Haddad, 16 I & N Dec. 253 (BIA 1977). The BIA chose to apply this new administrative policy narrowly, however, and considered drug offenders who were given rehabilitative treatment under state statutes that were broader in scope than the federal first-offender statute to have a "conviction" for immigration purposes. Matter of Deris, 20 I & N Dec. 5 (BIA 1989).

These policy decisions were made against the backdrop of an administrative construction of "conviction" that also required the following: (1) a judicial finding of guilt, (2) some court action removing a defendant's case from active consideration, such as a fine, sentence, or suspension of sentence, and (3) that the disposition was considered to be a conviction by the state, at least for some purpose. See Matter of L-R, 8 I & N Dec. 269 (BIA 1959). By 1988, however, the BIA had concluded that its interpretation of what constituted a conviction was unsatisfactory, because it did not fully encompass conviction-deferral procedures or prejudgment probation, i.e. dispositions in which aliens formally admitted their guilt but thereafter deferred proceedings and avoided a formal conviction, through a variety of state procedures. See Matter of Ozkok, 19 I & N Dec. 546. In addition, the BIA was concerned that the variety of state rehabilitative statutes were leading to "anomalous and unfair results" and were permitting aliens who were clearly guilty of criminal conduct, and whom Congress intended to be considered convicted, to escape the immigration consequences of their conduct. Id. at 551. Through the process of adjudication, the BIA adopted what it hoped would be a uniform

federal definition of "conviction" for immigration purposes. <u>Id</u>. For formal judgments, the BIA concluded that it would consider a person to be convicted if "the Court has adjudicated him guilty or has entered a formal judgment of guilt." <u>Id</u>.

For "deferred adjudications" -- where a formal judgment was deferred or withheld pending probation -- the BIA decided that a "conviction" should exist for immigration purposes if the following requirements were met:

(1)    a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt;

(2)    the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of non-essential activities or privileges, or community service); and

(3)    a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

<u>Matter of Ozkok</u>, 19 I & N Dec. at 551-52.

This did not lead to the uniformity the BIA had intended. Instead, criminal aliens who pled or were found guilty of an offense and had been sentenced to probation could still escape the immigration consequences of their conduct depending on the state procedures involved. <u>Compare Martinez-Montoya v. INS</u>, 904 F.2d 1018, 1021 (5th Cir. 1990) (holding that Texas guilty plea, withheld conviction, and probation is not a conviction for immigration purposes), <u>with Yanez-Popp v. INS</u>, 998 F.2d 231 (4th Cir. 1993) (holding that Maryland guilty plea without entry of judgment, plus probation, is a conviction) <u>and Molina v. INS</u>, 981 F.2d 14 (1st Cir. 1992)

(holding that Rhode Island nolo contendere plea plus probation is a conviction).

In the 1990s, the BIA reconsidered its administrative policy toward first-time state drug offenders whose convictions had been vacated or expunged. In Matter of Manrique, Int. Dec. 3250, 1995 WL 314732 (BIA 1995), the BIA decided that it would not consider a vacated state drug offense to be a conviction for immigration purposes if (1) the alien was convicted of simple possession; (2) it was his first offense; (3) he had received no previous first-offender treatment, and (4) the court entered an order pursuant to a state rehabilitative statute under which "the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation." Id. at 12.

Thus, as shown above, by 1996 there was no one, uniform federal definition of conviction for immigration purposes. Instead, there were a variety of administrative and judicial exceptions that had evolved by balancing concerns about finality, respect for state dispositions, uniformity of results, federal drug policies, federal rehabilitation policies for youthful offenders and first-time drug offenders -- and by attempting to take into account the distinctions between conviction-deferral or pre-judgment probation procedures and post-conviction expungement procedures.

These various exceptions caused discrepant results. Depending on the procedures, type of crime, and the competing policies involved, an alien who admitted his guilt and was given some form of probation might, or might not, be convicted for federal immigration purposes. The problems of uneven enforcement of federal immigration laws, and of aliens escaping the consequences of their criminal conduct because of a variety of

rehabilitative state procedures, which the BIA had sought to remedy in
Ozkok, still remained. See generally Matter of Ozkok, 19 I&N Dec. at 550
-51.

### 2.    The 1996 statute defining "conviction."

It was in this context that Congress enacted IIRIRA, which was signed
by the President on September 30, 1996.   IIRIRA added a new provision to
the Act, Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), creating for
the firs time a statutory definition of the term "conviction."  See IIRIRA
§322(a) codified at § 101(a)(48) of the INA, 8 U.S.C. §1101(a)(48) (1998).
That new definition states as follows:

> (A)  The term 'conviction' means, with respect to an alien, a
>      formal judgment of guilt of the alien entered by a court
>      or, if adjudication of guilt has been withheld, where--
>
> > (i)  a judge or jury as found the alien guilty or the
> >      alien has entered a plea of guilty or nolo
> >      contendere or has admitted sufficient facts to
> >      warrant a finding of guilt, and
>
> > (ii) the judge has ordered some form of punishment,
> >      penalty, or restraint on the alien's liberty to be
> >      imposed.
>
> (B)  Any reference to a term of imprisonment or a sentence with
>      respect to an offense is deemed to include the period of
>      incarceration or confinement ordered by a court of law
>      regardless of any suspension of the imposition or
>      execution of that imprisonment or sentence in whole or in
>      part.

See § 101(a)(48) of the INA, 8 U.S.C. §1101(a)(48).  The Joint Conference
Report commented on the congressional intent in drafting this provision as
follows:

> This section deliberately broadens the scope of the definition
> of "conviction" beyond that adopted by the BIA of Immigration
> Appeals in Matter of Ozkok, 19 I & N Dec. 546.  As the BIA noted
> in Ozkok, there exist in the various States a myriad of
> provisions for ameliorating the effects of a conviction.  As a
> result, aliens who have clearly been guilty of criminal behavior
> and whom Congress intended to be considered "convicted" have
> escaped the immigration consequences normally attendant upon a
> conviction.  Ozkok, while making it more difficult for alien

criminals to escape such consequences, does not go far enough
to address situations where a judgment of guilt or imposition
of sentence is suspended, conditioned upon the alien's future
good behavior.  For example, the third prong of Ozkok requires
that a judgment or adjudication of guilt may be entered if the
alien violates a term or condition of probation, without the
need for any further proceedings regarding guilt or innocence
on the original charge.  In some States, adjudication may be
"deferred" upon a finding or confession of guilt, and a final
judgment of guilt may not be imposed if the alien violates
probation until there is an additional proceeding regarding the
alien's guilt or innocence.  In such cases, the third prong of
the Ozkok definition prevents the original finding or confession
of guilt to be considered a "conviction" for deportation
purposes.

This new provision, by removing the third prong of Ozkok,
clarifies Congressional intent that even in cases where
adjudication is "deferred," the original finding or confession
of guilt is sufficient to establish a "conviction" for purposes
of the immigration laws.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) 1996 WL 563320

*496-97 [Leg.History](emphasis added).

### 3.    The BIA's Roldan Construction That The Former State "First-Offender" Exception Did Not Survive The New Statute.

In Matter of Roldan, Interim Decision No. 3377 (BIA 1999), 1999 WL

126433 (BIA), the BIA sitting en banc construed the new 1996 definition of

"conviction" to be satisfied by a formal conviction or a guilty plea and

some form of punishment, and to contain none of the former policy

exceptions created by administrative and judicial decisions for vacated,

dismissed, set aside, or expunged crimes under state law, or for state

"first-offender" crimes (first-time state drug offenses of simple

possession).  The BIA reached this construction by repeatedly noting that

until Congress enacted the new definition, construction of the term

"conviction" had been fluid, and that in the absence of a statutory

definition the BIA had struggled to reconcile its definition with the

increasing number of statutes providing ameliorative relief to convicted defendants.  See id. at *3.

The BIA concluded that "[t]he body of case law and administrative rulings that sought to . . . provide a uniform rule for when an alien is considered convicted for immigration purposes has now been superseded by [INA § 101(a)(48)]."  Id. at *8.  It concluded that with the enactment of new INA § 101(a)(48), "[w]e . . . have a clear indication that Congress intends that the determination of whether an alien is convicted for immigration purposes be fixed at the time of the original determination of guilty, coupled with the imposition of some punishment."  Id.  Thus, the BIA concluded that as a general rule rehabilitative state set-asides or expungements do not eliminate a conviction for immigration purposes.  Id. at **8-10.[9]

Reiterating that it found "no evidence in Congress' recent enactment that it intends to accord special treatment in the application of its immigration laws to first-time drug offenders who have been accorded rehabilitative treatment under a state law," the BIA concluded that the former state "first-offender" exception that it had created in 1977 in Matter of Werk, supra, and expanded in 1995 in Matter of Manrique had been superceded by the Congress' new definition of "conviction" and did no longer existed.  Id. at *14.

---

[9]   This aspect of the BIA's Roldan decision has been affirmed by Murillo-Espinoza, 261 F.3d at 772-73; Herrera-Inirio v. INS, 208 F.3d 299, 304-05 (1st Cir. 2000); and United States v. Campbell, 167 F.3d 94, 98 (2d Cir. 1999).

As for the effect of the new definition of "conviction" on federal first-offender dispositions under the FFOA, the BIA expressly stated that it was not deciding this issue and was reserving it for a later day, where it was squarely presented with an alien with a federal first-offender disposition. Id. at n. 9.

### 4. The Ninth Circuit's Contrary Reading In Lujan-Armendariz And The Circuit And BIA Decisions Since Lujan.

In Lujan-Armendariz, 222 F.3d at 743-44, the Ninth Circuit reversed that portion of the BIA's Roldan decision reading the new statutory definition of "conviction" as superceding and eliminating the former state "first-offender" exception created by Manrique and its predecessors. The Ninth Circuit did so by (1) disregarding the BIA's statement that it was not deciding the effect of the new definition of "conviction" as applied to federal first-time drug offenses under the FFOA, and (2) reaching out to decide this statutory issue in the first instance based on what it characterized as a Ninth Circuit "rule" of equal protection requiring federal first-offender treatment to be applied to state offenses. Id. at 743-46.

Citing the importance Congress' policy of rehabilitation of first-time federal drug offenders in the FFOA, the Ninth Circuit concluded that in order to avoid any irreconcilable conflict that might arise between the provisions of the FFOA and the new definition of "conviction" in the INA, the Ninth Circuit would give priority to the FFOA over the INA, and read a federal "first-offender" exception into the INA's definition of "conviction" for any federal drug offender who had received first-offender treatment under the FFOA. Id. at 744-45.

The Ninth Circuit then reapplied what it said was its "rule" of equal protection requiring federal and state first-offender convictions to be treated identically, and held that as a matter of equal protection the Court would also read a state "first-offender" exception into the INA's definition of "conviction" for any state drug offense that would qualify for first-offender treatment had it been prosecuted under the First Offender Act. Id. at 742, 743 and n. 24, 748-49. The Ninth Circuit therefore read into the INA's new definition of "conviction" not one – but two – unstated exceptions to Congress' definition of "conviction:" a federal "first-offender" exception and a state "first-offender" exception. Id.

So far, the Eighth and Eleventh Circuits have refused to apply the Ninth Circuit's decision in Lujan-Armendariz in cases where an alien has pled guilty to a first-time offense of simple drug possession in state court and received probation of more than one year. Vasquez-Velezmoro v. INS, 281 F.3d 693 (8th Cir. 2001) Fernandez-Bernal v. Attorney General, 257 F.3d 1304 (11th Cir. 2001). These Circuits have declined to decide of whether it is proper to read a state or federal "first-offender" exception into the definition of "conviction," and concluded, instead, that even assuming such exceptions existed, a state "first-offender" exception would not apply to an alien who received more than a year of probation for his state drug offense, because that is in excess of the one-year or less probation that qualifies for first-offender treatment under the FFOA. See id.; 18 U.S.C. §§ 3607(a) and (b). These Circuits have also ruled that there is no equal protection problem in construing an alien to have a "conviction" for immigration purposes based on a first-time offense of simple drug possession with a term of probation in excess of one year. Id.

