United States District Court
Southern District of Texas
FILED

SEP 1 6 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

TEODULO CANTU-DELGADILLO )
)
v. ) C.A. No. B-02-114
)
E.M. TROMINSKI, INS DISTRICT )
  DIRECTOR )
_____)

PETITIONER'S OPPOSITION TO MOTION TO DISMISS,
AND (OPPOSED?) MOTION TO HOLD IN ABEYANCE PENDING A DECISION
IN *SALAZAR-REGINO v. TROMINSKI*, C.A. B-02-045

Petitioner, by and through the undersigned, respectfully opposes Respondent's Motion to Dismiss, (herein cited as (INS:___)). Although Respondent has set forth an "alternative" statement, none of the pertinent facts in Mr. Cantu's (verified) petition have been denied or contested, and are therefore taken herein as established.

I. BACKGROUND

The instant case involves many of the same issues as *Salazar-Regino v. Trominski, supra*. Since there are already several cases in this series, and will doubtless be many more, the undersigned has spoken with Lisa Putnam, counsel for Respondents, about the possibility of holding these cases in abeyance, pending a decision in *Salazar-Reyna*. Although the initial response was encouraging, Respondents have not yet taken a definitive position on the issue. Therefore, the motion is, at this point, deemed opposed.

However, in the interest of brevity, Petitioner will address herein only those issues which actually relate to jurisdiction, and are therefore the proper subject of a motion to dismiss. On the merits, he would incorporate by reference the Petitioner's Opposition to Respondent's Motion To Dismiss in *Salazar-Regino, supra*.

## II. THE FACTS

Teodulo Cantu-Delgadillo, (hereinafter, "Mr. Cantu"), is a 32 year old, native and citizen of Mexico, and has been a lawful permanent resident since July 5, 1978, when he was eight years old. On November 27, 1996, Mr. Cantu was granted deferred adjudication for the offense of possession of marijuana. At that time, said disposition was not considered to render Mr. Cantu subject to deportation. *Matter of Manrique*, I.D. 3250 (BIA 1995). Although the statutory definition of "conviction" was changed on September 30, 1996, most immigration attorneys considered that this would not change the result, since *Manrique* was based on policy considerations, not on the definition of conviction.

Nonetheless, Mr. Cantu was placed in deportation proceedings, and ordered deported by an Immigration Judge on February 25, 1997. His prior attorney, Robert E. Kahn, appealed to the BIA. By decision dated December 29, 1998, the Board noted that it had recently abrogated *Manrique*, and that the deferred adjudication disposition was now considered to be a conviction, under *Matter of Punu*, Int. Dec. 3364 (BIA 1998) (Petitioner's Exhibit B). In that decision, the BIA concluded that Mr. Cantu was ineligible for §212(c) relief, due to §440(d) of AEDPA, but noted that his marijuana offense was not an "aggravated felony," and that he would therefore be eligible for cancellation of removal under 8 U.S.C. §1229b(a). Therefore, the Board administratively closed the proceedings, pending promulgation of an anticipated regulation, allowing the deportation proceedings to be terminated, and removal proceedings initiated, such that Mr. Cantu could request cancellation of removal.

However, on March 29, 2001, at the request of INS, the Board reopened proceedings, and reinstated Mr. Cantu's appeal. And on

August 31, 2001, the Board dismissed that appeal, and ordered his deportation, on the authority of *U.S. v. Hernandez-Avalos,* 251 F.3d 505 (5th Cir. 2001) (Exhibit A). If said decision mailed to the office of prior counsel, it was not received at his address.[1]

Mr. Cantu first learned of the decision was in May, 2002, when he was notified that he was supposed to be surrendered to INS in Houston for deportation on May 29, 2002 at 9:00 a.m. (Petitioner's Exhibit C). He immediately contacted Ms. Garza, who informed him that she had not received the order of deportation. Mr. Cantu then tryied to find new counsel, who could, and would, file a petition for writ of habeas corpus on his behalf in Houston, Texas. When he was unable to do so, he hired an attorney in Edinburg, Texas, (Aaron Pena), who sought the services of the undersigned. The undersigned was retained on May 27, 2002: too late to attempt to seek a remedy in Houston. Therefore, since Mr. Cantu lives in the Rio Grande Valley, arrangements were made to surrender him to INS in Harlingen, Texas, at 8:00 a.m., May 29, 2002, and, once he had been so surrendered, to file the instant habeas action.

### III.   JURISDICTION

Petitioner Cantu is under an administratively final order of removal, (Exhibit A), and was in the actual custody of Respondent Trominski at the moment the instant action was filed.

Respondent contests jurisdiction on the grounds that Mr. Cantu failed to seek direct review of the BIA decision of August 31,

---

[1] Prior counsel had ceased practicing law in early 1999, when diagnosed with brain cancer. However, another attorney, Martha Garza, assumed his practice, and continues to practice law at the same address of Mr. Kahn and receives mail for him at that address. Ms. Garza did not receive the BIA decision in a timely fashion. Rather, she requested, and was given a copy after Mr. Cantu informed her that he was to be deported on May 29, 2002.

