31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 4 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| TEODULO CANTU-DELGADILLO, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. B-02-114 |
| | ) | |
| E.M. TROMINSKI, INS DISTRICT | ) | |
| DIRECTOR, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |

**RESPONDENTS' OBJECTIONS TO MAGISTRATE JUDGE'S
CONSOLIDATED REPORT AND RECOMMENDATION**

**STATEMENT OF THE CASE**

**I.   CONSOLIDATED HABEAS PETITIONS AND COMMON CLAIMS**

This is one of nine cases that is subject to a consolidated Magistrate's Report and Recommendation.[1] These cases are all habeas petitions filed by criminal resident aliens (Petitioners), challenging the legality of removal orders issued by the Board of Immigration Appeals (BIA). The Petitioner in the present case, Cantu-Delgadillo, and the alien Petitioners in the other cases have all been found removable, ineligible for immigration relief, or both for "conviction" of a controlled substances offense or the "aggravated felony" of a "drug trafficking crime" based on their Texas

---

[1] The nine cases are:  Salazar Regino v. Trominiski, Civil Action No. B-02-45;  Cantu-Delgadillo v. Trominski, Civil Action No. B-02-114;  Carrizalos-Perez v. Cabrera, Civil Action No. B-02-136; Sandoval-Herrera v. Cabrera, Civil Action No. B-02-138; Hernandez-Pantoja v. Ashcroft, Civil Action No. B-02-197; Oviedo-Sifuentes v. Ashcroft, Civil Action No. B-02-198; Lucio v. Ashcroft, Civil Action No. B-02-225; Rodriguez-Castro v. Ashcroft, Civil Action No. B-02-228; Rangel-Rivera v. Ashcroft, Civil Action No. B-03-002.

deferred adjudications of guilt,[2] or convictions following a guilty plea or trial, of felony drug possession under Texas law. Primarily, Petitioners are raising the following two challenges to their removal orders.

First, most if not all Petitioners are challenging the finding that they have a "conviction" for immigration purposes within the meaning of the Immigration and Nationality Act (INA). See Magistrate's Report and Recommendation (R & R) at 30-35. The INA defines a "conviction" as, among other things, "a formal judgment of guilty" or in the alternative "a plea of guilty" and "some form . . . restraint on the alien's liberty." See 8 U.S.C. § 1101(a)(48). Petitioners claim that as a matter of statutory construction, equal protection, or uniform application of the law, the BIA must read an unstated "first offender" exception into the definition of "conviction" so that an alien's first time state offense of simple drug possession is not construed to be a conviction for immigration purposes. See R & R at 31-32. These are statutory-construction and constitutional questions of first impression in the Fifth Circuit. The Ninth Circuit has read this type of "first offender" exception into the statute. Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000). The BIA has rejected this reading and does not apply Lujan-Armendariz outside the Ninth Circuit. Matter of Salazar-Regino, 23 I & N Dec. 223, 2002 WL 339535 (BIA).[3] The Eighth and Eleventh Circuits have rejected the Ninth Circuit's Lujan-Armendariz construction in any case where an alien has been placed on

---

[2] The Fifth Circuit has construed a Texas' deferred adjudication to come within the definition of a "conviction" for immigration purposes, holding that federal law controls and it is immaterial that this type of disposition is not deemed to be a conviction under state law if a defendant successfully completes his probation. Moosa v. INS, 171 F.3d 994, 997 and n. 1 (5th Cir. 1999).

[3]. This case is one of the cases subject to the Magistrate's Report and Recommendation. See Salazar-Regino v. Trominski, et al, Civil Action No. B-02-45.

probation for more than a year for a first-time state drug offense. <u>Vasquez-Velezmoro v. U.S.I.N.S.</u>, 281 F.3d 693, 698 (8th Cir. 2001); <u>Fernandez-Bernal v. Attorney General</u>, 257 F.3d 1304, 1307 n. 4 (11th Cir. 2001). As shown in greater detail below, the Magistrate has disposed of the cases on other grounds and not decided these issues.

Second, most if not all Petitioners have disputed that their Texas crimes of felony drug possession constitute the "aggravated felony" of a "drug trafficking crime." <u>See</u> R & R at 33-35. Unlike the first issue, this is not a question of first impression in the Fifth Circuit. In <u>United States v. Hernandez-Avalos</u>, 251 F.3d 505, 509-10 (5th Cir. 2001), the Fifth Circuit held that a state felony drug possession conviction comes with the plain meaning of the definition of an "aggravated felony/drug trafficking crime" for immigration purposes, and that Congress clearly intended aliens with such convictions to be removed. The BIA has announced that it must apply the Fifth Circuit's <u>Hernandez-Avalos</u> construction of "aggravated felony" in all removal cases arising in the Fifth Circuit. <u>See</u> <u>Matter of Salazar-Regino</u>, <u>supra</u>. Applying that construction to Petitioners' cases, the BIA concluded each Petitioner is removable, or ineligible for immigration relief, because of an aggravated felony/drug trafficking crime based on his conviction of felony drug possession under Texas law. Petitioners claim that this is an unconstitutional retroactive application of the judicial decision in <u>Hernandez-Avalos</u>, because at the time they pled guilty or were convicted the BIA did not consider their crimes to constitute an aggravated felony for immigration purposes (because the BIA was misreading the law). As shown in greater detail below, the Magistrate has adopted Petitioners' due process/retroactivity theory, contrary to the position of the Fifth Circuit which rejected such a claim in <u>Hernandez-Avalos</u>. R & R. 33-35, 36-40.

3

## II.    PROCEDURAL BACKGROUND

The Government moved to dismiss Cantu-Delgadillo's habeas petition and other habeas petitions for lack of habeas jurisdiction, on the ground that Petitioners are in the wrong Court, because judicial review of their statutory and constitutional challenges to the finding that they are removable for (1) conviction (2) of an aggravated felony or drug crime is available in the court of appeals on direct review, and Petitioners are misusing habeas corpus to bypass that review.

The Magistrate denied the motions to dismiss for lack of jurisdiction and proceeded to conduct de novo evidentiary hearings on the issue of the legality of the BIA's removal orders, taking testimony from several Petitioners (Salazar-Regino, Cantu-Delgadillo,Carrizalos-Perez, Sandoval-Herrera, Rangel-Rivera) about their uncertainty about the immigration consequences of their pleas at the time they pled guilty or were convicted. The Government objected to these hearings, but was overruled.