The BIA has recently issued a decision rejecting the Ninth Circuit's _Lujan-Armendariz_ reading of the statute defining "conviction" as unsound and declining to adopt that reading nationwide. _Matter of Salazar_, 23 I & N Dec. 223 (BIA 2002). In _Salazar_, the BIA decided, just as it earlier decided in _Roldan_, that it would not decide whether a _federal_ drug offense under the First Offender Act constitutes a "conviction," but would leave that to a case squarely presenting that issue. It then stated that it was not persuaded by the Ninth Circuit's reasoning in _Lujan-Armendariz_ that withdrawal from the BIA's former policy of leniency toward state first-offenders violates equal protection, and declined to apply _Lujan-Armendariz_ beyond the Ninth Circuit. _Salazar_ 23 I & N Dec. at 233. The BIA looked at cases outside the context of immigration law, citing Supreme Court precedent rejecting the argument that equal protection requires uniformity between state and federal law. _Id._ at 232-33 (citing _McCleskey v. Kemp_, 481 U.S. 279, 312 (1987); _United States v. Antelope_, 430 U.S. 641, 648-49 (1977); _Williams v. Illinois_, 399 U.S. 235, 243 (1970)). Ultimately, the BIA found "no mechanism [in equal protection] to extend the principles of the federal first offender statute to offenses expunged under state rehabilitative laws." _Salazar_ 23 I & N Dec. at 233. The BIA noted that federal first offender treatment is not a right or entitlement, and that it "simply cannot be known whether any particular defendant in state proceedings would have been found to warrant such treatment had they been prosecuted in federal court." _Id._ at 232.

It is against this backdrop that this Court must decide whether Cantu-Delgadillo has a "conviction" within the meaning of the INA and whether the BIA erred in declining to read a state "first-offender" exception into the

INA's definition of "conviction." Moreover, as shown in the jurisdictional arguments, the Court must decide this on the basis of an administrative record in which there was never any claim or showing that Cantu-Delgadillo's crime is a first-time drug offense.

**B.    As the BIA has correctly concluded, the language of the statute is clear and unambiguous, and contains no indication that the former state "first-offender" exception survives the new statute.**

As the Fifth Circuit has already held in its decision in Moosa construing the statute defining "conviction" as applied to a Texas deferred adjudication, the starting point for construing the meaning of this statute is its language, and A[t]he text of [8 U.S.C.§1101(a)(48)] could not be more clear." 171 F.3d at 1004.

The plain language of 8 U.S.C. §1101(a)(48) states that "the term 'conviction' means . . . the alien has entered a plea of guilty . . . and the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." As the Fifth Circuit has already ruled, the language of the statute is plain and simply requires a guilty plea and some form of restraint on liberty. Moosa, 171 F.3d at 1005. Under the Fifth Circuit's reading of the statute, there is no question that Cantu-Delgadillo's disposition comes squarely within this definition, because he pled guilty to his drug offense and was given 10 years' of probation. Id.

It is well established that when a definition declares what a term "means" -- as opposed to what it "includes" -- it excludes any meaning that is not stated. Colautti v. Franklin, 439 U.S. 379 (1978). In addition, as the Supreme Court has made clear, exceptions to a statutory definition of "conviction" must be expressly stated and may not be implied. See Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111 (1983),

24

superseded by statute as stated in United States v. Sherbondy, 865 F.2d 996 (9th Cir. 1988); Andrus v. Glover Construction Co., 446 U.S. 608 (1980).

The INA's definition of a "conviction" states, inter alia, that it "means" a guilty plea and some form of imposition on liberty. 8 U.S.C. § 1101(a)(48); see Moosa, 171 F.3d at 1005. "No modifier is present, and nothing suggest[s] any restriction on the scope of the term 'convict[ion].'" Dickerson, 460 U.S. at 111. "Nothing on the face of the statute suggests a congressional intent to limit its coverage." Id. There are no exceptions for the kinds of dispositions that the BIA and courts previously determined would not constitute a "conviction," such as the former Manrique state "first-offender" exception. As the Fifth Circuit has already construed in Moosa, and the BIA concluded in Roldan, it was one thing for the BIA and courts to create policy exceptions or limits on the concept of a "conviction," when there was no statute defining the term. 171 F.3d at 1008. "Now, however, Congress has provided a definition." Id. 171 F.3d at 1008. That definition requires a guilty plea, and there is no indication, whatsoever, in the statutory language of 8 U.S.C. § 1101(a)(48) that the former state "first-offender" exception, which was created by the BIA and approved by the courts prior to 1996, survives the new definition.

Since this is the case, Cantu-Delgadillo's guilty plea and 10-year term of community supervision clearly come within the plain meaning of the statute, and he has a "conviction" for immigration purposes. Congress has spoken. Its intent is clear and should be followed.

**C.    The Conference Report supports the BIA's _Roldan_ reading that a state "first-offender" exception does not survive the statute, by making clear that Congress intends guilt, not the former judicial and administrative policies of rehabilitation or leniency, to be the determinative factor.**

A clear statement of legislative purpose in a committee report is powerful evidence of Congress' intent and should be given effect.  See Cardoza-Fonseca, 480 U.S. 428; Mastro Plastics Corp. v. NLRB, 350 U.S. 270 (1956); Church of the Holy Trinity v. United States, 143 U.S. 457 (1892).

Congress explicitly stated in the Committee Report that the purpose of adding the statutory definition of "conviction" in 8 U.S.C. § 1101(a)(48) was to "deliberately broade[n]" the preexisting definition of a conviction set forth in Ozkok.  See H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) (emphasis added).  This shows that Congress was dissatisfied with the preexisting interpretations of what constituted a conviction (one of which was the Manrique state first-offender exception), and intended to expand the definition to include more kinds of dispositions than previously covered.

The Committee Report also shows that Congress clearly intended the dispositive factor for determining whether an alien has been "convicted" to be whether he is guilty of criminal conduct -- not the type of disposition he received or whether his crime was a first-time drug offense. Thus, in the Committee Report Congress states:

> As a result [of ameliorating provisions], aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996).  The Committee Report also states that Congress wanted to stop treatment "that prevents the original finding or confession of guilt to be considered a 'conviction'

for deportation purposes" and that Congress was seeking to "clarif[y] [its] intent that . . . the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." Id. (emphasis added).

The Committee Report is a yet another indication of a clear intent on Congress' part to make the type of disposition that Cantu-Delgadillo received a conviction for immigration purposes. It states that Congress wants to ensure that an alien who pleads guilty -- as Cantu-Delgadillo did -- cannot escape the immigration consequences of his criminal conduct. It also rejects the policies of leniency and rehabilitation toward aliens who are guilty of crimes that led the BIA and the courts prior to 1996 to adopt exceptions to the definition of "conviction" for certain set-aside or expunged state crimes or for first-time state drug offenses of simple possession. Accordingly, the Committee Report  -- like the plain language of the statute -- supports the BIA's Roldan reading that the former state "first-offender" exception does not survive the new statute.

> **D.    Other related provisions of the INA and the legislative history also support the BIA's Roldan reading that no state "first-offender" exception survives.**

It is well settled that in determining the meaning of a statute, all related parts of the statute should be construed together.  See, e.g., Sanford v. Commissioner, IRS, 308 U.S. 39 (1939).  Each provision that pertains to the same subject must be construed in pari materia with other sections on the same subject, and this rule has the greatest force where statutes were enacted at the same time.  United States v. Steward, 311 U.S. 60 (1940); Erlenbaugh v. United States, 452 U.S. 967 (1972);  2B Singer, Sutherland Statutory Construction §51.03 at 140 (5th ed. 1992).

Reading the definition of "conviction" in 8 U.S.C. § 1101(a)(48) in pari materia with other provisions enacted at the same time also supports the BIA's Roldan construction, because it shows that in the 1996 immigration reforms of which 8 U.S.C. § 1101(a)(48) was a part, Congress intended to implement a new, strict policy toward criminal aliens, rejecting leniency in favor of deportation. The new statutory definition of "conviction" was one of several amendments to the INA enacted in IIRIRA in 1996 that were designed to implement this policy.   In addition to enacting the definition of "conviction," Congress also enacted a provision that expanded the list of crimes that constitute a deportable "aggravated felony". See 8 U.S.C. § 1101(a)(43).. It created new custody rules mandating the detention of criminal aliens pending their proceedings.  See 8 U.S.C. § 1226(c).  It withdrew discretionary relief for certain criminal aliens. See 8 U.S.C. § 1229a (Supp. IV 1998).  And Congress curtailed direct judicial review for several kinds of criminal aliens. See 8 U.S.C. § 1229(a)(2)(C).

The legislative history of the bills that enacted these reforms are replete with evidence that Congress' intent was to ensure that aliens who are guilty of crimes in this country are deported. Congressional studies showed that the number of criminal aliens has reached critical proportions and is threatening the integrity of America's immigration and criminal justice systems and public safety.  See, S. Rep. No. 48, 104th Cong., 1st Sess. (1995) (1995 WL 170285 (Leg.Hist.) at 1, 5, 6.  The Senate found that the rate of recidivism for criminal aliens was unacceptably high:

> Needless to say, the majority of criminal aliens released from custody do not return for their [deportation] hearings.  Having been returned to the streets to continue their criminal predation on the American citizenry, many are arrested soon after their release.

141 Cong. Rec. S 7808, 7823 (daily ed. June 7, 1995) (remarks of Senator Abraham). Congress' concerns about the unacceptably high rate of recidivism of criminal aliens and the threat they pose to public safety is strong evidence of an intent on Congress' part to reach all aliens, like Cantu-Delgadillo, who are guilty of criminal conduct and to afford them no leniency, especially not by giving effect to the former policies of leniency and rehabilitation that led the BIA and courts to create the state "first-offender" exception prior to 1996.

**E.    Given the above, it is clear that the former state "first-offender" exception does not survive the new statute; but even if that is unclear, the BIA's _Roldan_ construction is permissible and therefore should be affirmed.** .

As shown above, the BIA's decision in _Roldan,_ concluding that the former state "first-offender" exception does not survive Congress' enactment of the new statutory definition of "conviction" in 8 U.S.C. §1101(a)(48) is consistent with the plain text of the statute, which contains no such exception. Accordingly, Congress' intent is clear, no state "first-offender" exception survives, and that is the "end of the matter." See _Chevron_, 467 U.S. at 842-43. Even if Congress' intent is not clear, however, the BIA's _Roldan_ construction is certainly permissible, given the plain text of the statute, the expressions of intent in the Conference Report, and the immigration policy reflected in the legislative history and related provisions of the INA enacted at the same time. Since that is the case, the BIA's _Roldan_ construction should be affirmed under principles of _Chevron_ deference, and the Court should conclude that there is no state "first-offender" exception to the statutory definition of "conviction." _Cf._ _Moosa_, 171 F.3d at 1004, 1008-09 (reading the new statute not to carry forward unstated, former administrative and judicial requirements of "finality").

**F.    The BIA's Roldan construction does not create any conflict between the INA and the Federal First Offender Act, because state offenders are not subject to that Act.**

The Federal First Offender Act grants a sentencing court discretion to place a federal first-time drug offender who has been found guilty of simple drug possession on prejudgment probation for a term of not more than one year, in lieu of entering a formal conviction against him.  See 18 U.S.C. §3607(a).  If the offender successfully completes his probation, the First Offender INA instructs the court to dismiss the proceedings and discharge the offender from probation, and provides that a case disposed of in this manner shall not constitute a "conviction" for any purpose. 18 U.S.C. §3607(b).  Therefore, the FFOA provides that federal first-time drug offenders with an FFOA disposition do not have a "conviction."

The FFOA applies to federal drug offenses, not state drug offenses. Therefore, to the extent that the BIA has concluded in Roldan that a state first-time drug offender is now included within the INA's definition of a "conviction," there is no conflict with the FFOA, because the FFOA only applies to federal offenders, not state  offenders.

**G.    There is no rule of equal protection requiring Federal First Offender treatment to be extended to state drug offenders, and the Ninth Circuit's "first-offender" exception in Lujan-Armendariz is erroneous and unsound.**

As the First Circuit has correctly ruled, under our dual system of criminal justice, there are innumerable instances where there will be disparate immigration results depending on whether an alien is prosecuted in one state or another, or in a federal or a state court.  Garcia v. INS, 239 F.3d 409, 413-14 (1st Cir. 2001).  Disparate treatment of those accused of a crime is an inevitable concomitant of separate federal and state jurisdictions.  Id. at 413-14. Equal protection does not require uniformity between state and federal law.  Id. at 232-33 (citing McCleskey v. Kemp,

481 U.S. 279, 312 (1987); United States v. Antelope, 430 U.S. 641, 648-49 (1977); Williams v. Illinois, 399 U.S. 235, 243 (1970)). Federal first-offender treatment is also not a right or entitlement, but a matter of discretion with the prosecutor and sentencing judge. See 18 U.S.C. §3607(a).