2001, and allegedly "waited over a year and a half" before filing the instant petition for habeas review. (INS:7). Apart from the fact that it was less than a year from the BIA's decision to the filing of the instant petition, use of the word "waited" is misleading. Mr. Cantu did not "wait" to seek review: he was unaware of the decision of the BIA. For unknown reasons, it never reached his attorney's office, let alone Mr. Cantu. To the contrary, the instant action was commenced in less than thirty days after Mr. Cantu learned of the BIA's decision.

The OSC asserted, (Govt Exh. C), and the BIA ultimately found, (Exh. A), that Mr. Cantu was deportable pursuant to (then) 8 U.S.C. §1251(a)(2)(B)(i) and (a)(2)(A)(iii), due to a conviction for a controlled substance. If true, this would bring him within the jurisdictional bar of §309(c)(4)(G) of IIRIRA, and could therefore not have been heard by the Court of Appeals in direct review.

Most of the issues raised herein are constitutionally grounded, and can only be heard in habeas corpus, 28 U.S.C. §2241. *INS v. St. Cyr,* 121 S.Ct. 2271 (2001). To the extent that individual questions of statutory interpretation might have resulted in a finding that he was not deportable under either of the two charges brought, and therefore, in theory, could have been heard by the Fifth Circuit, this Court nonetheless can exercise supplemental jurisdiction with respect thereto, pursuant to 28 U.S.C. §1367.

**A. UNDER *ST. CYR* AND *MARCELLO*, FAILURE TO SEEK REVIEW IN THE FIFTH CIRCUIT IS NOT A JURISDICTIONAL BAR TO HABEAS REVIEW UNDER §2241.**

Furthermore, Mr. Cantu falls under *U.S. ex rel. Marcello v. INS,* 634 F.2d 964,971 (5th Cir.1981), where INS also attempted, unsuccessfully, to import an exhaustion requirement into habeas relief in deportation cases. The Fifth Circuit noted therein that failure to exhaust remedies is not a statutory bar to habeas

jurisdiction under §2241. Therefore, the Court concluded that, absent a finding of deliberate bypass by Mr. Marcello of a direct appeal to Court of Appeals, and since the period for such an appeal had long passed, his attempt to obtain relief via habeas corpus was not precluded by his failure to avail himself of normal mode of appeal, since this would bar him from any review whatever of Board's decision. The same reasoning applies herein. Mr. Cantu did not deliberately by-pass review in the Fifth Circuit. To the contrary, he was unaware of the BIA decision until after the thirty day period for seeking such review had passed.

The cases cited by Respondent in support of its contrary position all predate *St. Cyr*, and to the extent they conflict with said case, are no longer good law. In *St. Cyr*, the Supreme Court concluded that Congress had not amended or repealed 28 U.S.C. §2241. Ironically, *Marcello* was one of the cases the Court cited in reaching that conclusion! 121 S.Ct. at 2284-85.

### B. THE BIA CANNOT HEAR CONSTITUTIONAL CHALLENGES, SO IT WOULD HAVE BEEN FUTILE FOR MR. CANTU TO HAVE RAISED THEM

INS also appears to misread *Goonsuwan v. Ashcroft,* 252 F.3d 383 (5th Cir. 2001). *Goonsuwan* predated *St. Cyr*, so it cannot be read in a manner which conflicts with the Supreme Court's holding therein. By joining two disparate quotations, INS appears to cite *Goonsuwan* for the proposition that the Court lacks jurisdiction even over constitutional claims, if they were not raised before the BIA. (INS:12). This was not the holding of that case. Rather, it addressed an ineffective assistance of counsel claim, and the Court held that, since the BIA has established specific procedures for addressing such claims by motions to reopen, such a motion would be a jurisdictional prerequisite to habeas review.[2] Simultaneously,

---

[2] Again, this aspect of *Goonsuwan* cannot survive *St. Cyr*.

the Court reaffirmed the "futility" exception to exhaustion of remedies. 252 F.3d at 389 (internal citations omitted):

> Even when exhaustion is a jurisdictional bar, this Court recognizes an exception "when administrative remedies are inadequate." ... Similarly, the First Circuit stated "[e]ven where statutes impose an exhaustion requirement the Supreme Court has, despite the rhetoric of jurisdiction, carved out exceptions. The best founded is one suggested by the Supreme Court, and explicitly recognized in this and other circuits, where resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor." ...

The Fifth Circuit has long recognized futility and inadequacy as exceptions, even to statutorily mandated exhaustion requirements. For example, 28 U.S.C. §2254(b)(1) requires that state prisoners exhaust state remedies before filing a federal habeas action. But that Court recently reaffirmed the "futility" exception to this statutory mandate. *Dilworth v. Johnson*, 215 F.3d 497,501 (5th Cir. 2000), quoting *Carter v. Estelle*, 677 F.2d 427,446 (5th Cir.1982):

> Additionally, "it has been held that exhaustion is not necessary where resort to state remedies would be futile, because the necessary delay before entrance to a federal forum which would be required is not justified where the state court's attitude towards a petitioner's claims is a foregone conclusion."