Four of the nine consolidated cases were initially assigned to another judge of this Court. (Lucio, Oviedo-Sifuentes, Rodriguez-Castro, and Herndez-Pantajo). Two of these cases were held in abeyance over the Government's objection (Lucio and Oviedo-Sifuentes), and therefore no habeas returns were filed. These cases were noticed for hearing on January 24th and 25th before the present Magistrate, and were then transferred to this Court for disposition two days before the Magistrate signed the Consolidated Report and Recommendation.

## III.    REPORT AND RECOMMENDATION

On March 27, 2003, the Magistrate issued a consolidated Report and Recommendation in nine cases, including the present one. The Magistrate made individual fact findings in each case based on a combination of: (1) the facts shown in the Government's exhibits, returns, and administrative

records of the removal or deportation proceedings, (2) extra-record testimony by Petitioners about their subjective understanding of the law at the time of their pleas or convictions; and (3) the unsworn oral arguments of Petitioners' counsel as to various Petitioners' understanding of the law or the immigration warnings they received at the time of their pleas or convictions.

### A.      Individual Findings of Fact

The Magistrate found the following facts in regard to Cantu-Delgadillo's individual case, based on facts shown in the administrative record, the Government's exhibits, and his extra-record testimony. Cantu-Delgadillo is a native of Mexico who has been a lawful permanent resident since 1978. R & R at 8. On November 27, 1996, he pled guilty and received a Texas deferred adjudication of guilt for the offense of possession of marijuana on November 27, 1996. R & R at 8.[4] Cantu-Delgadillo "argues that most immigration attorneys were unaware that someone like [him] could be eligible for deportation" at the time of this disposition." Id. Cantu-Delgadillo "stated that his criminal defense attorney told him in late 1996 that his deferred adjudication disposition would not effect his immigration status." Id.

Cantu-Delgadillo was placed in deportation proceedings and ordered deported to Mexico by an Immigration Judge on Feburary 25, 1997.[5] Id. Cantu-Delgadillo appealed the deportation order

---

[4] The administrative record and conviction records on file with the Court show that Cantu-Delgadillo pled guilty to second-degree felony possession of marijuana, i.e., knowingly and intentionally possessing a usable quantity of marijuana of more than 50 pounds and less than two thousand pounds, in violation of Texas Health and Safety Code § 481.121(b)(6), and was placed on "probation" or "community supervision" for 10 years.

[5] The administrative record and Government's exhibits show that Cantu-Delgadillo was placed in deportation proceedings on January 31, 1997, by service of an Order To Show Cause charging him with being deportable on two grounds: (1) conviction of a law relating to a controlled substances offense, and (2) conviction of the aggravated felony of a drug trafficking crime.

to the BIA. On December 29, 1998, the BIA issued a decision concluding that as a matter of law his deferred adjudication of guilt constitutes a "conviction" for immigration purposes, and finding him ineligible for relief from deportation under former Section 212(c) of the INA (8 U.S.C. § 1182(c) (1994)), because of 1996 amendments in Section 440(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Id. The BIA noted that his marijuana offense would not be considered an "aggravated felony" and that he would therefore be eligible for cancellation of removal under 8 U.S.C. § 1229(b). Id. Consequently the BIA administratively closed the case, pending promulgation of an anticipated regulation which allowed the deportation proceedings to be terminated. Id.

On March 29, 2001, at the request of the INS, the BIA reopened the proceedings and reinstated Cantu-Delgadillo's appeal. Id. On August 31, 2001 the BIA dismissed the appeal, and ordered his deportation. Id. The BIA based its decision on the Fifth Circuit's decision in Hernandez-Avalos. Id. "There was some confusion" about whether the BIA's decision was sent to Cantu-Delgadillos' counsel. Id. Cantu-Delgadillo first learned of the decision on May 2002, when he was notified that he would be surrendered to INS in Houston for deportation on May 29, 2002. Id. Arrangements were made for him to surrender in Harlingen, Texas, since he and his counsel are residents of the Rio Grande Valley. Once he had been surrendered, Cantu-Delgadillo filed the instant habeas petition. Id.

**B.    Common Rulings Of Law**

The Magistrate concluded that the court has habeas jurisdiction to decide Petitioners' constitutional challenges to the findings that they are removable conviction of an aggravated felony or drug crime, reasoning that there is no decision "in any circuit hold[ing] that habeas review of

6

constitutional claims [is] impermissible because such claims could have been, but were not raised on direct review in the circuit court." R & R at 35.

In regard to the merits of the habeas petitions, the Magistrate reserved judgment on the statutory and constitutional issues of first impression as to whether a "first-offender" exception should be read into the definition of a conviction for immigration purposes, as well as a claim by Petitioners that their removal or deportation orders violate international law and treaties. R & R 31-35. The Magistrate noted, however, that "Supreme Court and Fifth Circuit preceden[t] seemingly has foreclosed all of the[ latter] claims." R & R 35.

In regard to the issue of whether the Fifth Circuit's decision in Hernandez-Avalos applies to Petitioners' guilty pleas or convictions, the Magistrate ruled that it is a violation of due process to retroactively apply that decision to convictions prior to Hernandez-Avalos. R & R at 36, 37-38. The Magistrate acknowledged that under Hernandez-Avalos a state felony crime of simple drug possession comes within the meaning of an aggravated felony/drug trafficking crime. Id. at 38. He also acknowledged that the Petitioners "would be deemed guilty of an aggravated felony and thus be subject to removal with no form of relief available" if they pleaded guilty after the decision in Hernandez-Avalos. Id. at 38. However, based on extra-record testimony in the evidentiary hearings, the Magistrate reasoned that some Petitioners were "in doubt" about whether their felony drug possession crimes constituted aggravated felonies, that there was "a great deal of confusion amongst the criminal bar" about whether this was the case, and speculated that some Petitioners may not have pleaded guilty had they known that their crimes would be construed to constitute deportable aggravated felonies. Id. at 36, 38. The Magistrate also relied on representations of Petitioners'

counsel and found that "most if not all of [counsel's] clients had not been informed prior to their plea that there would be immigration consequences." Id. at 39.