As for the Ninth Circuit's decision in Lujan-Armendariz, 222 F.3d at 743-49, reading a "first-offender" exception into the INA's definition of "conviction" for state and federal first-time drug offenses where no exception is actually stated, that decision is statutorily and constitutionally unsound and should not be followed.

The Ninth Circuit's rewriting of the definition of "conviction" is contrary to the plain language of the statute. See 8 U.S.C. §1101(a)(48). It frustrates Congress' clear intent to make guilt B not rehabilitation B the determinative factor in whether an alien has a "conviction" for immigration purposes. It violates the governing rule of statutory construction, which would require Congress' strict new immigration policy toward criminal aliens to take precedence over the older, more general criminal policy toward drug offenders in the First Offender INA. Compare Lujan-Armendariz, 222 F.3d at 745 with United States v. Carper, 24 F.3d 1157, 1159 (9th Cir. 1994) (there is a "fundamental rule of statutory construction that a later, more specific provision prevails over an earlier, more general provision where there is a conflict").

To the extent that the decision purports to decide the effect of the new definition of "conviction" on the FFOA and to create a "first-offender" exception to avoid any "irreconcilable conflict with the FFOA, it is an improper advisory pinion as to a purely hypothetical issue not presented by the facts of the case. There was no federal first-offender disposition before the Ninth Circuit in Lujan-Armendariz. The only crimes at issue

were state offenses which do not come under the provisions of the FFOA."
See 222 F.3d at 744-48.

The Ninth Circuit has also written a "first-offender" exception into
the INA on the basis of an unsound "rule" of equal protection requiring
federal and state drug offenses to be treated identically, which has been
not been adopted by another Circuit. See 222 F.3d at 743 and n. 24, 748-49.

It has done so, in part by misreading the purpose of the new
definition of "conviction," viewing it as having been intended to alter the
timing of deferred adjudications of guilt – not eliminating the effects of
rehabilitative set-asides, dismissals, or other types of rehabilitative
dispositions – which is a view the Ninth Circuit has since changed, and no
longer holds. Compare 222 F.3d at 745-46 with Murillo-Espinoza, 261 F.3d
771. The Lujan-Armendariz view of the purpose of the statute also rested
on what the Ninth Circuit wrongly characterized as a "longstanding rule
that convictions that are subsequently . . . erased no longer have any
effect for immigration . . . purposes." Id. This misstates the law of the
Ninth Circuit and is contrary to its case law for the past thirty-five
years.[10]

---

[10]   Contrary to the Lujan-Armendariz decision, the actual law in the
Ninth Circuit for over 35 years has been that a conviction that has been
"erased" or set aside for rehabilitative reasons under state law is
still a conviction for federal immigration purposes. Compare Lujan-
Armendariz, 222 F.3d at 742, 745-47 (stating in dictum that Congress'
purpose in enacting the INA's new definition of "conviction" was not to
eliminate a "longstanding rule" that "a conviction entered but
subsequently vacated or set aside cannot serve as the basis for a
deportation order" -- but merely alter the timing of when a deferred
adjudication of guilt becomes a conviction) with Garcia-Gonzales v. INS,
344 F.2d 804, 808-09 (9th Cir.), cert. denied, 382 U.S. 840 (1965)
(state expungements do not "release [a person] from penalties or
disabilities imposed by federal law" and that "[i]t is sheer fiction to
say that the conviction is 'wiped out' or 'expunged'[for federal
deportation purposes] and Carr, 86 F.3d at 951 (rehabilitative state
expungements of firearms offenses do not eliminate conviction for
immigration purposes). See also Estrada-Rosales v. INS, 645 F.2d 819

In all, when the decision in <u>Lujan-Armendariz</u> is closely examined, it becomes apparent that what the Ninth Circuit has really done is to inappropriately rewrite the INA to reflect the Ninth Circuit's view that rehabilitation of first-offenders should trump Congress' immigration policy that aliens who are guilty of criminal conduct are not to escape the immigration consequences of their crimes. This is inappropriate judicial law-making. This Court should decline to follow such an approach.

> **H.    Even assuming, arguendo, that <u>Lujan-Armendariz</u> "first-offender" exception were to apply, Cantu-Delgadillo does not qualify because he was given a 10-year term of community supervision or probation.**

As shown above, the first-offender exception created in <u>Lujan-Armendariz</u> applies only to a vacated or set-aside first-time state offense of simple drug possession that would have qualified for first-offender treatment under the FFOA. 222 F.3d at 848. Also as shown above, the FFOA grants a sentencing court discretion to place a federal first-time drug offender who is guilty of simple drug possession on prejudgment probation for a term of not more than one year. <u>See</u> 18 U.S.C. §3607(a). If probation is successfully completed, the FFOA instructs the court to dismiss the proceedings and discharge the offender from probation, and there is no "conviction." 18 U.S.C. §3607(b).

The record shows that Cantu-Delgadillo pled guilty and was placed on probation for 10 years. This is far in excess of the one-year or less term

---

(9th Cir. 1981) (rehabilitative state expungement has no effect for federal deportation purposes); <u>Tsimbidy-Rochu v. INS</u>, 414 F.2d 797 (9th Cir. 1969) (same); <u>Brownrigg v. INS</u>, 356 F.2d 877 (9th Cir. 1966) (same); <u>Kelly v. INS</u>, 349 F.2d 473 (9th Cir.), <u>cert. denied</u>, 382 U.S. 932 (1965) (same).

of probation that would qualify for federal first offender treatment under
the FFOA had he been prosecuted federally instead of under state law.
Accordingly, as the Eighth and Eleventh Circuits have already concluded in
this type of situation, even assuming that a "first-offender" exception
were to exist (which it does not), it does not apply in the case of an
alien, like Cantu-Delgadillo, who has a term of probation in excess of one
year.  Vasquez-Velezmoro v. INS, 281 F.3d 693 (8th Cir. 2001) Fernandez-
Bernal v. Attorney General, 257 F.3d 1304 (11th Cir. 2001).  Moreover,
there is nothing in the record showing that Cantu-Delgadillo's crime is in
fact a first-time drug offense, or that he has successfully completed
probation and been discharged.

### III.  ASSUMING THERE IS JURSIDICTION, THE BIA CORRECTLY RULED THAT CANTU-DELGADILLO'S CRIME CONSTITUTES AN "AGGRAVATED FELONY."

Cantu-Delgadillo claims that the BIA erred in concluding that his
Texas crime of felony drug possession is an "aggravated felony."  This is
just plain wrong.

The INA defines an aggravated felony as, inter alia, "a drug
trafficking crime as defined in [18 U.S.C. §924(c)]," see 8 U.S.C.
§1101(a)(43)(B), which in turn is defined as "any felony punishable under
the Controlled Substances Act." 18 U.S.C. §924(c).

In 1992 and 1995 in Matter of L-G, supra, and Matter of Davis, supra,
the BIA construed a state crime of felony drug possession not to come
within the meaning of an aggravated felony/drug trafficking crime. (See
note 5 supra).  See Matter of Yanez-Garcia, 23 I & N Dec. 390 (BIA 2002).

In 1997, the Fifth Circuit read the statutes differently and construed a
state felony drug possession crime to come within the meaning of an
aggravated felony/drug trafficking crime. United States v. Hinojosa-Lopez,
130 F.3d 691, 694 (5th Cir. 1997).  In May 2001, the Fifth Circuit

reiterated this construction, specifically stating that the BIA's contrary reading of the statutes was erroneous, and that the plain language of the statutes left no doubt that Congress intended a state felony drug possession crime to come within the meaning of an aggravated felony/drug trafficking crime. United States v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001).

On August 31, 2001, the BIA issued its final decision in Cantu-Delgadillo's case, construing his Texas crime of felony drug possession to be an aggravated felony/drug trafficking crime, as construed by the Fifth Circuit in Hernandez-Avalos and Hinojosa-Lopez. Subsequently, the BIA adopted the position taken in Cantu-Delgadillo's case in both the Fifth Circuit and then nationwide, acknowledging that its prior construction appeared to be in error, and was contrary to the position of a majority of circuits. See Matter of Yanez-Garcia, I & N Dec. 390 (BIA 2002); Matter of Salazar, 23 I & N Dec. 223, 235 (BIA 2002).

Under Fifth Circuit law in Hernandez-Avalos and Hinojosa-Lopez, a state crime of felony drug possession comes within the meaning of the "aggravated felony" of a "drug trafficking crime." The record shows that Cantu-Delgadillo has a state crime of felony drug possession, because his offense of marihuana possession was a second-degree felony under Texas law. Thus under Hernandez-Avalos and Hinojosa-Lopez, his crime is an "aggravated felony," and the BIA properly found him deportable for such an offense.

His claim in the habeas petition that the BIA erred by applying Fifth Circuit law rather than the BIA's precedent decisions taking a contrary position has no merit. (Habeas Petition p. 6). It ignores that the BIA is bound by the case law of the Circuit in which a case arises. See Matter of Salazar, 23 I & N Dec. at 235-37. It also omits to mention that the BIA has concluded that its prior reading of what constitutes an aggravated

felony/drug trafficking offense was not correct, and that it has now changed its reading of the statutes to coincide with that of the majority of the Circuits. See Matter of Yanez-Garcia, 23 I & N Dec. 390 (BIA 2002) (citing cases from the First, Fifth, Eighth, Ninth, Tenth, And Eleventh Circuits holding that state felony drug possession is an "aggravated felony"/"drug trafficking crime"). The BIA certainly did not err in Cantu-Delgadillo's case by using a construction of an aggravated felony/drug trafficking crime that is the law in the Fifth Circuit where his case arises, a construction used by the majority of the Circuit courts, and one has now been adopted by the BIA nationwide.

As for the claim that it somehow violates equal protection to have aliens subject to different immigration consequences based different constructions in different Circuits as to the meaning of the aggravated felony of a "drug trafficking crime," or the meaning of a "conviction," (see Habeas Petition p. 7), this claim, too, is frivolous. There is no constitutional violation if the Circuits construe statutory provisions differently, so that the meaning of a statute differs from Circuit to Circuit. Were that the case, then any circuit split as to the meaning of a statute would constitute a constitutional violation, which is clearly absurd. A disagreement among the Circuits as to the meaning of statutes simply pertains to an issue of statutory construction and congressional intent, which can be resolved by seeking a definitive reading of the statute in question by the Supreme Court. In any event, as the Fifth Circuit has made clear, there is no "fundamental unfairness" or constitutional violation if aliens in one forum receives the benefit of erroneous interpretation of the law, while aliens in another forum do not. Hernandez-Avalos, 251 F.3d at 508.

36

IV.  **ASSUMING THERE IS JURISDICTION, THERE IS NO MERIT TO CANTU-DELGADILLO'S CLAIM OF IMPROPER "RETROACTIVE" APPLICATION OF THE LAW.**

Cantu-Delgadillo's habeas petition claims that it is impermissibly "retroactive" violating due process to (1) apply the 1996 statute defining "conviction" to his guilty plea, (2) apply the BIA's 1999 Roldan construction of "conviction" and (3) apply the Fifth Circuit's 1997 and 2001 construction of "aggravated felony" to his 1996 guilty plea and crime. These claims have no merit.

A.  **The Fifth Circuit has already held that the 1996 statute defining "conviction" is not impermissibly "retroactive."**

The issue whether a civil immigration statute has been improperly applied "retroactively" is a question of statutory construction as to what Congress intended, not an issue of procedural due process. See, e.g., Moosa, 171 F.3d at 1007-08 (construing congressional intent as to "retroactivity" of same statute defining "conviction" at issue in present case). Also as the Fifth Circuit has made clear: "it is well settled that Congress has the authority to make past criminal activity a new ground of deportation." Id. at 1008. Accordingly, Cantu-Delgadillo's claim of a violation of due process based on "retroactivity" concerns wrongly attempts to convert a question of congressional intent into a due process issue, and does not state any actual constitutional claim.

His claim of improper "retroactivity" is also just plain wrong. He has claimed that it is impermissibly "retroactive" to apply the 1996 statute defining "conviction" (which was enacted on September 30, 1996) to his November 1996 guilty plea. (See Habeas Petition at 9-10).  This is frivolous. In Moosa the Fifth Circuit has already ruled that this statute applies to all guilty pleas, no matter when they occurred, because the statute has an effective-date provision stating that it applies to criminal dispositions "entered before, on, or after the date of . . . enactment."