*See also, Fisher v. Texas*, 169 F.3d 295,303 (5th Cir.1999):

> The futility exception applies when, as here, the highest state court has recently decided the same legal question adversely to the petitioner.

Therefore, even assuming *arguendo* that the failure to raise certain issues would be a jurisdictional bar in a habeas action under 28 U.S.C. §2241, no such bar would apply herein. It is beyond dispute that the BIA lacks jurisdiction to hear Mr. Cantu's constitutional claims. *See, e.g., Matter of Finnair Flight AY103* (BIA 2001):

> To the extent that the respondent is challenging the constitutionality of the Service's regulations or claiming that the conflict is unconstitutional, we note that it is well settled that the Board lacks jurisdiction to entertain such constitutional challenges.

Consequently, it would have been futile for Mr. Cantu to have raised such issues before the Board.

### IV.  THE MERITS

As noted, Mr. Cantu incorporates by reference the opposition to the Respondents' Motion to Dismiss in *Salazar-Regino, supra*. Should the Court deny his request to hold the instant case in abeyance pending a decision therein, he will augment his opposition herein. However, for the time being, he will simply reiterate his claims.

#### 1.  STATUTORY CONSTRUCTION
#### a.  AGGRAVATED FELONY

Mr. Cantu first urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra*, controls the resolution of the question of whether his deferred adjudication disposition constitutes an aggravated felony. The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Cantu. To the contrary, Mr. Cantu asserts that the Board correctly decided *Matter of K-V-D-*, and that it erred in not applying said decision herein. *See, Gerbier v. Holmes*, 280 F.3d. 297 (3rd Cir. 2002).

#### b.  *MATTER OF ROLDAN.*

Mr. Cantu also urges that, as a question of law, *Matter of Roldan*, Int. Dec. No. 3377 (BIA 1999), was incorrectly decided, and that (new) 8 U.S.C. §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra*. *See,* Dissenting

Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined. (23 I&N Dec. at 237-251). *See also,* Dissenting Opinion of Board Member Anthony Moscato, in which Board Member Villageliu, joined. (23 I&N Dec. at 251-252).

## 2. EQUAL PROTECTION
### a. FEDERAL FIRST OFFENDER ACT

Mr. Cantu next asserts that, for the reasons set forth in *Lujan-Armendariz,* 222 F.3d 728 (9th Cir. 2000), it violates Equal Protection for a determination of whether a given disposition of criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

### b. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Cantu also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would have earned in the exercise of discretion.

### c. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

Had Mr. Cantu's case been heard between March 3, 1999, and May 11, 2001, (after the BIA issued *Matter of Roldan,* and before the Fifth Circuit decided *Hernandez-Avalos),* he would have been considered to subject to removal, but eligible for cancellation of removal, and would have most probably earned such relief in the exercise of

discretion. It violates Equal Protection for the difference between remaining in the U.S. as a lawful permanent resident, and being removed, and permanently barred from returning lawfully, to be based solely on the timing of the proceedings.

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Cantu has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Matter of Salazar-Regino*, 23 I&N Dec. 223,238 (BIA 2002). *See also, Landon v. Plasencia*, 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Cantu enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Cantu asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary

9

relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4.   PROCEDURAL DUE PROCESS

Mr. Cantu also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *Matter of Roldan* and *U.S. v. Hernandez-Avalos* to Mr. Cantu retroactively converts a disposition which, at the time of his plea bargain, carried no immigration consequences at all, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee*, 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges*, 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid*. (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial

interpretations thereof. This occurs even though, under state law, there is no conviction, and never will be one, if the Petitioner successfully completes his probation.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See*, Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation, a civil penalty, rather than criminal punishment, is involved. As held in *BMW v. Gore*, 517 U.S. 559,574 (1996) (footnote in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22

11

> FN22. See *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due process); *id.*, at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho*, 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner*, 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Cantu, there can be not question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia*, *supra*, and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner*, *supra*. And, as in *BNW of North America v. Gore*, *supra*, it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."[3]

---

[3] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223, 231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

12

**5. INTERNATIONAL LAW AND TREATY OBLIGATIONS**

Finally, Mr. Cantu urges that the instant order violates international law, and treaty obligations between the United States and Mexico, his country of origin.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney          L. Aaron Peña, Attorney
17891 Landrum Park Road             600 South Closner
San Benito, TX 78586                Edinburg, TX 78539
(956) 421-3226                      (956) 383-5311
(956) 421-3423 (fax)                (956) 380-2722 (fax)
Fed. ID.  1178
Texas Bar 03052800

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing, and proposed Order, was mailed, first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen TX 78551, this 16th day of September, 2002.