Given these findings, the Magistrate applied case law from the mid-1960's regarding the retroactivity of judicial construction of criminal statutes, see Bouie v. City of Columbia, 378 U.S. 347, 358 (1964), and ruled that "[t]o apply Hernandez-Avalos to these Petitioners retroactively. . . converts a disposition which, at the time they entered into pleas, carried little to no immigration consequences into one that mandates deportation." R & R at 38. The Magistrate ruled that this "violates Due Process" because it is "retroactive application of a new construction of a statute," and has the effect of making deportation "an additional penalty[]" for "the 'criminal offense.'" R & R at 37-38. The Magistrate also concluded that this was compounded by the fact that about half of the aliens[6] in the consolidated cases received deferred adjudications of guilt, which the Magistrate noted would not constitute a conviction under Texas law if probation were successfully completed. R & R at 36.[7]

For these reasons the Magistrate concluded that the BIA erred in retroactively applying the Fifth Circuit's construction of an aggravated felony in Hernandez-Avalos to Petitioners' convictions, and that the BIA is required to continue to apply its prior incorrect reading of the law, because that was the construction in effect when Petitioners pled guilty or were convicted. Id. at 39-40. Thus, the

---

[6] Sandoval-Herrera, Carrizales-Perez, Hernandez-Pantoja, Lucio, and Rodriguez-Castro. R & R at 36 n. 34..

[7] The Magistrate Judge overlooked that the Fifth Circuit has held that a Texas deferred adjudication of guilt constitutes a "conviction" for federal immigration purposes. Moosa, 171 F.3d at 994-97.

Magistrate ruled that Hernandez-Avalos applies prospectively, only to convictions postdating the decision. Id.

## OBJECTIONS TO FACT FINDINGS

The Magistrate's factfindings in Cantu-Delgadillo's case are incomplete and omit critical facts that are not disputed and that are necessary for correct resolution of the jurisdictional and legal issues raised by his case. The Court should find the following are the facts of this case.

As Administrative Record (A.R.) shows, Cantu-Delgadillo is a native and citizen of Mexico who entered the United States as a lawful permanent resident on July 5, 1978. A.R. at 107. On April 27, 1996, a criminal indictment was filed against Cantu-Delgadillo in the 351st District Court, Harris County, Texas, charging him with one count of second-degree felony possession of marijuana, i.e., knowingly and intentionally possessed a usable quantity of marijuana in an amount of more than fifty pounds and less than two thousand pounds. A.R. at 95. On November 27, 1996, Cantu-Delgadillo pled guilty to this offense, received a deferred adjudication of guilt under Texas law, and as his criminal record states, was placed on "probation" or "community supervision" for 10 years. A.R. at 96-97.

On the basis of Cantu-Delgadillo's guilty plea and court-ordered 10-year term of probation, the INS issued an Order to Show Cause on January 31, 1997, charging him with being deportable on two grounds: (1) pursuant to INA Section 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i) (1994), for having been convicted of a law relating to a controlled substances offense,[8] and (2) pursuant to INA Section 241(a)(2)(A)(iii), 8 U.S.C. §1251(a)(2)(A)(iii) (1994), for having been convicted of an

---

[8] The grounds of deportation listed in former 8 U.S.C. § 1251 were recodified as of April 1, 1997, and now appear in 8 U.S.C. § 1227.

"aggravated felony" (i.e., the aggravated felony of a "drug trafficking crime as defined in [18 U.S.C.] § 924(c)," which is one of many offenses defined as an aggravated felony by the INA, see 8 U.S.C. § 1101(a)(43)(B)). A.R. at 107-111.

On February 25, 1997, a deportation hearing was held before an immigration judge at which the INS submitted copies of Cantu-Delgadillo's criminal records showing his guilty plea and 10 years' probation for felony marijuana possession. On the basis of these criminal records, the Immigration Judge found Cantu-Delgadillo deportable on both grounds charged in the Order to Show Cause: (1) for having been convicted of a controlled substances offense, and (2) for having been convicted of the aggravated felony of a "drug trafficking crime" based on his guilty plea to felony marijuana possession and term of probation. In addition, the Immigration Judge found that Cantu-Delgadillo's aggravated felony conviction rendered him ineligible for any relief from deportation. A.R. at 85. On these bases, the Immigration Judge ordered Cantu-Delgadillo to be deported to Mexico. A.R. at 81.

Cantu-Delgadillo filed a timely appeal of the Immigration Judge's decision with the BIA. In his notice of appeal, Cantu-Delgadillo challenged the finding of deportability on two grounds: (1) that his "[d]eferred adjudication was not a conviction for immigration purposes" and (2) his "drug offense was not an aggravated felony for immigration purposes." Cantu-Delgadillo also argued that he should be eligible for relief from deportation under former Section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994) (repealed). This provision gave the Attorney General discretion to waive deportability for certain long-term resident aliens, but was eliminated for aliens convicted of controlled substances offenses or aggravated felonies as of April 24, 1996, by amendments to the INA in Section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996). See Requena-Rodriguez v. Pasquarell, 190 F.3d 299 (5th Cir. 1999).

Specifically, Cantu-Delgadillo argued to the BIA that: (1) it was impermissibly "retroactive" to apply AEDPA to eliminate Section 212(c) relief in his case, because he committed his drug crime prior to AEDPA's enactment; and (2) it was a violation of equal protection for AEDPA to have eliminated Section 212(c) relief for drug offenders and aggravated felons in deportation proceedings but not for those in exclusion proceedings. A.R. at 61-64.[9]

In his brief to the BIA Cantu-Delgadillo focused exclusively on the claim that his deferred adjudication of guilt was not a conviction for immigration purposes. He contended that his deferred adjudication did not come within the meaning of a new statutory definition of "conviction" added to the INA in 1996 at 8 U.S.C. § 1101(a)(48) (2000), which defines a "conviction" for immigration purposes as, among things, a guilty plea plus some form of punishment or restraint on liberty. A.R. at 19-26.

In a decision dated December 29, 1998, the BIA ruled that a deferred adjudication is a conviction for immigration purposes and found Cantu-Delgadillo deportable on the first charged ground, namely conviction of a controlled substance offense. In a footnote the BIA concluded that Cantu-Delgadillos' crime of felony marihuana possession was not an "aggravated felony," and that he was therefore not deportable on the second charged ground (conviction of an aggravated felony), relying on its decisions in Matter of L-G-, Int. Dec. 3254 (BIA 1995) and Matter of Davis, 20 I & N Dec. 536, 543 (BIA 1992), which have since been held to be erroneous by the Fifth Circuit in Hernandez-Avalos, supra. The BIA then administratively closed the case rather than issuing an order

---

[9] The Fifth Circuit subsequently rejected such claims, holding that (1) AEDPA does not have a "retroactive" effect in eliminating Section 212(c) relief for aliens with pre-AEDPA crimes, and (2) AEDPA's elimination of 212(c) relief for criminals in deportation proceedings but not exclusion proceedings does not violate equal protection. See Requena-Rodriguez, 190 F.3d at 308-09.