<u>Moosa</u>, 171 F.3d at 1006. Moreover, Cantu-Delgadillo's claim that it is impermissibly "retroactive" to apply the 1996 statute to his guilty plea ignores that he pled guilty more than a month after the new statute was enacted.

**B.    The claim that it is improperly "retroactive" to apply the BIA's 1999 <u>Roldan</u> construction defining "conviction," or the Fifth Circuit's 1997 and 2001 construction of an aggravated felony/drug trafficking crime ignores the difference between retroactivity in rule making and in statutory construction.**

It is a matter of "black letter law" that "statutes operate prospectively [unless the legislature indicates otherwise] and . . . judicial decisions apply retroactively." J. Fish, "Retroactivity and Legal Change: An Equilibrium and Approach," 110 Harv. L. Rev. 1055, 1057 (1997). "[C]onstruction of a statute is an authoritative statement of what the statute meant before[,] as well as after[,] the decision of the case giving rise to that construction." <u>Rivers v. Roadway Express, Inc.</u>, 511 U.S. 298, 312-13 (1994). When the courts or agencies construe the meaning of a statute through adjudication, they are "say[ing] what the law is," and "they make it as judges make it, which is to say as though they were 'finding' it - discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be." <u>See</u> <u>James B. Beam Distilling Company v. Georgia</u>, 501 U.S. 529, 546 (1991) (Scalia, J., concurring) (emphasis added).

Thus, when the BIA in 1999 construed the meaning of "conviction" in INA Section 101(a)(48) in <u>Matter of Roldan</u>, <u>supra</u>, or the Fifth Circuit in 1997 and 2001 construed the meaning of an "aggravated felony/drug trafficking crime" in <u>Hinojosa-Lopez</u> and <u>Hernandez-Avalos,</u> principles of *stare decisis* and "equality" require these constructions to be applied to all similarly situated litigants in subsequent cases, such as Cantu-

Delgadillo. See generally id. at 540. Accordingly, the BIA's Roldan construction of what constitutes a "conviction" and the Fifth Circuit's Hernandez-Avalos/Hinojosa-Lopez construction "must be given full retroactive effect" in all subsequent cases, regardless of whether the events predated or postdated those constructions. See Harper v. Virginia Department of Taxation, 509 U.S. 86 (1993); Dotson v. United States, 87 F.3d 682, 691 (5th Cir. 1996).

**V.    THERE IS NO MERIT TO THE REMAINING CLAIMS RAISED BY THE HABEAS PETITION.**

Cantu-Delgadillo has also raised a claim of a violation of "substantive due process," asserting that he has a constitutionally protected interest in obtaining discretionary relief from deportation and remaining in the United States with his family, which he alleges Congress unconstitutionally violated in 1996 when it expanded the list of crimes that constitute an "aggravated felony" and eliminated discretionary relief for aliens with aggravated felony convictions. See Habeas Petition at pp. 7-8. The Fifth Circuit has already rejected a constitutional challenge to these actions in Alfarache v. Cravener, 203 F.3d 381, 384 (5th Cir. 2000), holding that discretionary relief from deportation is "a piece of legislative grace" that "convey[s] no rights, confer[s] no status," and there is nothing unconstitutional in Congress having expanded the definition of "aggravated felony" and eliminated discretionary relief for aliens convicted of such a crime.

Finally, Cantu-Delgadillo has claimed that his deportation order violates unspecified international law or treaties between the United States and Mexico. This claim is outside the limited scope of habeas review under Section 2241, which only permits a court to determine whether a person is being held in custody violation of the "laws" or "Constitution"

of the United States, <u>see</u> 28 U.S.C. §2241, not international law or treaties. This claim is also far too conclusory and shows no error in the BIA's deportation order.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this habeas petition for lack of jurisdiction, or in the alternative deny the petition on the merits.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel: (956) 389-7051
Georgia Bar No. 590315
Federal Bar No. 23937

MARGARET PERRY
Senior Litigation Counsel
Office Of Immigration Litigation
Civil Division, U.S. Dept. Of Justice
P.O. Box 878 Ben Franklin Station
Washington DC 20044

Dated: August 26, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Return and Motion to Dismiss the Petition for Writ of Habeas Corpus was mailed via first class mail, postage prepaid to:

Lisa Brodyaga, Esquire
Refugio Del Rio Grande
17891 Landrum Park Rd.
San Benito, TX  78586

on this 26th day of August, 2002.


LISA M. PUTNAM
Special Assistant United States Attorney

41



OPTIONAL FORM 155
(Formerly FS-511)
January 1975
DEPT OF STATE

50155-101

**IV 6422342**

## IMMIGRANT VISA AND ALIEN REGISTRATION

THE IMMIGRANT
☑ HAS   ☐ HAS NOT
BEEN PREVIOUSLY IN
THE UNITED STATES

| (Family Name) | (First Name) | (Middle Name) | I & NS FILE NUMBER, IF KNOWN |
|---|---|---|---|
| DELGADILLO, TEODULO | | | |

ACTION BY IMMIGRANT INSPECTOR

408

ADMITTED SA-1
Indefinite

THE IMMIGRANT NAMED ABOVE ARRIVED IN THE UNITED STATES VIA

_ROM 408_

(Name of vessel or flight no. of arrival)

INELIGIBILITY FOR VISA WAIVED UNDER SECTION

☐ 212(e)   ☐ 212(h)
☐ 212(g)   ☐ 212(i)

SEC. 212(a)(14)
LABOR CERTIFICATION

☑ NOT APPLICABLE
☐ STATUTORILY EXEMPT
☐ ATTACHED  3
☐ NOT REQUIRED

| MO.-DAY-YR. OF BIRTH | COUNTRY OF BIRTH | OCCUPATION | COUNTRY OF LAST RESIDENCE | MARITAL STATUS | SEX | NATIONALITY |
|---|---|---|---|---|---|---|
| 02-17-70 | Mexico 582 | Student 450 | Mexico 582 | ☐M ☒X ☐W ☐D ☐SEP | ☒X ☐M ☐F | Mexican 92 |

FINAL ADDRESS IN THE UNITED STATES

STREET ADDRESS
1910 Deveney

CITY, STATE, AND ZIP CODE, IF AVAILABLE
Houston, Tex. 424

| ACTION OF S.I.O. | ACTION ON APPEAL | U.S.P.H.S. |
|---|---|---|
| | | 21 |

This visa is issued under Section 221 of the Immigration and Nationality Act, and upon the basis of the facts stated in the application. Possession of a visa does not entitle the bearer to enter the United States if at the time he seeks to enter he is found to be inadmissible. Upon arrival in the United States, it must be surrendered to a United States Immigration Officer.

Embassy

AMERICAN

AT

Mexico, D. F.

Vice Consul

of the United States of America.

UNITED STATES OF AMERICA

Tariff Item No. 21
Fee Paid $20
Local Cy Equiv. _____

jcg

| IMMIGRANT CLASSIFICATION | | |
|---|---|---|
| CLASSIFICATION SYMBOL SA-1 005 | | |
| FOREIGN STATE/OTHER AREA LIMITATION (Mexico) | | |
| Western Hemisphere IMMIGRANT VISA NO. Mex-2368 | | |
| ISSUED ON (Day) 30 | (Month) June | (Year) 78 |
| THE VALIDITY OF THIS VISA EXPIRES MIDNIGHT AT THE END OF (Day) 29 | (Month) Oct. | (Year) 78 |

| PASSPORT |
|---|
| NO. 8904 |
| OR OTHER TRAVEL DOCUMENTS (Describe) |
| ISSUED TO Roman Cantu Reyna, Wife & 4 Ch. |
| BY Mexican Foreign Office |
| ON May 12, 1978 |
| EXPIRES May 11, 1980 |

**IV 6422342**





THE STATE OF TEXAS
VS.
**TEODULO DELGADILLO CANTU**
P. O. BOX 399
LOS SAENZ, TX.

D.A. LOG NUMBER: **269501**
CJIS TRACKING NO.: **9002517793-A001**
SPN: ___01527064 999___          BY: VF          DA NO: 0569
DOB: WM/ 2 17 70                  AGENCY: HCOCU/NTF
DATE PREPARED: 4/27/96            O/R NO: 96TF0385
                                 ARREST DATE: 4 27 96

NCIC CODE: 3562 20               RELATED CASES:   JUAN HINOJOSA
FELONY CHARGE:
  POSSESSION OF MARIHUANA                                    $5,000
CAUSE NO: ___ ~~721432~~            **338th**       BAIL: $ ~~225,000~~
HARRIS COUNTY                        **GJ**          PRIOR CAUSE NO:
DISTRICT COURT NO: ___ ~~151~~                       Vol 20 Page 41 AXGM

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **TEODULO DELGADILLO CANTU**, hereafter styled the Defendant, on or about **APRIL 27, 1996**, did then and there unlawfully, intentionally and knowingly possess marihuana in a useable quantity of more than fifty pounds and less than two thousand pounds.

338th                                   **FOREMAN**

**AGAINST THE PEACE AND DIGNITY OF THE STATE.** Herman J. Malsie

_____
FOREMAN OF THE GRAND JURY

**INDICTMENT**

RECORDER'S MEMORANDUM:
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of filming.

NO. _721432_

THE STATE OF TEXAS

vs

Teodula Delgadillo
(Ruiz)

IN THE _351st_ DISTRICT

COURT OF HARRIS COUNTY, TEXAS

Change of Venue From: _____

## COMMUNITY SUPERVISION ORDER AND DEFERMENT OF ADJUDICATION OF GUILT

Judge Presiding: _Wm Hatten_       Date of Order: _11/27/1996_

Attorney for State: _Mia Maynes_       Attorney for Defendant: _R Villaguerra_ ] Waived Counsel

Offense: _Unlawfully intentionally and knowingly possess marihuana in a usable quantity of more than fifty pounds and less than two thousand pounds_       Degree: _2_       Date Offense Committed: _April 27 1996_

Charging Instrument: Indictment/Information       Plea: Guilty/Nolo Contendere

Terms of Plea Bargain (In Detail): _10 YEAR DAG / 1000 FINE, 360 HRS Community Service 450⁰⁰ TO DARE, 30 DAY HET AS COP_

(Circle appropriate selection - N/A = not available or not applicable)

Plea to Enhancement Paragraph(s): True | Not True | (N/A)       Findings on Enhancement: True | Not True | (N/A)

Affirmative Findings: (Circle appropriate selection - N/A = not available or not applicable)
DEADLY WEAPON: Yes |No |(N/A)   FAMILY VIOLENCE: Yes |No | (N/A)   HATE CRIME: Yes |No |(N/A)

Sexual Offender Registration Req. Under Art. 6252.13.C.1: Yes|No|(N/A)   Victim's Age: ____

Date Imposed: _11/27/1996_       Costs: $ _126,50_

ADJUDICATION OF GUILT DEFERRED, DEFENDANT PLACED ON PROBATION FOR _10_ MOS./YRS.
AND A FINE OF $ _1000_ .

Time Credited: _NA_       Total Amount of Restitution/Reparation/Reward:

Concurrent Unless Otherwise Specified: _____       Restitution/Reward to be Paid to:
                                                            Name: _____
                                                            Address: _____
Statement of Amount of Payment(s) required/Terms of Amount: _____

This cause being called for trial, the State appeared by her District Attorney as named above, and the Defendant named above appeared in person and either by counsel as indicated above or knowingly, intelligently and voluntarily waived the right to representation by counsel as indicated above, and both parties announced ready for trial. The said Defendant elected to proceed under Article 42.12, Section 5a of the Code of Criminal Procedure, and in open court, jury having been waived, the Defendant was duly arraigned, pleaded as indicated above to the charge as shown above.

Thereupon the Defendant was admonished by the Court of the consequences of the said plea, and the Defendant persisted in entering said plea; and it plainly appearing to the Court that the Defendant was sane and that he was uninfluenced by any consideration of fear, or persuasion, or delusive hope of pardon prompting him to confess his guilt, the said plea was accepted by the Court and is here entered of record upon the minutes. The Defendant having in open court, in writing, waived the appearance, confrontation, and cross-examination of witnesses, consented to the stipulation of evidence and to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence; and such waiver and consent having been approved by the Court in writing and filed in the papers of the cause, the said plea of the Defendant was received and entered of record upon the minutes.