11

of deportation for being a convicted controlled substances offender, in anticipation of the publication of new regulations by the Attorney General governing criminal aliens' eligibility for relief under Section 212(c), which were expected to be forthcoming.  A.R. at 16-17.

On March 29, 2001, the BIA reopened the case, on the motion of the INS, concluding that the new regulations governing the availability of Section 212(c) relief did not apply to Cantu-Delgadillo's case, and indicated that  a decision on the merits would be forthcoming.  A.R. at 4.  On August 31, 2001, the BIA issued a written decision and final deportation order dismissing Cantu-Delgadillo's appeal and ordering him to be deported to Mexico.  On the issue of whether Cantu-Delgadillo's deferred adjudication was a "conviction" for immigration purposes the BIA applied the Fifth Circuit's 1999 decision in Moosa which holds that a deferred adjudication is a conviction for immigration purposes. See 171 F.3d at 1004-06. On the issue of whether Cantu-Delgadillo's crime of felony drug possession is an "aggravated felony/drug trafficking crime," the BIA found that the footnote in its earlier decision finding the crime was not an aggravated felony was erroneous, and held that Cantu-Delgadillo's crime is an aggravated felony.  In so concluding, the BIA applied the law of the Fifth Circuit in Hernandez-Avalos, supra, holding that a state crime of felony drug possession is an aggravated felony/drug trafficking crime.

On the issue of whether it was impermissibly "retroactive" to apply AEDPA's April 24, 1996 amendments eliminating Section 212(c) relief for controlled substances offenders and aggravated felons to Cantu-Delgadillo's case, the BIA concluded that it was not, because he pled guilty to his drug crime on November 27, 1996, over 7 months after AEDPA took the relief away, and therefore could not have relied on that relief at the time he entered his plea. A.R. at 2-3.

Cantu-Delgadillo did not file a petition for direct review of the BIA's order in the court of appeals. Instead, he waited over a year and then filed his habeas petition, claiming only that there was some confusion and he was not aware of the BIA's order.

## OBJECTIONS TO RULINGS OF LAW

## I.    THE MAGISTRATE ERRED IN FINDING JURISDICTION OVER THESE HABEAS PETITIONS.

The Magistrate's ruling that this court has habeas jurisdiction to review Petitioners' statutory and constitutional challenges to the findings of removability for conviction of an aggravated felony or drug crime is clearly erroneous for the following reasons.

First, the Fifth Circuit has held for several years that there is no habeas jurisdiction to review statutory or constitutional challenges to deportation orders where review is available in the court of appeals by means of a petition for direct review. Rivera-Sanchez v. Reno, 198 F.3d 545, 547 (5th Cir. 1999) ("as we have stated. . . habeas jurisdiction exists only where 'challenges [to deportation orders] cannot be considered on direct review by the court of appeals;"); Requena-Rodriguez v. Pasquerell, 190 F.3d 299, 305 (5th Cir. 1999) (habeas jurisdiction exists to review "statutory and constitutional challenges if those challenges cannot be considered on direct review"). While these cases pertain to habeas review of deportation orders, the same reasoning applies with equal force for habeas review of removal orders. Congress has directed that review of such orders is to take place in the courts of appeals by means of a petition of direct review. 8 U.S.C. § 1252. To permit aliens to misuse habeas corpus to circumvent that review and delay their removal is clearly not proper, is a waste of scarce judicial resources, and frustrates the orderly scheme of review that Congress has created for removal orders.

13

Second, the law is clear that direct review in the court of appeals is available for the statutory and legal challenges that Petitioners raised in these habeas petitions.  It is clear that the court of appeals has jurisdiction to review what constitutes a conviction for immigration purposes.  See Moosa, 171 F.3d at 1000-02 (direct review of whether deferred adjudication constitutes a conviction for immigration purposes).  The court of appeals also has jurisdiction to review Petitioners' statutory and constitutional claims regarding a "first offender" exception to the definition of a conviction.  Indeed these claims have already been reviewed in the Eighth, Ninth, and Eleventh circuits by means of petitions for direct review  See Lujan-Armendariz v. INS, 222 F.3d at 745-48; Vasquez-Velezmoro, 281 F.3d at 698; Fernandez-Bernal, 257 F.3d at 1307.  It is also  well established that the question whether an alien has an aggravated felony for immigration purposes is an issue that the court of appeals has jurisdiction to decide.  See, e.g., Chowdhury v. INS, 249 F.3d 970 (9th Cir. 2001) (construing whether conviction for money laundering constitutes an aggravated felony rendering alien deportable); Lopez-Elias v. Reno, 209 F.3d 788 (5th Cir. 2000), cert. denied 531 U.S. 1069 (2001) (construing whether conviction for burglary of vehicle with intent to commit theft is aggravated felony rendering alien deportable).

Third, the Magistrate erred in concluding that there are no Circuit decisions postdating the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001) (finding habeas jurisdiction to review a statutory challenge to a removal order where direct review in court of appeals was not available), which hold that habeas review is impermissible because claims could have been, but were not raised on direct review.  R & R at 35.  Post- St. Cyr, the Ninth Circuit has held that there is no habeas jurisdiction to review claims that could have been, but were not raised on direct review. See

Baeta v. Sonchik, 273 F.3d 1261, 1264 (9th Cir. 2001) (reiterating that there is no habeas jurisdiction to review a removal order where alien has failed to exhaust his judicial remedy of direct review).

Fourth, the Magistrate overlooked the fundamental principle that "the extraordinary nature of the writ [of habeas corpus] . . . should not be resorted to until other more conventional remedies have failed." Mason v. Ciccone, 531 F.2d 867, 868, 870 (8th Cir. 1976). Therefore, as a prudential matter, aliens must exhaust their judicial remedies before seeking review of their removal or deportation orders by habeas corpus. Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001). As shown above, Petitioners did not exhaust their judicial remedies in these cases. Direct review for their legal claims was available in the court of appeals. Petitioners have circumvented that review and instead filed these habeas petitions. In this situation, they are not entitled to habeas review, and the court should dismiss the petitions for lack of jurisdiction.

In sum, since direct review was available in the court of appeals for Petitioners' statutory and legal challenges to their removal orders, there is no habeas jurisdiction to review these petitions, and the Magistrate erred in finding jurisdiction exists. See Rivera-Sanchez, 198 F.3d at 547; Requena-Rodriguez, 190 F.3d at 305.