The trial proceeded before the Court, and after the evidence was submitted and the argument of counsel thereon, the Court found that such evidence substantiates the Defendant's guilt in this cause, and further found that the best interest of society and of the Defendant would be served by deferring proceedings without entering an adjudication of guilt and placing the Defendant on community supervision in this cause as indicated above.

It is therefore CONSIDERED, ORDERED AND ADJUDGED, that in accordance with Article 42.12, Section 5a of the Code of Criminal Procedure, no judgment shall be entered in this cause and that the Defendant be, and he is hereby placed on community supervision in this cause for a period as indicated above, from this date, subject to the attached terms and conditions of community supervision. Further, the court finds the Presentence Investigation, if so ordered, was done according to the applicable provisions of Art. 42.12, Sec. 9, Code of Criminal Procedure.

Deferment of Adjudication of Guilt/Felony or Misdemeanor
CRM-13   R09-05-95                     -1-                     12008 P0332

BILL OF COSTS

CANTU                                              72/432

Payment Type: ____ (S, I, D, M or L:)  (NOTE: If "I" or "D" see attached order)
Jail Time: _____ __ H/D/M/Y  CC: Y/N ___  Y=Yes  N=No (jail/fine/cost concurrent)
Time Assessed TDCJ, (ID) Institutional/(SJ) State Jail; _____ Div: _____ __ D/M/Y
Jail Credit: _____ H/D/M/Y    Sentence to Begin Date: _____
HCJ/SJ) _____ as a Condition of Community Supervision _____ ___ H/D/M/Y
Additional Jail Credit: _____ H/D/M/Y
Payable on or Before: _____ PLO: _____ Reward SPN: _____ COC: _____
_____ Hours of Sentence to be Served by Performing Community Service
Defendant to Serve Sentence by Electronic Monitoring?  (Y or N): _____
NOTE TO SHERIFF:

| | | | | |
|---|---|---|---|---|
| Transcript at: _____ Pages......... | | Crime Stoppers Fee........ | 2 | 00 |
| Serving Capias: ____/Summons: _____ | | Jury Fee.................. | | |
| Summoning ____ Witness/Mileage...... | | CJPF..................... | 20 | 00 |
| Jury Fee.......................... | | LEOSEF................... | 1 | 50 |
| Taking: _____ Bonds............... | | CVCF..................... | 45' | 00 |
| Commitment........................ | | DCLCF.................... | | |
| Release........................... | | JCTF..................... | 1 | 00 |
| Attachment........................ | | Video Fee................ | | |
| Arrest W/O Warrant/Capias......... | | DWI Evaluation Fee....... | | |
| -----------RECAPITULATION---------- | | Reward Repayment......... | | |
| Fine Amount....................... | | Security Fee............. | 5 | 00 |
| Miscellaneous Costs............... | | Records Preservation Fee. | | |
| Judicial Fund Fee................. | | ACCA..................... | | |
| Special Expense................... | | Financial Responsibility. | | |
| Trial Fee......................... | | PTR Fee.................. | | |
| District Attorney Fee............. | | Attorney Fee............. | | |
| Clerk's Fee....................... | 40 | 00 | Breath Alcohol Testing... | | |
| Sheriff's Fees (Total)............ | | Rehabilitation Fund...... | | |
| Misdemeanor Costs................. | | Amount Probated/Waived... | | |
| MAP Traffic Costs................. | | TOTAL AMOUNT OWED........ | | |

Signed and entered this the 27 day of _NOVEMBER_, A.D., 19 96

Notice of Appeal: _____ 19 ___                   _____
                                              PRESIDING JUDGE

Probation Expires: 11/26 19 2006

Mandate Received: _____ 19 ___, community supervision commences
on: _____, 19 _____.

Received on _____ day of _____, A.D., 19 ____ at _____ o'clock ___ .M.

Sheriff, Harris County, Texas

By: _____ Deputy

Entered /3 _____
Verified _____



Defendant's
Right Thumbprint

72008 P0333

.



**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

# ORDER TO SHOW CAUSE AND NOTICE OF HEARING
## *(ORDEN DE PRESENTAR MOTIVOS JUSTIFICANTES Y AVISO DE AUDIENCIA)*

In Deportation Proceedings under Section 242 of the Immigration and Nationality Act.
*(En los tramites de deportacion a tenor de la seccion 242 de la Ley de Inmigracion y Nacionalidad.)*

**United States of America:**                                    **File No.** ____**A36 422 342**____
*(Estados Unidos de America:)*                                   *(No. de registro)*

                                                                 **Dated** ____**January 31, 1997**____
**HCSO SPN No.: 01527064**                                       *(Fechada)*

                                      HCSO Name: CANTU, Teodulo Delgadillo
In the matter of                      INS Name: ~~Cantu~~ Delgadillo, Teodulo    *C.b. 25·97*    (Respondent)
*(En el asunto de)*                   *Cantu*    *2.25·97*                                       *(Demandado)*
Address                               c/o U.S. Immigration and Naturalization Service
*(Direccion)*

                                      15850 Export Plaza Drive    Houston, Texas   77032

Telephone No. (Area Code) _____
*(No. de telefono y codigo de area)*

Upon inquiry conducted by the Immigration and Naturalization Service, it is alleged that:
*(Segun las indagaciones realizadas por el Servicio de Inmigracion y Naturalizacion, se alega que:)*

1) **You are not a citizen or national of the United States;**
   *(Ud. no es ciudadano o nacional de los Estados Unidos:)*

2) **You are a native of Mexico and a citizen of Mexico;**
   *(Ud. es nativo de Mexico y ciudadano de Mexico;)*

3) **You entered the United States at or near Roma, Texas, on or about July 5, 1978;**
   *(Ud. entro a los Estados Unidos en o cerca de Roma, Tejas, el dia o hacia esa fecha de 5 de julio 1978;)*

4) **You were then admitted as an immigrant;**
   *(Ud. fue admitido entonces como un inmigrante;)*

5) **You were, on November 27, 1996, convicted in the 351st District Court of Harris County, Texas, for the offense of UNLAWFULLY, INTENTIONALLY, AND KNOWINGLY POSSESS MARIJUANA IN A USEABLE QUANTITY OF MORE THAN 50 POUNDS LESS 2,000 POUNDS;**
   *(Ud. resulto convicto el 27 de noviembre 1996, en el Tribunal Districto 351 del Condado de Harris, Tejas, por el delito de ILEGALMENTE, INTENCIONADAMENTE Y A SABIENDAS DE POSEER UNA SUSTANCIA CONTROLADA, A SABER: MARIHUANA EN UNA CANTIDAD USABLE DE MAS DE 50 LIBRAS PERO MENOS DE 2,000 LIBRAS;)*

6) **The marijuana described in allegation number "5" was not for your personal use, but intended for sale or distribution.**
   *(La marihuana descrita en la alegacion numero "5" no era para su uso personal, sino que intentaba venderla o disribuirla.)*


*Denied but Found by IJ through ex. 2.*


*Ex #1 2.25.97 C.L.*

Form I-221 (Rev. 6/12/92) N                                                      Page 1

**U.S. Department of Justice**
Immigration and Naturalization Service                                    Order to Show Cause and Notice of Hearing

## NOTICE OF RIGHTS AND CONSEQUENCES

The Immigration and Naturalization Service believes that you are an alien not lawfully entitled to be in or to remain in the United States. Read this notice carefully and ask questions about anything in this notice you do not understand. This notice identifies your rights as an alien in deportation proceedings, and your obligations and the conditions with which you must comply in order to protect your eligibility to be considered for certain benefits.

Any statement you make before an Immigration Officer may be used against you in any immigration or administrative proceeding.

You may be represented, at no expense to the United States government, by an attorney or other individual who is authorized and qualified to represent persons in these proceedings. You will be given a list of organizations, attorneys and other persons who have indicated their availability to represent aliens in these proceedings. Some of these persons may represent you free of charge or for a nominal fee. You may also be represented by a friend, relative, or other person having a pre-existing relationship with you, provided his or her appearance is permitted by the immigration judge.

You will have a hearing before an immigration judge, scheduled no sooner than 14 days from the date you are served with this Order to Show Cause (unless you request in writing an earlier hearing date). The fourteen-day period is to allow you to seek an attorney or representative, if you desire to be represented. At your hearing, you will be given the opportunity to admit or deny any or all of the allegations in this Order to Show Cause, and whether you are deportable on the charges set forth herein. You will have an opportunity to present evidence and/or witnesses on your own behalf, to examine evidence presented by the government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the government. Any document that you present that is in a foreign language must be accompanied by a certified English translation. It is your responsibility to ensure that any witnesses you wish to present on your behalf be present at the hearing.

The immigration judge will advise you regarding relief from deportation for which you may be eligible. You will be given a reasonable opportunity to make an application for any such relief. If you are not satisfied with the decision of the immigration judge, you will have the right to appeal. The immigration judge will provide you with your appeal rights.

## AVISO DE DERECHOS Y CONSECUENCIAS

El Servicio de Inmigracion y Naturalizacion opina que Ud. es un extranjero sin derecho legal a estar o permanecer en los Estados Unidos. Lea este aviso cuidadosamente y pregunte acerca de cualquier parte del mismo que no entienda. Este aviso le explica los derechos que tiene como extranjero en los tramites de deportacion, y las obligaciones y condiciones que debe cumplir con el fin de proteger su derecho a que se le considere para recibir ciertos beneficios.

Las declaraciones que haga ante un funcionario del Servicio de Inmigracion podran usarse en su contra en cualquier tramite administrativo o de inmigracion.

Ud. puede ser representado, sin costo alguno para el gobierno de los Estados Unidos, por un abogado o otra persona autorizada y calificada para representar personas en estos tramites. Ud. recibira una lista de las entidades, abogados y demas personas dispuestas a representar a extranjeros en estos tramites. Algunas de esas personas pueden representarle gratuitamente o por honorarios nominales. Tambien puede representarle un amigo, familiar o otra persona con la que tenga una relacion establecida, siempre que el juez de inmigracion permita su comparecencia.

Ud. tendra una audiencia ante un juez de inmigracion, fijada con un minimo de 14 dias a partir de la fecha que se le expidio esta Orden (a menos que Ud. solicite por escrito una audiencia en plazo aun menor). El plazo de catorce dias le permitira conseguir los servicios de un abogado o representante, si lo desea. En la audiencia se le dara la oportunidad de admitir o negar cualquiera de los alegatos de esta Orden o todos ellos, y se le informara si esta sujeto a deportacion por los cargos expresados en la misma. Ud. tendra la oportunidad de presentar pruebas y testigos a favor suyo, de examinar las pruebas presentadas por el gobierno, de oponerse, con base en los razonamientos legales pertinentes, a la admision de pruebas y de interrogar a cualquier testigo del gobierno. Todo documento que presente en un idioma extranjero debe ir acompanado de una traduccion certificada al ingles. Sera responsabilidad suya asegurarse de que cualquier testigo suyo comparesca a la audiencia.

El juez de inmigracion le informara sobre los recursos de deportacion a los que tenga derecho y se le dara una oportunidad adecuada para solicitarlos. Si no esta de acuerdo con la decision del jues, puede apelarla. El juez de inmigracion le informara acerca de sus derechos de apelacion.