## II.    THE MAGISTRATE ERRED IN TAKING ADDITIONAL TESTIMONY AND CONSIDERING EVIDENCE OUTSIDE THE ADMINISTRATIVE RECORDS.

For the following reasons the Magistrate clearly erred as a matter of law in conducting evidentiary hearings and considering new testimony by some Petitioners as to their understanding of the law at the time of their pleas.

First, the Magistrate erred in taking new evidence, because the scope of review of removal or deportation orders in habeas corpus is limited to pure questions of law. See 8 U.S.C. § 2241(c) (authorizing habeas corpus only where a person is being held in custody in "violation of the

Constitution or laws of the United States") (emphasis added); INS v. St. Cyr, 533 U.S. 289, 306 (2001) (habeas corpus traditionally has not been available to review factual determinations made by the Executive Branch in deportation cases); Carranza v. INS, 277 F.3d 65, 73 n. 6 (1st Cir. 2002) (only "[p]urely legal questions" in deportation orders are subject to habeas review and courts may not "second-guess[] the [BIA's] factual findings"); Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999) ("only questions of pure law [in deportation orders] will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited.").

Second, the Magistrate erred in considering this new evidence because the Supreme Court has made clear that review of deportation or removal orders is limited to the administrative record and legal arguments that were actually presented and considered by the agency below. INS v. Ventura, 123 S.Ct. 353, 355-56 (2002). The testimony by several Petitioners as to their subjective understanding of the law at the time of their plea is not evidence that was in the removal or deportation proceedings below. Therefore it could not properly be considered by the Magistrate in reviewing the orders in these cases.

Third, the Magistrate erred in considering this new evidence, because Congress has expressly directed that review of removal orders is limited to "the administrative record on which the order of removal is based." INA Section 242(b)(4)(A) of the Act, 8 U.S.C. §1252(b)(4)(A). This is consistent with fundamental principles of administrative law, which limit judicial review of administrative decisions to the record before the agency at the time of its decision. The Magistrate's conduct of evidentiary hearings and consideration of extra-record testimony is thus contrary to statute and black-letter administrative law.

16

Fourth, the Magistrate erred in considering this new evidence, because the Fifth Circuit has made crystal clear that exhaustion of administrative remedies is a prerequisite to habeas review of a removal order. Goonsuwan v. Ashcroft, 252 F.3d 383 (5th Cir. 2001); see also 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right ...."). Any evidence or testimony considered by the Magistrate is new evidence that was not presented to the agency below, and is thereby evidence as to which the Petitioners failed to exhaust their administrative remedies.

Fifth, the Magistrate erred in considering the new evidence of testimony by some Petitioners, as well as Petitioners' counsel's unsworn representations that several Petitioners were not given immigration warnings at the time of their pleas, because the issue of whether it is proper for the BIA to apply the Fifth Circuit's construction of an aggravated felony in Hernandez-Avalos retroactively to Petitioners' pleas and convictions is a question of law to be resolved by reference to Supreme Court and Fifth Circuit precedent. Counsel's unsworn representations that immigration warnings were not given at the time of the pleas (which misrepresented the facts in several cases), and the testimony by several Petitioners about their confusion as to the meaning of the law at the time of their pleas are immaterial to the legal analysis of this issue. As shown below in the discussion of the governing Fifth Circuit and Supreme Court case law, judicial decisions apply retroactively. In addition, as shown below, in Hernandez-Avalos the Fifth Circuit already rejected the type of due process challenge Petitioners raised in their habeas petitions. Accordingly the Magistrate should have applied the existing law of the Fifth Circuit, which has rejected the kind of due process challenge to retroactive application of the construction of an aggravated felony that Petitioners make, and erred by conducting evidentiary hearings and considering extra-record testimony in resolving these cases.

17

III.    **THE MAGISTRATE ERRED IN RULING THAT IT VIOLATES DUE PROCESS TO APPLY THE FIFTH CIRCUIT DECISION IN <u>HERNANDEZ-AVALOS</u> RETROACTIVELY TO THESE CASES.**

A.    **Background Of BIA's Misconstruction Of Aggravated Felony And Fifth Circuit Decision In <u>Hernandez-Avalos</u> Clarifying The Correct Meaning.**

In the INA Congress has defined an "aggravated felony" to mean, <u>inter alia</u>, "a drug trafficking crime (as defined in section 924(c) of Title 18)." 8 U.S.C. § 1101(a)(43((B);[10] <u>Hernandez-Avalos</u>, 251 F.3d at 507. Section 924(c) of Title 18, in turn, defines the term "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 810 et seq.). . . ." 18 U.S.C. § 924(c)(2); <u>Hernandez-Avalos</u>, 251 F.3d at 507.

As the Fifth Circuit has concluded in <u>Hernandez-Avalos</u>, from at least 1995 onwards, the BIA misinterpreted this definition to mean a state offense that would be "punishable as a felony" under the Controlled Substances Act, if it were a federal offense. <u>Hernandez-Avalos</u>, 251 F.3d at 508-09; <u>see</u> <u>Matter of L-G-</u>, 21 I & N Dec. 89 (BIA 1995), <u>holding modified by</u> <u>Matter of Yanez-Garcia</u>, 23 I & N Dec. 390 (BIA 2002). Based on this misreading of the law, the BIA erroneously construed state

---

[10] In 1996 amendments Congress directed that the INA's definition of "aggravated felony" is to be applied to "any actions taken on or after" the 1996 amendments "regardless of when the conviction occurred." <u>See</u> Section 321(a) of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. 104- 208, 110 Stat. 3009, 3009-627 (1996). Accordingly the statutory definition of "aggravated felony" applies retroactively, regardless of the date of a plea or conviction. <u>See, e.g., Aragon-Ayon v. INS,</u> 206 F.3d 847 (9th Cir. 2000).

felony drug possession not to come within the definition of an "aggravated felony/drug trafficking crime" for immigration purposes. Hernandez-Avalos, 251 F.3d at 508-10.