**U.S. Department of Justice**
Immigration and Naturalization Service                                    Order to Show Cause and Notice of Hearing

**Continuation Sheet**
*(Hoja complementaria)*

Dated _____ **January 31, 1997** _____
*(Fechada)*

Respondent ___ **CANU-Delgadillo, Teodulo** ___          File No. _____ **A36 422 342** _____
*(Demandado)*                                              *(No. de registro)*

      **AND** on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:
      *(Y segun los alegatos anteriores, se le acusa de estar sujeto a deportacion de acuerdo con la(s) siguiente(s) disposicion(es) de la ley:)*

Section 241 (a) (2) (B) (i) of the Immigration and Nationality Act (Act), as amended, in that, at any time after entry, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.
*(Seccion 241 (a) (2) (B) (i) de la Ley de Inmigracion y Nacionalidad (INA), segun enmendada, en que, en algun momento despues de su entrada, Ud. ha resultado convicto de una violacion de (o una conspiracion o intento de violacion) de alguna ley o reglamentacion de un Estado, de los Estados Unidos, o de un pais extranjero referente a una sustancia controlada (segun se define en la seccion 102 de la Ley de Sustancias Controladas, 21 U.S.C. 802).), con excepcion de un delito sencillo en relacion a la posesion de 30 gramos o menos de marijuana para uso personal.)*

Section 241 (a) (2) (A) (iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after entry, you have been convicted of an aggravated felony as defined in section 101 (a) (43) of the Act.
*(Seccion 241 (a) (2) (A) (iii) de la Ley de Inmigracion y Nacionalidad (INA), segun enmendada, en que, en algun momento despues de su entrada, Ud. ha resultado convicto de una felonia agravada, segun se define en la seccion 101 (a) (43) de la INA.)*

      **WHEREFORE, YOU ARE ORDERED** to appear for a hearing before an Immigration Judge of the Executive Office for Immigration Review of the United States Department of Justice at:
      *(POR LO CUAL, SE LE ORDENA comparecer ante un juez de inmigracion de la Oficina Ejecutiva de Revision de Inmigracion del Departamento de Justicia de los Estados Unidos en;)*

            To be calendared and notice provided by the office of the Immigration Judge.  Notice will be mailed
Address  to the address provided by the respondent. _____
*(Direccion)*  *(La oficina del juez de inmigracion enviara un aviso a la direccion facilitada por el demandado con*
    On  *la fecha de la audiencia.)* _____  At _____ .m.
*(Fecha)*                                                              *(Hora)*
and show cause why you should not be deported from the United States on the charge(s) set forth above.
*(y mostrar motivos justificantes por cual no deberia ser deportado de los Estados Unidos por los cargos expresados anteriormente.)*

Dated _____ **January 31, 1997** _____          Signature of Issuing Officer ___ *John A. Abril* ___
*(Fechada)*                                          *(Firma del funcionario que la expide)*

                                       **Assistant District Director**
City and State of Issuance ___ **Houston, Texas** ___          Title of Issuing Officer ___ **for Investigations** ___
*(Ciudad y Estado donde se expide)*                            *(Titulo del funcionario que la expide)*

Form I-221 (Rev. 6/12/92) N                                                              Page 3

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

You are required to be present at your deportation hearing prepared to proceed. If you fail to appear at any hearing after having been given written notice of the date, time and location of your hearing, you will be ordered deported *in your absence*, if it is established that you are deportable and you have been provided the appropriate notice of the hearing.

You are required by law to provide immediately in writing an address (and telephone number, if any) where you can be contacted. You are required to provide written notice, within five (5) days, of any change in your address or telephone number to the office of the Immigration Judge listed in this notice. Any notices will be mailed only to the last address provided by you. If you are represented, notice will be sent to your representative. If you fail to appear at the scheduled deportation hearing, you will be ordered deported *in your absence* if it is established that you are deportable and you have been provided the appropriate notice of the hearing.

If you are ordered deported *in your absence*, you cannot seek to have that order rescinded except that: (a) you may file a motion to reopen the hearing within 180 days after the date of the order if you are able to show that your failure to appear was because of exceptional circumstances, or (b) you may file a motion to reopen at any time after the date of the order if you can show that you did not receive written notice of your hearing and you had provided your address and telephone number (or any changes of your address or telephone number) as required, or that you were incarcerated and did not appear at your hearing through no fault of your own. If you choose to seek judicial review of a deportation order entered *in your absence*, you must file the petition for review within 60 days (30 days if you are convicted of an aggravated felony) after the date of the final order, and the review shall be confined to the issued of validity of the notice provided to you, the reasons for your failure to appear at your hearing, and whether the government established that you are deportable.

In addition to the above, if you are ordered deported *in your absence*, you are ineligible for five (5) years from the date of the final order for the following relief from deportation: voluntary departure under section 242(b) of the Immigration and Nationality Act (INA); suspension of deportation or voluntary departure under section 244 of the INA; and adjustment of status under sections 245, 248, and 249 of the INA.

The copy of this Order to Show Cause served upon you is evidence of your alien registration while you are under deportation proceedings. The law requires that you carry it with you at all times.

Esta obligado a asistir a la audiencia de deportacion y de estar preparado para ella. Si no asiste a cualquiera de las audiencias despues de haber sido notificado por escrito de la fecha, hora y lugar de la audiencia, se ordenara su deportacion *en su ausencia*, si se establece que puede ser deportado y que recibio los avisos correspondientes.

La ley le obliga a informar inmediatamente por escrito de su domicilio (y numero de telefono, de haberlo) donde pueda ser localizado. Tiene la obligacion de notificar por escrito, en el plazo de cinco (5) dias, cualquier cambio de domicilio o de telefono a la oficina del juez de inmigracion que aparece en este aviso. Los avisos se enviaran solamente a la ultima direccion facilitada por Ud. Si ha decidido tener un representante, se enviaran los avisos a dicha persona. Si no asiste a cualquiera de las audiencias despues de haber sido notificado por escrito de la fecha, hora y lugar de las mismas, se ordenara su deportacion *en su ausencia*, si se establece que puede ser deportado y que recibio el aviso de la audiencia.

Si se ordena su deportacion *en su ausencia*, no podra solicitar la anulacion de esa orden salvo que: a) pueda presentar un pedimento para tener otra audiencia en el plazo de 180 dias despues de la fecha de la orden si puede demostrar que no comparecio debido a circunstancias excepcionales o b) puede presentar un pedimento para tener otra audiencia en cualquier momento despues de la fecha de la orden si puede demostrar que no recibio el aviso de la audiencia o escrito y que habia facilitado su direccion y numero de telefono (o notificado los cambios de direccion o numbero de telefono) segun lo previsto, o que estaba encarcelado y no comparecio a la audiencia por motivos ajenos a sun oluntad. Si decide solicitar una revision judicial de la orden de deportacion *en su ausencia*, debe presentar la solicitud de revision en el plazo de 60 dias (30 dias si ha sido condenado por un delito grave con agravantes) a partir de la fecha de la orden definitiva, y la revision se limitara a decidir si el aviso que recibio es valido, las razones por las cuales no comparecio a la audiencia y si el gobierno demostro que puede ser deportado.

Ademas de lo anterior, si se ordena su deportacion *en su ausencia*, no podra, en el plazo de cinco anos despues de la fecha de la orden definitiva, tener derecho a los siguentes recursos: salida voluntaria segun la seccion 242(b) de la ley de Inmigracion y Nacionalidad (INA); suspension de la deportacion o de la salida voluntaria segun la seccion 244 de la INA, y ajuste de condicion segun las secciones 245, 248 y 249 de la INA.

Esta copia de la Orden de Presentar Motivos Justificantes que le ha sido notificada constituye la prueba de su registro de extranjero mientras se llevan a cabo los tramites para su deportacion. La ley le exige que la lleve consigo en todo momento.

| This Order to Show Cause shall be filed with the Immigration Judge of the Executive Office of Immigration Review at the address provided below. You must report any changes of your address or telephone number in writing to this office: | Debe presentar esta Orden de Presentar Motivos Justificantes a la Oficina Ejecutiva de Revision de Inmigracion en la siguiente direccion. Debe notificar cualquier cambio de su domocilio o numero de telefono por escrito a: |
|---|---|

### The Office of the Immigration Judge

This Order to Show Cause will be filed with the Office of the Immigration Judge, 2320 La Branch Street, Room 2235, Houston, Texas 77004. Any inquiries or correspondence concerning your deportation hearing should be directed to that office.

---

### Certificate of Translation and Oral Notice

This Order to Show Cause [✓] was [ ] was not read to the named alien in the _____ Spanish _____ language, which is his/her native language or a language which he/she understands.

01/31/97 _____ / _____ Signature _____    SAMES SMITH, IA
Date                Signature                Printed Name and Title of Translator

Investigations, 509 North Belt, Houston, Texas 77060
Address of Translator (if other than INS employee) or office location and division (if INS employee)

---

(If oral notice was not provided please explain)

---

| Manner of Service | Alien's Right Index Print |
|---|---|
| [✓] Personal Service to Alien<br><br>[ ] Certified Mail - Return Receipt Requested<br><br>   [ ] Alien<br><br>   [ ] Counsel of Record |  |

---

### Certificate of Service

This Order to Show Cause was served by me at _____ Houston, Texas _____ on _____ 01/31 _____, 19 _97_
at _10:50_ A m.

_____ / _____ SAMES SMITH _____ IA _____ Houston, Texas
Officer's Signature        Printed Name        Title        Office

Teodulo Cantu
Alien's Signature (acknowledgement/receipt of this form)
(Firma de extranjero/acuse de recibo)

---

### Request for Prompt Hearing and Waiver of 14-Day Minimum Period
### (Solicitud de audiencia inmediata y renuncia al plazo minimo de 14 dias)
To expedite determination of my case, I request an immediate hearing, and waive my right to the 14 day notice.
(Para agilizar la decision sobre mi caso, solicito una audiencia inmediata y renuncio a mi derecho a un plazo minimo de 14 dias.)

Teodulo Cantu                                    01/31/97
Signature of Respondent                          Date
(Firma de demandado)                             (Fecha)

Form I-221 (Rev. 6/12/92) N                                              Page 5



U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Houston, Texas

File No:  A 36 422 342                      February 25, 1997

In the Matter of

TEODULO CANTU-DELGADILLO,

          Respondent

                  ) In DEPORTATION PROCEEDINGS

ON BEHALF OF RESPONDENT:                ON BEHALF OF SERVICE:

Charles A. Banker, III, Esquire         Charlotte K. Lang, Esquire
                                        Assistant District Counsel
                                        INS

## ORAL DECISION OF THE IMMIGRATION JUDGE

       The respondent is a man who is a native and citizen
of Mexico. He appeared with counsel and denied the factual
allegations and the charges in the Order to Show Cause, but all
of the factual allegations were found to be true, and the
charges establishes by virtue of Exhibit 2, which was tendered
by the Government and admitted without objection. Based on the

c

findings of the Court, respondent's deportability has been established by clear, convincing and unequivocal evidence.

Applicant entered the United States as a permanent resident in 1978. On November 27, 1996, he was convicted in a state district court for possession of between 50 and 2,000 pounds or marijuana. The Court has explained to the respondent that due to the 1996 changes in the Immigration & Nationality Act, his deferred adjudication for this crime operates as a conviction, and that a permanent resident with an aggravated drug conviction can no longer keep his residence. The Court sees that there is no relief from deportation for the respondent, and it is therefore ordered that he is deported to Mexico on the charges contained in the Order to Show Cause.

---

SUSAN YARBROUGH
United States Immigration Judge

A 36 422 342                    2                    February 25, 1997

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before JUDGE SUSAN YARBROUGH in the matter of:

TEODULO CANTU-DELGADILLO

A 36 422 342

Houston, Texas

was held as herein appears, and that this is the original transcript thereof for the file of the Executive Office for Immigration Review.

_K S Croteau_____

(Kristina S. Croteau, Transcriber)

Deposition Services, Inc.
6245 Executive Boulevard
Rockville, MD  20852
(301) 881-3344

_____April 14, 1997_____
(Completion Date)



**U.S. DEPARTMENT OF JUSTICE**
Executive Office for Immigration Review
Office of the Immigration Judge

In the Matter of:

Cantu-Delgadillo, Teodulo
AKA Cantu-Delgadillo, Teodulo
RESPONDENT

Case No.: A 36-422-342

Docket: HSPC

IN DEPORTATION PROCEEDINGS

## ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on ___February 25, 1997___ .
This memorandum is solely for the convenience of the parties. If the proceedings should be appealed, the Oral Decision will become the official decision in this matter.

☑ The respondent was ordered deported to ___Mexico___

☐ Respondent's application for voluntary departure was denied and respondent was ordered deported to _____ or in the alternative to_____ .

☐ Respondent's application for voluntary departure was granted until _____ , with an alternate order of deportation to _____ or _____ .

☐ Respondent's application for asylum was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for withholding of deportation was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for suspension of deportation was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for waiver under Section_____ of the Immigration and Nationality Act was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for _____ was ( )granted ( )denied ( )withdrawn ( )other.

☐ Proceedings were terminated.

☐ The application for adjustment of status under Section (216)(216A)(245)(249) was ( )granted ( )denied ( )withdrawn ( )other. If granted, it was ordered that the respondent be issued all appropriate documents necessary to give effect to this order.

☐ Respondent's status was rescinded under Section 246.

☐ Other _____

☐ Respondent was advised of the limitation on discretionary relief for failure to appear as ordered in the Immigration Judge's oral decision.