In the mean time, in federal sentencing cases, the Fifth Circuit and five other circuits reached a contrary conclusion. See Hernandez-Avalos, 251 F.3d at 508. These courts construed the definition of "aggravated felony/drug trafficking crime" to mean an offense that is (1) punishable under the Controlled Substances Act and (2) a "felony" under the law of the convicting jurisdiction. Id. Under this construction a crime of state felony drug possession constituted an "aggravated felony/drug trafficking crime" for sentencing purposes.[11]

The BIA recognized the inconsistency between its construction and that of the Circuits in federal sentencing cases, but took the position that the definition of an "aggravated felony/drug trafficking crime" should be read to have two different meanings depending on the context (immigration proceedings versus sentencing proceedings). See Hernandez-Avalos, 251 F.3d at 508-10; Matter of K-V-D-, 22 I & N Dec. 1163 (BIA 1999), overruled by Matter of Yanez-Garcia, 23 I & N Dec. 390 (BIA 2002). The Second Circuit agreed with this dual reading of what constitutes an aggravated felony. Aguirre v. INS, 79 F.3d 315, 317 (2d Cir. 1996),

The Fifth Circuit did not. In 2001, in Hernandez-Avalos, the Fifth Circuit clarified the correct meaning of the definition an "aggravated felony/drug trafficking crime" for immigration purposes in this circuit. 251 F.3d at 508-10. The Fifth Circuit held that the BIA had been misreading the definition and that "the statutory language is clear – and is the same – regardless of whether it is applied in

---

[11] See United States v. Ibarra-Galindo, 206 F.3d 1337, 1339-40 (9th Cir.2000); United States v. Simon, 168 F.3d 1271, 1272 (11th Cir. 1999); United States v. Hinojoa-Lopez, 130 F.3d 691, 694 (5th Cir. 1997); United States v. Briones-Mata, 116 F.3d 308, 309 (8th Cir. 1997); United States v. Cabrera-Sosa, 81 F.3d 998, 1000 (10th Cir. 1996); United States v. Restrepo-Aguilar, 74 F.3d 361 364-66 (1st Cir. 1996); United States v. Polanco, 29 F.3d 35, 38 (2d Cir. 1994).

sentencing or immigration cases." Id. at 509. The Fifth Circuit concluded that "*the plain language of the statutes 'indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law.*" Id. at 510 (emphasis added). It also concluded that Congress has always intended aliens with state felony drug possession crimes to be removable as aggravated felons:

> [W]e cannot ignore the fact that the relevant statutes − when properly interpreted − express Congress' intent that aliens with drug convictions that are felonies under state law should be removed . . . .

Id. at 510. Thus, the Fifth Circuit concluded that the definition of "aggravated felony/drug trafficking crime" has always been intended by Congress to mean a state felony offense of simple drug possession. Id. The alien in Hernandez-Avalos argued that it was a violation of due process to apply the Fifth Circuit's construction of aggravated felony retroactively to the alien's 1999 guilty plea to state felony drug possession, on the theory that at the time of that plea it has not been considered an aggravated felony under the BIA's erroneous interpretation. Id. at 508. The Fifth Circuit rejected this contention. Id. at 508-9. It concluded that due process does not require an alien to continue to have the benefit of the BIA's prior misinterpretation of the law and that there is nothing "fundamentally unfair" in removing an alien as an aggravated felon "because he should have [had] the benefit of an agency's erroneous interpretation of applicable law." Id.

Following the decision in Hernandez-Avalos, the BIA issued a published decision in Matter of Salazar-Regino, supra, (one of the consolidated cases subject to the Report and Recommendation) correcting the BIA's prior misreading of the definition of an aggravated felony and applying the correct, Fifth Circuit definition set forth in Hernandez-Avalos to removal cases arising in the circuit.[12]

---

[12] The BIA also corrected its interpretation nationwide, ruling that the definition of what constitutes an "aggravated felony/drug trafficking crime" for removal purposes coincides with the

As shown above, the Magistrate has now ruled that:  (1) it is a violation of due process for the BIA to apply the Fifth Circuit's interpretation of aggravated felony in Hernandez-Avalos retroactively to convictions or criminal dispositions occurring before that decision, (2) the BIA must continue to apply its prior incorrect  interpretation of aggravated felony to all pleas or convictions that occurred while that interpretation was in effect, and (3) the BIA may apply the correct interpretation of aggravated felony in Hernandez-Avalos prospectively only, to pleas or convictions occurring after that decision. R & R at 36-40.

**B.    The Magistrate's Ruling Is Contrary To Rules Of Judicial Retroactivity, Stare Decisis, And Binding Precedent, And Applies A Due Process Analysis That Has Been Rejected By The Fifth Circuit In Hernandez-Avalos.**

First, the Magistrate has clearly erred as a matter of law, because he has failed to understand a fundamental principle of common law  – namely the rule of "judicial retroactivity."  As the Fifth Circuit has stated: "[t][he general principle [is]  that statutes operate prospectively and judicial decisions apply retroactively" and this has been the law "for near a thousand years."  Hulin v. Fibreboard Corp., 178 F.3d 316, 329 and n. 5 (5th Cir. 1999), quoting Kuhn v. Fairmont Coal Co., 215 U.S. 349, 371 (1910) (Holmes, J., dissenting).   Judges "'say what the law is'" not "what the law shall be" like legislatures. Id. at 329 n. 5, quoting Harper v. Virginia Department of Taxation, 509 U.S. 86, 107 (1993) (Scalia, J., concurring).  For hundreds of years the common law has "viewed retroactivity as an inherent characteristic of the judicial power, a power not delegated to pronounce a new law, but to maintain and expound the old one." Harper, 509 U.S. at 107, quoting 1 W.Blackstone, Commentaries 69 (1795) ("Blackstone"). "Even when a 'former determination is . .

_____

law of the federal circuit in which the case arises.  Matter of Yanez-Garcia, supra.

. contrary to reason or . . . law,' a judge overruling that decision would 'not pretend to make a new law, but to vindicate an old one from misrepresentation." Id.

As the Supreme Court has recently stated, *"construction of a statute is an authoritative statement of what the statute meant before[,] as well as after[,] the decision of the case giving rise to that construction."* Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994) (emphasis added). Thus, when a court, like the Fifth Circuit in Hernandez-Avalos, construes the meaning of a statute through adjudication, it is "say[ing] what the law is," and is "mak[ing] [law] as judges make it, which is to say as though they were 'finding' it — discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be." James B. Beam Distilling Company v. Georgia, 501 U.S. 529, 546 (1991) (Scalia, J., concurring).