Immigration Judge

Date: 2/25/97

Form EOIR - 37
MAR. 93

ALIEN NUMBER:  36-422-342                    NAME: CANU-DELGADILLO, TEODULO

### LIMITATION ON DISCRETIONARY RELIEF FOR FAILURE TO APPEAR

( )  1. You have been scheduled for a deportation hearing, at the time and
        place set forth on the attached sheet.  Failure to appear for this
        hearing other than because of exceptional circumstances beyond your
        control**  will result in your being found ineligible for certain
        forms of relief under the Immigration and Nationality Act (see
        Section A. below) for a period of five (5) years after the date of
        entry of the final order of deportation.

( )  2. You have been scheduled for an asylum hearing, at the time and place
        set forth on the attached notice.  Failure to appear for this hearing
        other than because of exceptional circumstances beyond your control**
        will result in your being found ineligible for certain forms of
        relief under the Immigration and Nationality Act (see Section A.
        below) for a period of five (5) years from the date of your scheduled
        hearing.

( )  3. You have been granted voluntary departure from the United States
        pursuant to section 244(e) (1) of the Immigration and Nationality Act.
        Remaining in the United States beyond the authorized date other than
        because of exceptional circumstances beyond your control** will result
        in your being ineligible for certain forms of relief under the
        Immigration and Nationality Act (see Section A. below) for five (5)
        years from the date of scheduled departure or the date of unlawful
        reentry, respectively.

(X)  4. A final order of deportation has been entered against you.  If you
        fail to appear for deportation at the time and place ordered by the
        INS, other than because of exceptional circumstances beyond your
        control**  you will not be eligible for certain forms of relief under
        the Immigration and Nationality Act (see Section A. below) for five
        (5) years after the date you are scheduled to appear.

            ** The term "Exceptional circumstances" refers to exceptional
            circumstances such as serious illness of the alien or death of
            an immediate relative of the alien, but not including less
            compelling circumstances.

A.  THE FORMS OF RELIEF FROM DEPORTATION FOR WHICH YOU WILL BECOME INELIGIBLE
ARE:  1) Voluntary departure as provided for in section 242(b) of the
         Immigration and Nationality Act;
      2) Suspension of deportation or voluntary departure as provided for in
         section 244(e) of the Immigration and Nationality Act; and
      3) Adjustment of status or change of status as provided for in section
         245, 248 or 249 of the Immigration and Nationality Act.

     This written notice was provided to the alien in English and in Spanish.
Oral notice of the contents of this notice was given to the alien in his/her
native language, or in a language he/she understands.

Date: Feb 25, 1997

                              Immigration Judge: _____
                                    or
                              Clerk of the Court: _____  6U



**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-0065
**Notice of Appeal to the Board of Immigration**
**Appeals of Decision of Immigration Judge**

---

**1.** List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):

**CANTU-DELGADILLO, TEODULO**

**A36 422 342**

For Official Use Only

> **!** **WARNING TO ALL APPLICANT(S)/RESPONDENT(S):** Names and "A" Numbers of everyone appealing the order must be written in Item #1.

**2.** Applicant/Respondent is currently  [XX] DETAINED  ☐ NOT DETAINED.

**3.** Appeal from the Immigration Judge's decision dated __**FEBRUARY 25, 1997**__.

**4.** State in detail the reason(s) for this appeal. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

> **!** **WARNING:** The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice, unless you give specific details in a timely, separate written brief or statement filed with the Board.

The Immigration Judge erred because a statute is presumptively non retroactive if it attaches new legal consequences to actions taken before the law went into effect. See **Landgraf v. USI Film Products,** ____ **U.S.** ____, **114 S. Ct. 1483, 128 L.Ed.2d. 229 (1994).** Therefore 212(c) relief should still be available to Respondent because his act took place before April 24, 1996.

The Court stated that the issue of effective dates for filing of the 212(c) application had been settled in **Matter of Soriano, Int. Dec. 3289 (BIA July 18, 1996).** However, on September 12, 1996 the Attorney General vacated that decision. Therefore the decision is based on a case which is no longer good case.

Under controlling Supreme Court authority the temporal reach of subsection 440(d) AEDPA does not extend the conduct occurring before the statute's date of enactment.

See Continuation Sheet

(Attach more sheets if necessary)

*Staple Check or Money Order Here.*
*Include your name(s) and "A" number(s)*

(Form continues on back)

**5.**   I   ☐ do

☒ do not   desire oral argument before the Board of Immigration Appeals.

**6.**   I   ☒ will

☐ will not   file a separate written brief or statement in addition to the "Reason(s) for Appeal" written above or accompanying this form.

> **!** **WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

| ✎ SIGN HERE → | **7.**   X | _Robert E Kahn_ | **03/24/97** |
|---|---|---|---|
| | | Signature of Person Appealing | Date |
| | | *(or attorney or representative)* | |

**8.**

Mailing Address of Applicant(s)/Respondent(s)

**TEODULO CANTU-DELGADILLO**
(Name)
**15850 EXPORT PLAZA DR.**
(Street Address)
(Apartment or Room Number)
**HOUSTON, TEXAS   77032**
(City, State, Zip Code)

**9.**

Mailing Address of Attorney or Representative

**ROBERT E. KAHN, P.C.**
(Name)
**4545 BISSONNET, SUITE 270**
(Street Address)
**BELLAIRE, TEXAS   77401**
(Suite or Room Number)
**(713) 664-6200**
(City, State, Zip Code)

> **!** **WARNING:** An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

---

### CERTIFICATE OF SERVICE
(Must Be Completed)

**10.**

I   **ROBERT E. KAHN**   mailed or delivered a copy of this notice of appeal
(Name)

on   **3/25/97**   to   **INS TRIAL ATTORNEY**
(Date)   (Opposing Party)

at **509 NORTH BELT, HOUSTON, TEXAS   77060**  .
(Address of Opposing Party)

| ✎ SIGN HERE → | X | _Robert E Kahn_ |
|---|---|---|
| | | Signature of Person Appealing |
| | | *(or attorney or representative)* |

**Have You?**

☐ Read all of the General Instructions
☐ Provided all of the requested information
☐ Completed this form in English
☐ Provided a certified English translation for all non-English attachments

☐ Signed the form
☐ Served a copy of this form and all attachments on the opposing party
☐ Completed and signed the Certificate of Service
☐ Attached the required fee or fee waiver request

## CONTINUATION SHEET

### NOTICE OF APPEAL TO THE BOARD OF IMMIGRATION APPEALS
### OF DECISION OF IMMIGRATION JUDGE


**IN THE MATTER OF:   CANTU-DELGADILLO, TEODULO**
**FILE NUMBER:  A36 422 342**


### REASONS FOR THIS APPEAL


The Court erred in pretermitting Mr. Cantu-Delgadillo's case because Congress did not expressly proscribe the temporal reach of subsection 440(d) AEDPA.  There is a traditional presumption against retroactivity of new statutes.  Manifest injustice will result to Respondent if Section 440(d) AEDPA ban is applied retroactively.

The Immigration Judge erred in pretermitting the case because denying Section 212(c) relief to individuals in deportation proceedings while granting to similar situated individuals in exclusion proceedings violates the equal protection clause of the Fifth Amendment.  See **Matter of Hernandez-Casillas**, Int. Dec. 3147 (A.G. 1991).

The Respondent's deferred adjudication does not constitute a conviction for immigration purposes.

The Respondent's alleged offense does not constitute an aggravated felony for immigration purposes.



UNITED STATES DEPARTMENT OF JUSTICE  TRIAL ATTORNE⬚
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

| | | |
|---|---|---|
| In the Matter of: | § | |
| CANTU-Delgadillo, Teodulo | § | |
| A36 422 342 | § | |
| RESPONDENT | § | IN DEPORTATION PROCEEDINGS |

## RESPONDENT'S APPELLATE BRIEF

COMES NOW **Teodulo CANTU-Delgadillo**, Respondent in the above-styled and numbered cause, and submits this Appellate Brief on the issues of deportability AND eligibility for relief from deportation. Respondent urgently maintains that he is not deportable as charged in the Order to Show Cause. In the alternative, Respondent maintains that he is eligible for relief from deportation.

## I.

## RESPONDENT IS NOT DEPORTABLE

**A.    A "Deferred Adjudication" is NOT a Conviction.**

First, it must be noted that the judgment submitted by the Service clearly states that an adjudication of guilt has been deferred for 10 years. This judgment is therefore what is known

PAGE 1

in Texas criminal law parlance as a "deferred adjudication" pursuant to **TEXAS CODE OF CRIMINAL PROCEDURE Art. 42.12, §5(a)**[1]. Of course, if Respondent has bot been adjudged "guilty" then it is difficult to comprehend how he could have been "convicted". **Matter of Garcia, 16 I&N Dec. 270 (BIA 1985).**

Presumably, the Service will agree that a Texas deferred adjudication was not considered a conviction for immigration purposes prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"). This proposition was well established and understood by the Texas legal community involved in both immigration and criminal matters. **Matter of Garcia, supra; Martinez-Montoya v. INS, 904 F.2d 1018 (5th Cir. 1990).** The 1996 Reform Act, however, includes an amendment adding a definition of "conviction" to the INA. This new definition reads, in pertinent part:

> **The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where ---**
>
> **(i) a judge or jury has found the alien guilty or the alien has entered a plea of nolo contendere or has admitted sufficient facts to warrant a finding of guilt,**
> **(ii) the judge has ordered some form of punishment, penalty, or restraint upon the alien's liberty to be imposed.**

INA § 101(a)(48)(A). This new definition applies to "convictions and sentences entered before, on or after the date of enactment" of the Illegal Immigration Reform and Immigrant

---

[1] Formerly §3d, moved and amended effective January 1, 1996. The amendments made to the statute are not relevant to this discussion.

PAGE 2

Responsibility Act of 1996. **IIRAIRA §322(c)**. While the Service undoubtedly relies upon this new statute for the proposition that a deferred adjudication is now a conviction, Respondent maintains that this new definition does operate such in this case for several reasons.

## 1.    The Judgment in this Case Does Not Qualify.

The Respondent's deferred adjudication clearly does not meet all the elements of the definition. This is so for several reasons.

First, the judgment recites that adjudication of guilt was withheld for 10 years, and that Respondent was placed upon "probation" for the same period.

Second, even if some restraint upon liberty were implied as a condition of the "probation" mentioned in the judgment, it is not "imposed". The deferred adjudication provisions of the Texas Code of Criminal Procedure specify that a court may defer adjudication of guilt and place a defendant upon probation on reasonable terms for up to ten years. **TEXAS CODE OF CRIMINAL PROCEDURE Art. 42.12, §5(a)**. Note that this differs from the probation that follows a conviction, which is limited to the maximum sentence provided for the offense.

The probation is not "imposed" because no defendant is ever compelled to accept the probation offered in exchange for the deferred adjudication. The Texas statute provides that the defendant may demand a final adjudication and judgment by filing a written motion within 30

PAGE 3

days after entry of the deferred adjudication. **TEXAS CODE OF CRIMINAL PROCEDURE Art. 42.12 §5(a)**. This is not like a request for a new trial; the defendant has the absolute right to demand a "final adjudication as in all other cases" and the court "**shall** proceed" accordingly if the defendant so demands. Therefore, the probation received by the defendant in a deferred adjudication is not "imposed."

While the INS may urge that Respondent did not demand a final adjudication within the specified 30 days, this is clearly irrelevant. A "punishment, penalty or restraint" can hardly be said to be "imposed" of the defendant has the option of rejecting it and proceeding to another means of judgment. The fact that the defendant chooses not to exercise that option simply means that he or she has accepted the deferred adjudication offered by the court. The fact that the 30 days has expired simply makes the defendant's choice final -- it in no way negates the existence of the choice in the first instance. The existence of that choice does, however, preclude the compulsory nature explicit in the term "imposed."

## A.    A Deferred Adjudication is Not Final.

Even if the new definition of conviction applied retroactively to a prior Texas deferred adjudication, and even if that deferred adjudication somehow met the new definition, Respondent would still not be deportable in this case. Respondent is not deportable because there are binding precedents establishing the proposition that a Texas deferred adjudication is not sufficiently "final" to support an order of deportation.