Under the case law of the Supreme Court and Fifth Circuit, judicial decisions are to be applied retroactively, even where the decision constitutes a "clear break" with the previous law. James Beam, 501 U.S. at 537-38; Hulin, 178 F.3d at 331-32. This applies to both civil and criminal cases. Harper, 509 U.S. at 97; Hulin, 178 F.3d at 331. This also applies regardless of a party's reliance on former law or the harm that any reliance might cause. Harper, 509 U.S. at 97; Hulin, 178 F.3d at 331.

As the Supreme Court has stated, when a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open . . . and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Harper, 509 U.S. at 97. "[W]e can scarcely permit 'the substantive law [to] shift and spring' according to the 'particular equities of [a party's] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." Id. A court "has

22

no more . . . authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." Id.[13]

Given the foregoing, the Magistrate's ruling that it violates "due process" to apply the Fifth Circuit's decision in Hernandez-Avalos retroactively to Petitioners' cases is clearly erroneous, because it violates Supreme Court and Fifth Circuit case law holding that judicial decisions always apply retroactively. See Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995); Harper, 509 U.S. at 97; Hulin, 178 F.3d at 332-33.

Second, the Magistrate's ruling is also clearly erroneous because it violates stare decisis, which make the decisions of the Fifth Circuit binding precedent in all cases within the circuit, unless reversed on rehearing en banc, overruled by the Supreme Court, or changed by Congress. See generally Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001); Payne v. Tennessee, 501 U.S. 808, 828 (1991). Under stare decisis, neither the Magistrate, this Court, nor the BIA may decline to apply the law as announced by the court of appeals once it has ruled on a controlling legal issue. See Hernandez-

---

[13] The Fifth Circuit has discussed the law regarding "judicial" or "adjudicative" retroactivity in Hulin, 178 F.3d at 330-32. That decision shows that for 30 years from the mid-1960's to the mid-1990's the Supreme Court applied a discretionary rule of judicial "prospectivity," permitting some judicial decisions to apply prospectively only. Hulin, 178 F.3d at 330-32; see Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07 (1971) (discretionary rule permitting civil decisions to be applied prospectively only); Linkletter v. Walker, 381 U.S. 618 (1965) (discretionary rule permitting criminal decisions to be applied prospectively only). In the civil context, a judicial decision could be applied prospectively only if the decision "established a new principle of law, if such a limitation would avoid substantial inequitable results, and if retrospective application would not retard the purpose and effect of the new rule." Hulin, 178 F.3d at 330-32. This same type of discretionary prospectivity also applied to administrative adjudications. See MacDonald v. Watt, 653 F.2d 1035 (5th Cir. 1981).

However, between 1987 and 1995 the Supreme Court rejected this the concept of judicial prospective and as the Fifth Circuit has stated, "evidently . . . has [now] concluded that [the] departure from traditional retroactivity doctrine proved unsatisfactory." Hulin, 178 F.3d at 332. The Supreme Court has "return[ed]to the general rule of adjudicative retroactivity, leaving only an indistinct possibility of the application of pure propspectivity in an extremely unusual and unforeseeable case." Hulin, 178 F.3d at 332.

23

<u>Avalos</u> 251 F.3d at 508 n. 2 ( "[i]f a circuit courts interpretation of 'aggravated felony' is different from the BIA's interpretation, the [agency] is bound by the decision of the circuit court in removal proceedings 'arising in' that circuit."). Binding authority must be followed unless and until overruled by a body competent to do so. The construction of aggravated felony in <u>Hernandez-Avalos</u> is still sound law. It has not been overruled. It is directly on point and constitutes the binding construction of aggravated felony in the Fifth Circuit. As such the BIA, the Magistrate, and this court are required to apply <u>Hernandez-Avalos</u> to the facts in Petitioners' cases.

Third, the Magistrate's ruling is also clearly erroneous because he has applied a due process/retroactivity analysis that the Fifth Circuit has already rejected in <u>Hernandez-Avalos</u>. The Magistrate's analysis is that it is a violation of due process to apply the correct construction of aggravated felony in <u>Hernandez-Avalos</u> retroactively to Petitioners' cases, because under the BIA's misreading of the law at the time Petitioners pled guilty or were convicted, their state felony drug possession crimes were not considered to be aggravated felonies. R & R 36-40. The Fifth Circuit has already rejected such a claim in <u>Hernandez-Avalos</u>. There, the Fifth Circuit held that it does not violate due process, and is not fundamentally unfair, to remove an alien based on the correct construction of aggravated felony, even if his crime was not considered to be an aggravated felony at the time of his plea because of the BIA's misreading of the law. 521 F.3d at 508 ("[w]e see no reason why . . . it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law").

Fourth, the Magistrate's ruling is erroneous because he has overlooked that in <u>Hernandez-Avalos</u>, the Fifth Circuit did essentially what the BIA has done in Petitioners' cases, "retroactively" apply the correct construction of an "aggravated felony/drug trafficking crime" to an alien's 1 guilty plea to felony drug possession that was not considered an aggravated felony under the BIA's

24

erroneous interpretation at the time of the plea. See 521 F.3d at 508-10. If the Fifth Circuit retroactively applied its construction of aggravated felony in this manner, it was certainly not a violation of due process for the BIA to apply the construction in the same manner. The Magistrate has also overlooked that this is not "retroactive," in the sense of applying a new rule of law to past events. Hernandez-Avalos simply clarifies what the plain meaning of an "aggravated felony/drug trafficking crime" has been all along − i.e., that it means a state felony drug possession crime. 251 F.3d at 510. As the Fifth Circuit stated: *"[w]e cannot ignore the fact that the relevant statutes − when properly interpreted − express Congress's intent that aliens with drug convictions that are felonies under state law should be removed. . . ."* Id. (emphasis added) The fact that the BIA was misreading the definition of aggravated felony at the time Petitioners' pled guilty or were convicted following trial does not give them any right to now avoid the correct application of the law. The law must be enforced as written and as intended by Congress. See id. at 510.

Fifth, the Magistrate's ruling that to apply Hernandez-Avalos in these cases would make deportation *"an additional penalty[ ]"* for *"the 'criminal offense'"* is a clear misstatement of law. R & R at 36, 38 (emphasis added). The Supreme Court has repeatedly made clear that deportation is not an added "punishment" or "penalty" for a criminal conviction.

> While the consequences of deportation may assuredly be grave, they are not imposed as a punishment. [citation omitted]. . . . Even when deportation is sought because of some [crime] the alien has committed, . . . the alien is not being punished for that act (criminal charges may be available for that separate purpose) but is merely being held to the terms under which he was admitted. And in all cases, deportation is necessary in order to bring to an end an ongoing violation of United States law.

Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 491(1999). See also Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952) ("[d]eportation, however, severe its consequences, has been consistently classified as a civil rather than criminal procedure"). Deportation

is not punitive. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984); LeTourneur v. INS, 538 F.2d 1368, 1370 (9th Cir. 1976) ("Deportation is not criminal punishment.").

Sixth, the Magistrate's concern about Petitioners' lack of notice about the deportation consequences of their guilty pleas or convictions pertains to the validity of their guilty pleas, not to whether Congress intended their crimes to be aggravated felonies, which is the issue resolved in Hernandez-Avalos. By testifying or arguing that they did not fully understand the immigration consequences of their pleas, Petitioners and their counsel are improperly attempting to collaterally challenge the validity of their state convictions. This is an issue for state courts to decide, not for this court or the Magistrate to consider in reviewing Petitioners' removal or deportation orders. Moreover, under Texas law an alien's lack of notice about the collateral immigration consequence of his plea does not render the plea involuntary or unintelligent. See State v. Jiminez, 987 S.W. 2d 886 (Tx. Ct. App. 1999).

Seventh, the Magistrate has clearly erred in concluding that it was improper to apply Hernandez-Avalos retroactively because several of the Petitioners have deferred adjudications that would not qualify as convictions under Texas law if probation were successfully completed. The Fifth Circuit has ruled that a Texas deferred adjudication of guilt constitutes a "conviction" for immigration purposes regardless of whether it is a conviction under Texas law. Moosa, 171 F.3d at 1000-02.

Finally, as a matter of common sense, the Magistrate's ruling is clearly wrong. Hernandez-Avalos is the law of the Circuit. It decides the correct meaning of an aggravated felony. For the Magistrate to refuse to allow the BIA to apply the correct meaning of the law and require the BIA to continue applying a reading of the law that is incorrect is unprecedented. The Magistrate is seeking to prevent the Executive Branch from enforcing the law as written by Congress, and to

26

require the Government to permit aliens to illegally remain in this country or receive immigration benefits, in violation of the law as now construed by the Fifth Circuit. This is plainly wrong.

For these reasons the Magistrate has erred in ruling that it is a violation of due process for the BIA to apply the construction of aggravated felony in Hernandez-Avalos to the facts of these cases.

## CONCLUSION

For the foregoing reasons, the court should reject the Magistrate's Report and Recommendation, which contains numerous errors of fact and law, and should either: (1) dismiss these habeas petitions for lack of jurisdiction, or (2) if it finds jurisdiction, affirm the BIA's application of Hernandez-Avalos to the facts and return these cases to the Magistrate for recommendations on the remaining legal issues that have not been decided.

In the alternative, pursuant to the federal transfer statute at 28 U.S.C. § 1631, this court has authority to transfer the lead case, Salazar-Regino (No. B-02-45), to the court of appeals and stay the remaining cases, pending resolution by that court of the common statutory and constitutional challenges to removability as an aggravated felon that these cases all raise. The transfer statute authorizes transfer if this Court finds that: (1) the court of appeals would have been able to exercise jurisdiction on the date that the habeas petition was filed in the district court; (2) the district court lacks habeas jurisdiction over the case, and (3) the transfer is in the interests of justice. See 28 U.S.C. § 1631. In the Ninth Circuit, transfer has already been used in immigration cases like Salazar-Regino's, where the court of appeals is the proper forum for review of the legal challenges to a removal order that an alien seeks to raise, but instead he filed in the wrong forum, by filing a habeas petition in district court during the time period permitted for filing for direct review. See Castro-Cortez. I.N.S., 239 F.3d 1037, 1046 (9th Cir. 2001).

Salazar-Regino meets the requirements for transfer. First, the court of appeals would have been able to exercise jurisdiction on the date his habeas petition was filed. Salazar-Reginio filed his habeas petition on March 8, 2002. This was within 30 days of the BIA's decision in his case (February 14, 2002). The habeas petition was therefore filed within the 30-day limit for filing for direct review in the court of appeals. See 8 U.S.C. § 1252 (b)(1).

Second, as shown by the case law cited above in the Objections to the Magistrate's jurisdictional ruling, under the current law of the Fifth Circuit, there is no habeas jurisdiction to consider Salazar-Reginio's statutory and constitutional challenges to the finding that he is removable for conviction of an aggravated felony, based on his first-time state drug offense of felony drug possession, because review of these issues is available in the court of appeals. Requena-Rodriguez, 190 F.3d at 305 (habeas jurisdiction exists to review "statutory and constitutional challenges if those challenges cannot be considered on direct review."). See also Lujan-Armendariz, 222 F.3d at 745-48 (direct review of whether first-time state drug offense constitutes a conviction for immigration purposes); Lopez-Elias, 209 F.3d 789-90 (direct review of whether crime constitutes aggravated felony for purposes of deportation).

Third, the Court could find that transfer to be be in the interests of justice because Salazar-Regino raises (1) statutory and constitutional issues of first impression as to an alien's removability for an aggravated felony based on a first-time drug offense of felony drug possession, and (2) a constitutional issue as to the retroactive application of the Fifth Circuit's definition of aggravated felony in Hernandez-Avalos, which it would be in the interests of justice, and the expeditious and orderly adjudication of the merits of the case, for the court of appeals to resolve on direct review. See Aquacate Consol. Mines, Inc. v. Deeprock, Inc., 566 F.2d 523 (5th Cir.1978).

Entry of an order transferring <u>Salazar-Regino</u> to the court of appeals and staying the other cases would also be in the interests of judicial economy, because it would enable this court to avoid having to decide the purely legal issues raised by these habeas petitions, as well as the jurisdictional issue of whether there is habeas jurisdiction, until after the court of appeals has decided these issues on transfer of <u>Salazar-Regino</u>.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel: (956) 389-7051
Georgia Bar No. 590315
Federal Bar No. 23937

MARGARET PERRY
Senior Litigation Counsel
Office Of Immigration Litigation
Civil Division, U.S. Dept. Of Justice
P.O. Box 878 Ben Franklin Station
Washington DC 20044

Date: April 14, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Objections to the Magistrate Judge's Consolidated Report and Recommendation was mailed via first class mail, postage prepaid to:

> Lisa S. Brodyaga, Esquire
> Refugio Del Rio Grande
> 17891 Landrum Park Rd.
> San Benito, TX 78586

on this 14th day of April, 2003.

LISA M. PUTNAM
Special Assistant United States Attorney

30