In **Martinez-Montoya v. INS, 904 F.2d 1018 (5th Cir. 1990)**, the United States Court of Appeals for the Fifth Circuit reversed an order of deportation following the denial of legalization to an individual who had received a deferred adjudication for a felony charge of forgery.   In so doing, the Court rejected the INS contention that the deferred adjudication warranted denial of legalization and deportation for two separate and distinct reasons.   First, the Fifth Circuit held that the deferred adjudication did not meet the third element of the definition "conviction" announced by the Board of Immigration Appeals in **Matter of Ozkok, Interim Decision No. 3044 (BIA 1988)**.   Second, even if it were a "conviction" the Court held that the deferred adjudication was not sufficiently final to support the order of deportation.   While the new statutory definition of "conviction" arguably lessens the force of the Court's first rationale, the issue of finality is a separate and distinct element wholly unaddressed by the new statute.

The requirement of finality may be traced to the 1955 Supreme Court decision in **Pino v. Landon, 349 U.S. 901 (1955)**.  As the Fifth Circuit noted:

> **Since the 1955 Pino decision, both the federal courts and the INS itself consistently have considered finality <u>a necessary and separate element</u> of the definition of conviction for immigration purposes.**

**Martinez-Montoya v. INS, supra, at 1025**.   The Fifth Circuit noted that a deferred adjudication lacked this finality because, in the event the court ever proceeded to an adjudication of guilt, the defendant retained the right to appeal the judgment and sentence exactly as though the adjudication had been deferred.   **TEXAS CODE OF CRIMINAL PROCEDURE Art.**

PAGE 5

**42.12, §3d(b).**[2]

The Fifth Circuit has noted that a conviction may become final by the exhaustion or waiver of the defendant's appeal rights, or the lapse of the appeal period. **Martinez-Montoya, supra.** Respondent certainly did not exhaust or waive her appeal rights, and the appeal period does not commence until "[a]fter an adjudication of guilt." **TEXAS CODE OF CRIMINAL PROCEDURE Art. 42.12, §5(b)**, emphasis supplied. No such adjudication has been entered. If and when it does, then Respondent will retain her rights to appeal. Unless and until it does, the deferred adjudication cannot be considered a final conviction.

The Service may counter with the argument that no adjudication of guilt may be entered unless the probation is revoked which cannot happen after the probation has ended. Therefore, applying a perverse sort of logic, the Respondent's appeal rights are said to have "lapsed" when his probation ended and the potential for revocation evaporated. However, the problem with this argument is that it confuses the defendant's right to appeal within a certain period with the State's opportunity to seek revocation of probation and adjudication of guilt during the period of probation. The two periods are distinct and cannot be confused. This Respondent was given 18 months probation. The State had 18 months to seek revocation and adjudication of guilt. Does this mean that Respondent had an appeal period of 10 years? Would an individual given the full 10 years probation authorized by **TEXAS CODE OF CRIMINAL PROCEDURE Art. 42.12, §5(a)** have a 10 year appeal period? Of course not.

---

[2]Now **§5(b).**

In receiving deferred adjudication, Respondent was not finally convicted. A potential for a conviction exists for 10 years. When Respondent's probatory period expires without an adjudication of guilt, the only thing that becomes "final" is the ultimate **non-existence** of a conviction. **TEXAS CODE OF CRIMINAL PROCEDURE Art. 42.12, §5(c).**

In **Martinez-Montoya**, we have directly applicable and binding precedent for the proposition that a Texas deferred adjudication is not a final conviction for deportation purposes. Against that, the Services urges a new and untested statute along with its own speculations as to what the statute means. For these reasons stated above, the INS interpretation of the law is hardly free from doubt. It is respectfully submitted that this Court should therefore continue to follow **Martinez-Montoya** unless and until higher authority enters a binding holding that it is no longer a good law.

# II.

## RELIEF FROM DEPORTATION

For the reasons set forth, Respondent is not deportable as charged. If found deportable, however, he intends to pursue any and all relief which may be available.

Further, Respondent is eligible for 212(c) relief.

PAGE 7

# III.

## CONCLUSION

For the reasons set forth, the instant deportation proceedings should be terminated.  In the alternative, the proceedings should be continued for the Respondent's pursuit of relief.

Respectfully submitted,

ROBERT E. KAHN, ESQ.

Robert E. Kahn
Texas Bar No. 11074250
4545 Bissonnet, Suite 270
Bellaire, Texas 77401
Tel. (713) 664-6200

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and complete copy of the foregoing Respondent's Appellate Brief was duly served upon Opposing Counsel by delivering or mailing same on September 5, 1997 to: INS Legal Section, P.O. Box 670049, Houston, Texas 77267-0049.

Robert E. Kahn

PAGE 8



Falls Church, Virginia 22041

=====================================================================

File:  A36 422 342 - Houston                     Date:

**DEC 29 1998**

In re:  TEODULO CANTU-DELGADILLO

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Robert E. Kahn, Esquire

ON BEHALF OF SERVICE:  Charlotte K. Lang
                       Assistant District Counsel

CHARGE:

> Order:  Sec.  241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
>               Convicted of aggravated felony
>
> Sec.  241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
>               Convicted of controlled substance violation

APPLICATION:  Termination of proceedings

ORDER:

PER CURIAM.  In a decision dated February 25, 1997, an Immigration Judge found the respondent deportable as charged, determined that he was ineligible for any form of relief, and ordered him deported from the United States to Mexico.  The respondent appealed.[1]  The respondent's case will be administratively closed.

The respondent is a native and citizen of Mexico.  On July 5, 1978, he was admitted to the United States as a lawful permanent resident.  On November 27, 1996, he was convicted on a plea of guilty, in the 351st District Court, Harris County, Texas for the offense of possession of marijuana.  The respondent received a deferred adjudication under the Texas Code of Criminal Procedure, Article 42.12, § 5 and was placed on 10 years probation.

We note that this Board has recently held that a deferred adjudication under article 42.12, § 5 of the Texas Code of Criminal Procedure is a conviction for immigration purposes.  See Matter of Punu, Interim Decision 3364 (BIA 1998).  Because the respondent's deferred adjudication under the Texas statute constitutes a conviction under immigration law, he is deportable under section 241(a)(2)(B)(i),

---

[1]The respondent's request to waive his appellate filing fee is hereby granted.

as an alien convicted of a controlled substance violation.[2]  Moreover, section 440(d) of the Antiterrorism Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA] bars certain criminal aliens from obtaining section 212(c) relief under the Immigration and Nationality Act.  See 8 U.S.C. § 1182(c).  However, the Attorney General plans to publish a regulation that will implement a procedure for terminating deportation proceedings for certain lawful permanent reisdents, who are precluded from relief under section 212(c) of Act, as a result of AEDPA, and placing them in removal proceedings if they would be eligible for cancellation of removal.  Such a procedure is authorized by section 309(c)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-626.

Pending the publication of this regulation, the Immigration and Naturalization Service has requested that the Board administratively close cases pending before it where the alien meets the criteria for this procedure.  It appears from the record that the alien in the case before us meets the criteria.  Accordingly, the proceedings before the Board in this case are administratively closed.

If either party to this case objects to the administrative closure of these proceedings, a written request to reinstate the proceedings may be made to the Board.  **The Board will take no further action in the case unless a request is received from one of the parties.**  The request **must** be submitted directly to the Board, without fee, but with certification of service on the opposing party. If properly submitted, the Board shall reinstate the proceedings.

_____
FOR THE BOARD

---

[2]We note that the respondent is not deportable under section 241(a)(2)(A)(iii), as an aggravated felon, because he was convicted only once of possession of marijuana.  Under the federal statute, this offense constitutes simple possession and is punishable for only 1 year in prison.  8 U.S.C. § 844(a). Thus, he has not been convicted of a felony under federal law and therefore, does not meet the definition of an aggravated felony for immigration purposes.  See Matter of L-G-, Interim Decision 3254 (BIA 1995); Matter of Davis, 20 I&N Dec. 536, 543 (BIA 1992).



**U.S. Department of Justice**                           Decision of the Board of Immigration Appeals

Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:    A36 422 342 - Houston                  Date:

                                                        MAR 2 9 2001

In re:  TEODULO CANTU-DELGADILLO

IN DEPORTATION PROCEEDINGS

APPEAL AND MOTION

ON BEHALF OF RESPONDENT:    Robert E. Khan, Esq.


ON BEHALF OF SERVICE:    Charlotte K. Lang
                         Assistant District Counsel


INTERIM ORDER:

   PER CURIAM. In a decision dated February 25, 1997, an Immigration Judge found the respondent to be deportable as charged and ordered him deported to Mexico. On December 29, 1998, this Board administratively closed the respondent's deportation proceedings in light of the Attorney General's plans to publish a regulation implementing a procedure for terminating deportation proceedings for certain lawful permanent residents, who are precluded from relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), as a result of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, and placing them in removal proceedings if they would be eligible for cancellation of removal. Such a procedure is authorized by section 309(c)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-626. By the December 29, 1998, order, the Board stated that "if either party to this case objects to the administrative closure of these proceedings, a written request to reinstate the proceedings may be made to the Board." Such a request has been made by the Service, and has been served on the respondent as required. Accordingly, the deportation proceedings are reinstated. A decision on the merits will be forthcoming.


                              _____
                              FOR THE BOARD



Falls Church, Virginia 22041

File: A36 422 342 - Houston                     Date:

In re: TEODULO CANTU-DELGADILLO                 AUG 3 1 2001

IN DEPORTATION PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:    Robert E. Kahn, Esquire

ON BEHALF OF SERVICE:    Charlotte K. Lang
                         Assistant District Counsel

CHARGE:

    Order:    Sec.    241(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1251(a)(2)(A)(iii)] -
                         Convicted of aggravated felony

          Sec.    241(a)(2)(B)(i), I&N Act [8 U.S.C. § 1251(a)(2)(B)(i)] -
                         Convicted of controlled substance violation

APPLICATION:   Termination of proceedings


ORDER:

      PER CURIAM. The instant case is on appeal to this Board from the Immigration Judge's February 25, 1997, decision finding the respondent deportable as charged and ineligible for any form of relief from deportation.[1] On appeal, the respondent argues, through counsel, that his deferred adjudication under Texas law is not a conviction for immigration purposes that supports the charges of deportability in the instant case. The respondent also contends that, even if he is deportable as charged, he should be allowed to apply for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act under the terms of that section as it existed prior to the enactment of section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (enacted April 24, 1996) ("AEDPA"). Neither of the respondent's contentions on appeal has legal merit.

---

[1] In a decision dated December 22, 1998, this Board ruled on the issues presented by the respondent's appeal but administratively closed the instant case subject to a request for further action by either of the parties. The respondent's appeal from the Immigration Judge's order of deportation was reinstated before this Board on March 29, 2001, at the request of the Immigration and Naturalization Service.

As this Board indicated in our decision dated December 22, 1998, the respondent's deferred adjudication under Texas law on November 27, 1996, for possession of between 50 and 2,000 pounds of marijuana constitutes a conviction for immigration purposes under section 101(a)(48)(A) of the Act. *See Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999); *Matter of Punu*, Interim Decision 3364 (BIA 1998). The respondent's conviction for the offense of possession of between 50 and 2,000 pounds of marijuana establishes his deportability as charged under section 241(a)(2)(B)(i) of the Act as an alien convicted of a controlled substance violation.

As an alien deportable as charged under section 241(a)(2)(B)(i) of the Act for having been convicted of an offense related to a controlled substance, the respondent is not eligible for section 212(c) relief under the express terms of that statute as amended by section 440(d) of the AEDPA.[2]  The amendment made to section 212(c) of the Act by section 440(d) of the AEDPA is applicable in the instant deportation proceeding as the respondent was convicted for his controlled substance violation, based upon his plea of guilty, on November 27, 1996, over 7 months after the enactment of section 440(d) of the AEDPA. Therefore, the amendments made to section 212(c) of the Act by section 440(d) of the AEDPA do not have an impermissible retroactive effect as applied in this case. *See INS v. St. Cyr*, 121 S.Ct. 2271 (2001).

Accordingly, the respondent's contentions on appeal fail to establish that the Immigration Judge erred in finding the respondent deportable as charged under section 241(a)(2)(B)(i) of the Act and ineligible for section 212(c) relief. Moreover, contrary to our finding in our decision dated December 22, 1998, the respondent is also deportable as charged under section 241(a)(2)(A)(iii) of the Act. *See United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001); *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997) (holding that a state drug conviction that is a felony under state law constitutes an "aggravated felony" for the purpose of the Sentencing Guidelines). Therefore, the respondent's appeal is dismissed.

**FOR THE BOARD**

---

[2] After amendment by section 440(d) of the AEDPA, section 212(c) of the Act does not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i) of the Act.

2